IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>VERENGO, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 16-12098 (BLS)<br><br>**Hearing Date**: November 15, 2016 at 11:00 a.m. ET<br>**Obj. Deadline**: October 14, 2016 at 4:00 p.m. ET |

**FIRST OMNIBUS MOTION OF THE DEBTOR FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE DEBTOR TO REJECT CERTAIN
UNEXPIRED LEASES AND EXECUTORY CONTRACTS, AND (II)
AUTHORIZING RELATED *NUNC PRO TUNC* RELIEF**

**\*\*\*PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR
NAMES AND THEIR CONTRACTS OR LEASES IN THE EXHIBIT TO
THE MOTION\*\*\***

The above-captioned debtor and debtor-in-possession (collectively, the "**Debtor**") hereby moves the Court (the "**Motion**") pursuant to section 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order: (a) authorizing the Debtor to reject certain unexpired leases and executory contracts as identified on **Exhibit A** to the proposed order, (b) authorizing the related *nunc pro tunc* relief as indicated on **Exhibit A** to the proposed order, and (c) providing any additional relief required in order to effectuate the foregoing. In support of this Motion, the Debtor relies on the *Declaration of Dan Squiller in Support of Chapter 11 Petition and First Day Motions* [D.I. 2] (the "**Squiller Declaration**"). In further support of this Motion, the Debtor respectfully submits as follows:

---

[1] The Debtor and the last four digits of their identification number are as follows: Verengo, Inc. [6114]. The address of the Debtor's corporate headquarters is 1899 Western Way, Suite 340, Torrance, CA 90501.

{BAY:02953338v6}

**Jurisdiction, Venue, and Statutory Predicates**

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

2.  The statutory predicates for the relief sought herein are section 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006.

**Background**

3.  On September 23, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.  On the Petition Date, the Debtor also filed motions or applications seeking certain typical "first day" orders.  The factual background regarding the Debtor, including its current and historical business operations and the events precipitating this chapter 11 filing, is set forth in detail in the Squiller Declaration, filed concurrently herewith and fully incorporated herein by reference.

5.  The Debtor has continued in possession of its properties and is operating and managing its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  No request has been made for the appointment of a trustee or examiner and a creditors' committee has yet to be appointed in this chapter 11 case.

**The Leases To Be Rejected**

**A.    The Torrance Lease**

7.      On August 31, 2011, the Debtor entered into a sublease agreement (the "**Original Sublease**") with Maritz, Holdings, Inc. ("**Maritz**"), as amended by that certain First Amendment to Office Sublease (the "**First Amended Sublease**"), dated October 11, 2012, and that certain Second Amendment to Office Sublease (the "**Second Amended Sublease**"), dated April 29, 2014 (collectively, the "**Torrance Lease**").[2] Pursuant to the Torrance Lease, the Debtor became the subtenant and Maritz became the sublandlord to the building located at 20285 South Western Avenue, Torrance, California 90501 (the "**Torrance Premises**").

8.      Pursuant to the Second Amended Sublease, the term of the Torrance Lease was extended from February 1, 2015, through and including March 31, 2018.

9.      On February 15, 2016, the Debtor entered into that certain sublease agreement (the "**Skyline Sublease**"), between the Debtor, as sublessor, and Skyline Urology, LP ("**Skyline**"), as sublessee. Pursuant to the Skyline Sublease, Skyline pays rent to the Debtor for Skyline's use of a portion of the second floor of the Torrance Premises (the "**Skyline Premises**"). The Debtor retained and continued to use the balance of the Torrance Premises (the "**Remainder of the Premises**").

10.     On September 25, 2016, the Debtor vacated the Remainder of the Premises and was released from its obligations with respect to the Remainder of the Premises by way of a Third Amendment to the Office Sublease. The Debtor's new address is 1899 Western Way, Suite 340, Torrance, CA 90501 (the "**New Location**"). Although the Debtor no longer occupies any space in the Torrance Premises, it is still

---

[2]    Copies of the Original Sublease, First Amended Sublease, Second Amended Sublease, Third Amendment to the Office Sublease and Skyline Sublease are available upon reasonable request to counsel to the Debtor.

responsible for the difference between the rent owing under the Torrance Sublease for the Skyline Premises and the rent received from Skyline.

**B.  The Thistle Lease**

11.   On February 16, 2012, the Debtor entered into a lease agreement (the "**Thistle Lease**")[3] with Principle Equity Properties, L.P.  Pursuant to the Thistle Lease, the Debtor became the tenant of the property located at 4811 East Thistle Landing Drive, Suite 100C, Phoenix, AZ (the "**Thistle Premises**").  The term of the Thistle Lease runs until August 31, 2017.  On July 1, 2016, the Debtor subleased the entire Thistle Premises to a subtenant.  Accordingly, the Debtor has vacated the Thistle Premises and no longer has a use for the Thistle Lease.

## The Executory Contracts To Be Rejected

**A.  The BSA**

12.   On June 28, 2013, the Debtor entered into that certain business service agreement (the "**BSA**")[4] with Concur Technologies, Inc. ("**Concur**").  Pursuant to the BSA, Concur agreed to make certain services available to the Debtor throughout the term of the BSA.  Although the original term of the BSA expired on June 28, 2014, the BSA states that the BSA shall continue following the expiration of the initial term until either party elects to terminate the BSA.

**B.  The Equipment Leases**

13.   On May 7, 2014, the Debtor entered into certain equipment lease agreements (the "**Equipment Leases**")[5] with Macquarie Equipment Finance, Inc.

---

[3]   A copy of the Thistle Lease is available upon reasonable request to counsel to the Debtor.
[4]   A copy of the BSA is available upon reasonable request to counsel to the Debtor.
[5]   Copies of the Equipment Leases are available upon reasonable request to counsel to the Debtor.

("**Macquarie**").  The Debtor seeks to return all equipment and reject the Equipment Leases numbered 1001795 and 1001796, and 1001746.

### C. The Ervin Lease

On June 9, 2011, the Debtor entered into a lease (the "**Ervin Lease**")[6] with Erving Leasing Company ("**Ervin**").  The Debtor seeks to reject the Ervin Lease and has determined that that it no longer has a use for the copiers under the Ervin Lease.

### D. The Canon Lease

14. On December 6, 2012, the Debtor entered into a lease (the "**Canon Lease**")[7] with Canon Financial Services, Inc. ("**Canon**").  The Debtor has determined that the equipment under the Canon Lease provides no benefit to the Debtor's estate and therefore seeks to reject the Canon Lease.

### E. The ACP Lease

15. On May, 22, 2013, the Debtor entered into a lease (the "**ACP Lease**")[8] with All Copy Products, Inc. ("**ACP**").  The Debtor seeks to reject the ACP Lease and has determined that it no longer has any use for the equipment under the ACP Lease.

### Relief Requested

16. By this Motion, the Debtor respectfully requests entry of an order, substantially in the form attached hereto, (a) authorizing and approving the Debtor's rejection of the Torrance Lease, the Thistle Lease, the Equipment Leases, the Ervin Lease, the Canon Lease, the ACP Lease, and the BSA (collectively, the "**Leases and Executory Contracts**"), (b) authorizing the related *nunc pro tunc* relief in connection with the Leases and Executory Contracts as identified on **Exhibit A** to the proposed

---

[6] A copy of the Ervin Lease is available upon reasonable request to counsel to the Debtor.
[7] A copy of the Canon Lease is available upon reasonable request to counsel to the Debtor.
[8] A copy of the ACP Lease is available upon reasonable request to counsel to the Debtor.

order, and (c) providing any additional relief required in order to effectuate the foregoing. The Debtor has determined that the Leases and Executory Contracts identified on **Exhibit A** to the proposed order are no longer necessary to its business operations and has therefore decided to eliminate the unnecessary expenses related to maintaining the Leases and Executory Contracts.

## Basis for Relief Requested

### A. Rejection of the Leases and Executory Contracts is an Exercise of the Debtor's Sound Business Judgment

17. Section 365(a) of the Bankruptcy Code provides in pertinent part:

> (a) Except as provided in section 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

18. Rejection of an executory contract is appropriate where, in the exercise of the debtor's sound business judgment, the Debtors determine that rejection of the contract would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989). The decision to assume or reject an executory contract is a matter within the business judgment of the debtor. *See, e.g., Nat'l Labor Relations Bd. v. Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982); *see also Jr. Food Mart of Arkansas, Inc. v. Attebury (In re Jr. Food Mart of Arkansas, Inc.)*, 131 B.R. 116, 120 (Bankr. E.D. Ark. 1991) (approving the debtor's decision in its business judgment to reject an employment contract).

19. The Debtor has determined that the Leases and Executory Contracts are no longer necessary, do not provide a significant benefit to the estate, and that their rejection

would eliminate unnecessary expenses. Therefore, the Debtor requests that the Court approve the rejection of the Leases and Executory Contracts, *nunc pro tunc* to the specified date assigned to each of the Leases and Executory Contracts as set forth in **Exhibit A** to the proposed order.

20. The Debtor believes that accruing administrative expenses, if any, on account of the Leases and Executory Contracts will not offer any additional value to its estate and, hence, the Leases and Executory Contracts are appropriate for immediate rejection in order to relieve the burden on the Debtor's estate. Rather, the Leases and Executory Contracts impose an unnecessary burden at a time when the Debtor is experiencing liquidity restraints resulting from the filing of the chapter 11 case and imposition of a stringent budget from its post-petition secured lenders. In this context, the Debtor, in its sound and reasonable business judgment, believes that the Leases and Executory Contracts are no longer necessary for the Debtor's business and that their rejection is in the best interests of the Debtor and its creditors.

### B. *Nunc Pro Tunc* Rejection is Appropriate

21. To avoid paying unnecessary administrative expenses relating to the Leases and Executory Contracts, the Debtor seeks to reject the Leases and Executory Contracts *nunc pro tunc* to the date set forth in **Exhibit A** to the proposed order. The dates identified in **Exhibit A** to the proposed order reflect the earliest time at which the Debtor stopped receiving any benefit from the respective Leases and Executory Contracts. Several courts have allowed the retroactive rejection of an executory contract or unexpired lease under section 365(a) of the Bankruptcy Code. *See Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 734

(Bankr. D. Del. 2009) (holding that a bankruptcy court may enter a lease rejection order with an effective date earlier than the date the order is entered); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (court used equitable powers to determine whether to allow retroactive rejection of leases and subleases); *see also In re Namco Cybertainment, Inc.*, Case No. 98-00173 (PJW) (January 21, 1998).

22.     In *Namco*, while addressing the rejection of an unexpired non-residential real property lease, this Court noted that an effective rejection date prior to the hearing to consider rejection is permissible when:

> (a)  prior to the filing of the motion, the keys were surrendered, and the premises surrendered with an unequivocal statement to the landlord of abandonment;
>
> (b)  the motion is served and filed on the landlord;
>
> (c)  the motion states that the committee agrees with the motion; and
>
> (d)  that the debtor acknowledges that it will not have the right to withdraw the motion prior to the hearing.

*Namco*, Transcript of Proceeding, April 15, 1998 at 35.

23.     In the instant matter, *nunc pro tunc* rejection of the Leases and Executory Contracts to the specified date for each is proper. The Motion has been filed and served on the landlords of the Torrance Lease and the Thistle Lease, the Lessors of the Equipment Leases, Ervin Lease, Canon Lease, ACP Lease, and Concur. The Debtor acknowledges that it will not have the right to withdraw this Motion prior to the hearing on the Motion. Finally, an Official Committee of Unsecured Creditors has not yet been formed.

**Bankruptcy Rule 6003 Satisfied and Request for Waiver of Stay**

24. The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein and in the Squiller Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

25. Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

26. No court within the Third Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision. The Third Circuit Court of Appeals, however, has interpreted the same language in the context of preliminary injunctions. In that context, the Third Circuit interpreted irreparable harm to mean a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.2d 645, 653-55 (3d Cir. 1994).

27. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[an] order

authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of ten (10) days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtor's operations, going-concern value, and its efforts to pursue a sale or restructuring of its assets and liabilities.

28. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

### Notice

29. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the creditors holding the 23 largest unsecured claims against the Debtor's estate, as identified in the Debtor's chapter 11 petition; (c) counsel to the Debtor's prepetition secured lenders; (d) counsel to the Crius Solar Fulfillment, LLC; (e) all Leases and Executory Contract counter-parties; and (f) all parties requesting notice of pleadings pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting the relief requested herein and that it grant the Debtor such other and further relief as is just and proper.

Dated: September 30, 2016
       Wilmington, Delaware         BAYARD, P.A.

                                            */s/ Scott D. Cousins*
                                            Scott D. Cousins (No. 3079)
                                            Evan T. Miller (No. 5364)
                                            Gregory J. Flasser (No. 6154)
                                            222 Delaware Avenue, Suite 900
                                            Wilmington, Delaware 19801
                                            Phone: (302) 655-5000
                                            Facsimile: (302) 658-6395
                                            Email: scousins@bayardlaw.com
                                                           emiller@bayardlaw.com
                                                           gflasser@bayardlaw.com

                                            *Proposed Attorneys for Debtor*
                                            *and Debtor-in-Possession*