THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| VERENGO, INC.,[1] | Case No.: 16-12098 (BLS) |
| Debtor. | |

**COMBINED DISCLOSURE STATEMENT AND CHAPTER 11
PLAN OF REORGANIZATION FOR VERENGO, INC.
PROPOSED BY THE DEBTOR AND DEBTOR IN POSSESSION**

**BAYARD, P.A.**
Scott D. Cousins (No. 3079)
GianClaudio Finizio (No. 4253)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Phone: (302) 655-5000
Facsimile: (302) 658-6395

*Counsel to Debtor and Debtor in
Possession*

Dated:  March 6, 2017

---

[1]    The Debtor and the last four digits of its identification number are as follows: Verengo, Inc. [6114].  The address of the Debtor's corporate headquarters is 1899 Western Way, Suite 340, Torrance, CA 90501.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

# TABLE OF CONTENTS

Page

INTRODUCTION..................................................................................................... 1

**ARTICLE I:  OVERVIEW OF THE PLAN**............................................................ **4**

    **A.**    General Structure of the Combined Disclosure Statement and Plan ..................... 4

    **B.**    Summary of Treatment of Claims and Interests under the Combined Disclosure Statement and Plan.................................................................................................. 5

**ARTICLE II:  DEFINED TERMS AND RULES OF INTERPRETATION**........................ **6**

    **A.**    Certain Defined Terms ......................................................................................... 7

**ARTICLE III  BACKGROUND AND DISCLOSURES** ......................................... **24**

    **A.**    General Background ........................................................................................... 24

    **B.**    Existing Corporate Structure............................................................................. 25

    **C.**    Prepetition Capital Structures ........................................................................... 26

        **1.**    *Secured Loans* ........................................................................................ 26

        **2.**    *The Spruce Loans*.................................................................................. 26

        **3.**    *Related Party Debt*................................................................................ 26

    **D.**    Events Leading to the Debtor's Chapter 11 Case ............................................. 27

    **E.**    The Solicitation Process and the Chapter 11 Case............................................ 28

        **1.**    *The Solicitation Process* ....................................................................... 28

        **2.**    *The Chapter 11 Case* ............................................................................ 30

    **F.**    Voting Objection Deadline ................................................................................ 31

    **G.**    Confirmation Hearing and Deadline for Objections to Confirmation ................. 31

    **H.**    Further Information; Additional Copies ............................................................. 32

    **I.**    Requirements for Confirmation of the Combined Disclosure Statement and Plan ...................................................................................................................... 32

    **J.**    Feasibility of the Combined Disclosure Statement and Plan............................... 34

    **K.**    Acceptance of the Combined Disclosure Statement and Plan ............................ 34

    **L.**    Alternative to the Combined Disclosure Statement and Plan............................. 35

    **M.**    Best Interest Test and Liquidation Analysis ..................................................... 35

    **N.**    Confirmation Without Acceptance of All Impaired Classes: The "Cramdown" Alternative........................................................................................................... 37

    **O.**    Releases by the Debtor and Third Parties ......................................................... 38

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**P.**      Estimated Effective Date and Date of Distributions ............................................. 38

**ARTICLE IV:  SUMMARY OF DEBTOR'S ASSETS; SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES ........................... 38**

**A.**      Summary of Treatment of Claims and Equity Interests and Estimated Recoveries ............................................................................................................................ 38

**ARTICLE V  CONFIRMATION AND VOTING PROCEDURES ....................................... 40**

**A.**      Overview of the Combined Disclosure Statement and Plan .................................. 40

**B.**      Confirmation Procedure ....................................................................................... 41

**1.**      *Confirmation Hearing* ............................................................................ 41

**2.**      *Procedure for Objections* ...................................................................... 42

**3.**      *Requirements for Confirmation* ............................................................. 42

**4.**      *Classification of Claims and Equity Interests* ....................................... 43

**5.**      *Impaired Claims or Equity Interests* ..................................................... 43

**6.**      *Feasibility* ............................................................................................. 43

**7.**      *Eligibility to Vote on the Combined Disclosure Statement and Plan* ....... 46

**8.**      *Solicitation Notice* ................................................................................ 46

**9.**      *Solicitation Materials* ........................................................................... 46

**10.**     *Procedure/Voting Deadlines* ................................................................. 47

**11.**     *Acceptance of the Combined Disclosure Statement and Plan* ................. 48

**12.**     *Elimination of Vacant Classes* .............................................................. 48

**13.**     *Waivers of Defects, Irregularities, Etc.* ................................................. 48

**14.**     *Withdrawal of Ballots; Revocation* ....................................................... 49

**ARTICLE VI:  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....................................................................................................... 50**

**A.**      Classification of Claims ...................................................................................... 50

**1.**      *Unclassified Claims (not entitled to vote on the Combined Disclosure Statement and Plan)* .............................................................. 50

*(a)*     *Administrative Claims* ............................................................................ 51

*(b)*     *Priority Tax Claims* ............................................................................... 51

*(c)*     *DIP Claims* ........................................................................................... 51

**2.**      *Unimpaired Classes of Claims and Interests (deemed to have accepted the Combined Disclosure Statement and Plan and, therefore, not entitled to vote on the Combined Disclosure Statement and Plan)* ........................... 51*

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY
COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

| | | | |
|---|---|---|---|
| *(a)* | *Class 1.  Priority Non-Tax Claims* | | 51 |
| *(b)* | *Class 2A.  Secured Claims* | | 51 |
| **3.** | *Impaired/Voting Classes of Claims* | | 51 |
| (a) | *Class 2B.  Crius Prepetition Secured Claims* | | 51 |
| (b) | *Class 3.  Crius Unsecured Deficiency Claims* | | 51 |
| (c) | *Class 4.  General Unsecured Claims* | | 51 |
| (d) | *Class 5.  Common Equity Interests* | | 51 |
| **B.** | Treatment of Claims | | 51 |
| | **1.** | *Unclassified Claims* | 51 |
| | (a) | *Administrative Claims* | 51 |
| | (b) | *Priority Tax Claims* | 51 |
| | (c) | *DIP Claims* | 52 |
| | **2.** | *Other Provisions Governing Administrative Claims* | 52 |
| | **3.** | *Unimpaired Classes of Claims and Interests* | 53 |
| | (a) | *Class 1: Priority Non-Tax Claims* | 53 |
| | (b) | *Class 2A: Secured Claims* | 53 |
| | **4.** | *Impaired/Voting Classes of Claims and Interests* | 54 |
| | (a) | *Class 2B: Crius Prepetition Secured Claims* | 54 |
| | (b) | *Class 3: Crius Unsecured Deficiency Claims* | 54 |
| | (c) | *Class 4: General Unsecured Claims* | 55 |
| | (d) | *Class 5: Common Equity Interests* | 55 |
| | 6. | *Reservation of Rights Regarding Claims* | 56 |
| | 7. | *Special Provisions Regarding Insured Claims* | 56 |

**ARTICLE VII:  ACCEPTANCE OR REJECTION OF THE COMBINED
DISCLOSURE STATEMENT AND PLAN** ........................................................ **57**

| | | | |
|---|---|---|---|
| **A.** | Acceptance or Rejection by Class | | 57 |
| | **1.** | *Impaired Classes of Claims Entitled to Vote* | 57 |
| | **2.** | *Acceptance by an Impaired Class* | 57 |
| | **3.** | *Presumed Acceptances by Unimpaired Classes* | 57 |
| | **4.** | *Presumed Rejection by Impaired Class* | 58 |
| **B.** | Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code | | 58 |

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**ARTICLE VIII:  MEANS FOR IMPLEMENTATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN** ................................................................ **58**

**A.**　　Vesting of Estate Property ................................................. 58

**B.**　　The Distribution Trust.......................................................... 59

　　**1.**　*Execution of Distribution Trust Agreement* ........................... 59

　　**2.**　*Purpose of the Distribution Trust* ............................................ 59

　　**3.**　*Distribution Trust Assets*........................................................ 59

　　**4.**　*The Administration of the Distribution Trust and Authority and Powers of the Distribution Trustee* ...................................... 59

　　**5.**　*Mutual Cooperation*................................................................. 60

　　**6.**　*Cash Investments* .................................................................... 60

　　**7.**　*Distributions to Holders of Claims and Distribution Trust Beneficiaries* 60

　　**8.**　*Federal Income Tax Treatment of Distribution Trust* ............. 61

　　**9.**　*Tax Reporting*......................................................................... 62

　　**10.**　*Dissolution* ............................................................................ 63

**C.**　　The Reorganized Debtor ...................................................... 64

　　**1.**　*Continued Corporate Existence* ............................................. 64

　　**2.**　*Management and Board of Directors* ...................................... 64

　　**3.**　*Corporate Action* .................................................................... 64

　　**4.**　*Effectuating Documents; Further Transactions* ...................... 65

**D.**　　Preservation of Rights of Action.......................................... 65

**E.**　　Exemption From Transfer Taxes .......................................... 65

**F.**　　The Closing.......................................................................... 66

**ARTICLE IX:  TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND WARRANTIES** ................................................................ **67**

**A.**　　Assumption of Executory Contracts and Unexpired Leases................................. 67

**B.**　　Assignment of Executory Contracts and Unexpired Leases................................. 68

**C.**　　Cure Rights for Executory Contracts and Unexpired Leases Assumed Under Combined Disclosure Statement and Plan ............................ 68

**D.**　　Rejection Damages Bar Date for Rejections Pursuant to Combined Disclosure Statement and Plan ................................................... 69

**E.**　　Rejection of Executory Contracts and Unexpired Leases................................... 69

**F.**　　Certain Indemnification Obligations Owed by Debtor ........................ 69

Case 16-12098-BLS   Doc 203   Filed 03/06/17   Page 6 of 118

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY
COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**G.**  Continuing Obligations Owed to Debtor .................................................. 70

**H.**  Limited Extension of Time to Assume or Reject................................. 71

**I.**  Post-petition Contracts and Leases ...................................................... 71

**J.**  Treatment of Claims Arising from Assumption or Rejection.............. 71

**ARTICLE X:  PROVISIONS GOVERNING DISTRIBUTIONS** ......................... 72

**A.**  Distributions for Allowed Claims .......................................................... 72

    **1.**  *In General* ........................................................................... 72

    **2.**  *Distributions on Allowed Claims Only* ................................... 72

    **3.**  *Place and Manner of Payments of Distributions* .................... 72

    **4.**  *Undeliverable Distributions*................................................... 73

    **5.**  *Unclaimed Distributions* ....................................................... 73

    **6.**  *Withholding* ......................................................................... 73

    **7.**  *Procedures Regarding Distributions from the Distribution Trust*............ 74

    **8.**  *Allocation of Distributions Between Principal and Interest*.................... 74

    **9.**  *Accounts; Escrows; Reserves* ................................................ 74

    **10.**  *Administrative Claims Reserve* .............................................. 74

    **11.**  *Professional Fee Reserve* ...................................................... 75

**B.**  Procedures for Resolution of Disputed Claims.................................... 75

    **1.**  *Right to Object to Claims*..................................................... 75

    **2.**  *Deadline for Objecting to Claims* ......................................... 76

    **3.**  *Deadline for Responding to Claim Objections* ....................... 76

    **4.**  *Right to Request Estimation of Claims* .................................. 76

**ARTICLE XI:  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH
RESPECT THERETO** ................................................................................ 76

**A.**  Prosecution of Objections to Claims.................................................... 76

    **1.**  *Objections to Claims; Estimation Proceedings* ....................... 76

    **2.**  *Authority to Prosecute Objections* ........................................ 77

**B.**  Treatment of Disputed Claims .............................................................. 77

    **1.**  *No Distribution Pending Allowance* ...................................... 78

    **2.**  *Distributions on Accounts of Disputed Claims Once They are Allowed* .. 78

**C.**  Provisions for Disputed Claims ............................................................ 78

Case 16-12098-BLS    Doc 203    Filed 03/06/17    Page 7 of 118

This Combined Disclosure Statement and Chapter 11 Plan has not yet been Approved by the Bankruptcy Court for Circulation to All Creditors and Interest Holders or for the Use in Solicitation of Votes

D.      Accounts; Escrows; Reserves ................................................................ 79
    1.      Administrative Claims Reserve ................................................. 79
    2.      Professional Fee Reserve ......................................................... 79

ARTICLE XII:  CONDITIONS PRECEDENT TO CONFIRMATION  AND CONSUMMATION OF THE PLAN ................................................ 80
A.      Conditions to Confirmation ................................................................ 80
B.      Conditions to the Effective Date ........................................................ 80
C.      Notice of Occurrence of the Effective Date ....................................... 81
D.      Waiver of Conditions .......................................................................... 81
E.      Consequences of Non-Occurrence of Effective Date ......................... 81
F.      Substantial Consummation ................................................................. 81

ARTICLE XIII:  RETENTION OF JURISDICTION .......................................... 82
A.      Scope of Retention of Jurisdiction ..................................................... 82
B.      Failure of the Bankruptcy Court to Exercise Jurisdiction .................. 84

ARTICLE XIV:  CERTAIN RISK FACTORS TO BE CONSIDERED ............. 85
A.      Non-Confirmation or Delay of Confirmation of the Combined Disclosure Statement and Plan ......................................................... 85
B.      Classification and Treatment of Claims and Equity Interests ............. 87
C.      Claims Estimation .............................................................................. 88
D.      Risks Related to Financial Information .............................................. 88
E.      Certain Income Tax Consequences of the Combined Disclosure Statement and Plan ......................................................... 88

ARTICLE XV:  CERTAIN SECURITIES LAW MATTERS ............................ 89
A.      In General ........................................................................................... 89
B.      Distribution Trust Related Matters ..................................................... 89
    1.      Initial Issuance of Distribution Trust Interests ........................ 89
    2.      Resales ...................................................................................... 91
    3.      Exchange Act Compliance ....................................................... 91
    4.      Compliance if Required ........................................................... 92
    5.      New Equity Related Matters .................................................... 92
    6.      Disclaimers ............................................................................... 94

ARTICLE XVI:  MISCELLANEOUS PROVISIONS .......................................... 94

This Combined Disclosure Statement and Chapter 11 Plan has not yet been Approved by the Bankruptcy Court for Circulation to All Creditors and Interest Holders or for the Use in Solicitation of Votes

| | | |
|---|---|---|
| **A.** | Payment of Statutory Fees | 94 |
| **B.** | Modifications and Amendments | 94 |
| **C.** | Continuing Exclusivity and Solicitation Period | 95 |
| **D.** | Severability of Combined Disclosure Statement and Plan Provisions | 96 |
| **E.** | Successors and Assigns and Binding Effect | 96 |
| **F.** | Compromises and Settlements | 96 |
| **G.** | Releases and Satisfaction of Subordination Rights | 97 |
| **H.** | Releases and Related Matters | 97 |
| | **1.** *Releases by Debtor* | 97 |
| | **2.** *Releases by Holders of Claims* | 98 |
| **I.** | Discharge of the Debtor | 99 |
| **J.** | Injunction | 100 |
| **K.** | Exculpation and Limitations of Liability | 100 |
| **L.** | Abrogation of Successor Liability | 101 |
| **M.** | Term of Injunctions or Stays | 102 |
| **N.** | Revocation, Withdrawal or Non-Consummation | 102 |
| **O.** | Plan Supplement | 102 |
| **P.** | Notices | 103 |
| **Q.** | Computation of Time | 104 |
| **R.** | Section 1125(e) of the Bankruptcy Code | 104 |
| **S.** | Determination of Tax Filings and Taxes | 104 |
| **T.** | Governing Law | 104 |
| **U.** | Exhibits | 105 |

Chapter 11 Combined Disclosure Statement
and Plan of Reorganization

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

## PLAN EXHIBITS

Exhibit 1:      Liquidation Analysis

Exhibit 2:      Financial Projections

Exhibit 3:      Distribution Trust Avoidance Actions


Certain Exhibits to the Combined Disclosure Statement and Plan will be contained in a separate Plan Supplement, which will be Filed with the Bankruptcy Court prior to the Voting Deadline or by such later date as may be established by order of the Bankruptcy Court.  The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours and at the Debtor's internet site at http://www.jndla.com/cases/verengo.  Additional copies of the Plan Supplement may be obtained upon request to the Debtor's Claims Agent at the following address:

Verengo's Claims Processing Center
c/o JND Corporate Restructuring
8269 E. 23rd Avenue
Suite 275, Denver, CO  80238

Chapter 11 Combined Disclosure Statement
and Plan of Reorganization

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

# COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF REORGANIZATION FOR VERENGO, INC.

## INTRODUCTION[2]

Verengo, Inc., as a debtor and debtor in possession (the "**Debtor**"), hereby proposes this Combined Disclosure Statement and Plan for the resolution of the outstanding Claims against and Interests in the Debtor.

In connection with the Debtor's efforts to sell its assets, on October 17, 2016, the Court entered the Bidding Procedures Order which, among other things, approved Crius Solar Fulfillment, LLC ("**Crius**") as the stalking horse bidder and a corresponding marketing process designed to solicit interest in bids to culminate in an auction in an effort to maximize the value of the Debtor's assets for the benefit of the Debtor and its estate, and all parties-in-interest. The Debtor retained SSG Advisors, LLC as its investment banker to, among other things, shop around the approved stalking horse bidder's offer in an effort to achieve the highest bid for the Debtor's assets. After an extensive marketing effort, no competitive offers to the stalking horse bidder's bid were received by the November 28, 2016 bid deadline. Given the absence of any competing bid and in accordance with the Bidding Procedures Order, the Debtor canceled the auction scheduled for December 1, 2016, and Crius was designated as the successful bidder in accordance with the Bidding Procedures Order.

Following the cancellation of the auction, the Debtor and Crius agreed to implement the sale transaction to Crius through a plan of reorganization, rather than through a pre-confirmation asset sale. Implementation of the sale through a plan not only ensures that the Debtor will have sufficient sale proceeds to satisfy all administrative and priority claims (as required in order to confirm a plan), but also preserves the Debtor's net operating losses ("**NOLs**"), which the reorganized Debtor may be able to utilize (subject to applicable tax law and regulations) following its emergence from bankruptcy. The Debtor estimates that, as of the Petition Date, it has incurred for U.S. federal income tax purposes, approximately $[___] million of NOLs (subject to certain limitations). The Tax Code limits a corporation's ability to use its NOLs and certain other tax attributes after the corporation undergoes a proscribed change of ownership. The limitations imposed by section 382 of the Tax Code upon a change of ownership pursuant to a confirmed plan, however, are significantly more relaxed than those otherwise applicable. Accordingly, although it is presently unclear what NOLs may remain available (if any), the Debtor has determined to proceed with this Combined Disclosure Statement and Plan that provides for the reorganization of the Debtor.

The Combined Disclosure Statement and Plan constitutes a reorganized chapter 11 plan for the Debtor. The Combined Disclosure Statement and Plan provides that on the Effective Date (A) the Distribution Trust Assets shall automatically vest in the Distribution Trust free and clear of all Claims, Liens and Interests; and (B) except for the Distribution Trust Assets, all of

---

[2] All capitalized terms used in the Combined Disclosure Statement and Plan and not otherwise defined in Article I of the Combined Disclosure Statement and Plan shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan (or any exhibit hereto).

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

the property and assets of the Debtor shall automatically vest in the Reorganized Debtor, free and clear of all Liens, Claims and Interests.   There are three impaired classes identified in the Combined Disclosure Statement and Plan that are entitled to vote to accept the Combined Disclosure Statement and Plan:  (i) Class 2B Crius Prepetition Secured Claims, (ii) Class 3 Crius Unsecured Deficiency Claims, and (iii) Class 4 General Unsecured Claims.  Class 2B, Class 3, and Class 4 are the only classes entitled to vote on the Combined Disclosure Statement and Plan.

The Combined Disclosure Statement and Plan provides that each Holder of a General Unsecured Claim shall receive its Pro Rata share (to be shared with the Holder of Crius Deficiency Claims) of the proceeds of the Distribution Trust Assets as set forth in this Combined Disclosure Statement and Plan.  Class 5 Common Equity Interests will be canceled, released, waived and extinguished as of the Effective Date and, therefore, shall be deemed to have voted to reject the Combined Disclosure Statement and Plan.

The Combined Disclosure Statement and Plan also provides for Distributions to certain unclassified and unimpaired claims.  Such Distributions shall be made by the Distribution Trustee from the Distribution Trust Assets to Holders of Allowed: (i) Administrative Claims; (ii) Priority Tax Claims; (iii) Class 1 Priority Non-Tax Claims; and (iv) Class 2 Secured Claims

**THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF.  NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

**HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.**

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS

This Combined Disclosure Statement and Plan contains certain forward-looking statements, all of which are based on various estimates and assumptions. Such forward-looking statements are subject to inherent uncertainties and to a wide variety of significant business, economic, and competitive risks, including, among others, those summarized herein. *See infra* Article XIV—"Certain Risk Factors To Be Considered." When used in this Combined Disclosure Statement and Plan, the words "anticipate," "believe," "estimate," "will," "may," "intend," and "expect" and similar expressions generally identify forward-looking statements. Although the Debtor believes that its plans, intentions, and expectations reflected in the forward-looking statements are reasonable, it cannot be sure that they will be achieved. These statements are only predictions and are not guarantees of future performance or results. Forward-looking statements are subject to risks and uncertainties that could cause actual results to differ materially from those contemplated by a forward-looking statement. All forward-looking statements attributable to the Debtor or persons acting on its behalf are expressly qualified in their entirety by the cautionary statements set forth in this Combined Disclosure Statement and Plan. Forward-looking statements speak only as of the date on which they are made. Except as required by law, the Debtor expressly disclaims any obligation to update any forward-looking statement, whether as a result of new information, future events, or otherwise.

**NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR COMMON EQUITY INTERESTS.**

The Debtor is the proponent of the Combined Disclosure Statement and Plan within the meaning of section 1129 of the Bankruptcy Code.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

# ARTICLE I:

# <u>OVERVIEW OF THE PLAN</u>

The following is a brief overview of the material provisions of the Combined Disclosure Statement and Plan and is qualified in its entirety by reference to the full text of the Combined Disclosure Statement and Plan. For a more detailed description of the terms and provisions of the Combined Disclosure Statement and Plan, *see* Article I—"Overview of the Plan."

## A.      General Structure of the Combined Disclosure Statement and Plan

The Plan designates five (5) classes of Claims or Interests, which take into account the differing nature, priority or treatment of various Claims or Interests under the Bankruptcy Code.

As described further herein, the Combined Disclosure Statement and Plan generally provides for the payment or satisfaction from the Distribution Trust Assets in full of all Allowed administrative expenses, secured claims and priority tax claims; for the distribution to holders of the Crius Deficiency Claims and Allowed General Unsecured Claims of certain consideration, to be allocated Pro Rata among all such claims to the extent allowed, that will provide a percentage recovery on such Claims; and for no payments or other recoveries on account of existing Equity Interests.

The following is an overview of certain material terms of the Combined Disclosure Statement and Plan:

- The Debtor will be reorganized pursuant to the Combined Disclosure Statement and Plan and will continue to operate following the Effective Date as the Reorganized Debtor.

- All Claims (except for the DIP Claims) that are Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims or Allowed Priority Non-Tax Claims, will be paid or otherwise satisfied in full as required by the Bankruptcy Code from the Distribution Trust or from the Professional Fee Reserve, unless otherwise agreed to by the Debtor (or the Distribution Trustee) and the Holders of such Claims.

- All Allowed General Unsecured Claims (including the Crius Deficiency Claim) shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, a Pro Rata Share of the Distribution Trust Interests.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

- All Crius Prepetition Secured Claims shall be Allowed in full.  $[_____] of such Claim shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Allowed Claim (together with distributions on account of the Crius DIP Claims), 100% of the New Equity in the Reorganized Debtor on the Effective Date.

- All Crius DIP Claims shall be Allowed in full and shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Allowed Claim (together with distributions on account of the Crius Prepetition Secured Claims), 100% of the New Equity in the Reorganized Debtor on the Effective Date.

- No Distributions will be made on account of any Equity Interests.  On the Effective Date, all Equity Interests shall be deemed cancelled and extinguished without further action by the Debtor or the Reorganized Debtor.

- On the Effective Date, the Distribution Trust Assets will vest in the Distribution Trust, and the Debtor shall fund certain amounts to the Distribution Trust, to make Distributions under the Combined Disclosure Statement and Plan.

## B.    Summary of Treatment of Claims and Interests under the Combined Disclosure Statement and Plan

The table below summarizes the classification and treatment of the Claims and Interests under the Combined Disclosure Statement and Plan.  The projected recoveries are estimates based upon a number of assumptions, including the amount of Allowed Claims in each Class, which amounts are estimated as of May [2], 2017 except for General Unsecured Claims, which are estimated as of the Petition Date.

The actual amounts of Allowed Claims could materially exceed or could be materially less than the amounts estimated by the Debtor and utilized in estimating the projected recoveries shown in the table below.  The Debtor has not yet reviewed and fully analyzed all Claims, and its estimates underlying the projected recoveries set forth below are based upon the Debtor's review of its books and records and of certain Proofs of Claim, and include estimates of a number of Claims that are contingent, disputed, and/or unliquidated.

| Class | Claim or Interest | Summary of Treatment | Projected Recovery Under Plan |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired; Deemed to Accept Plan | 100% |

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

| Class | Claim or Interest | Summary of Treatment | Projected Recovery Under Plan |
|-------|-------------------|----------------------|-------------------------------|
| 2A | Secured Claims | Unimpaired; Deemed to Accept Plan | 100% |
| 2B | Crius Prepetition Secured Claims | Impaired; Entitled to Vote on Plan | [0% to x.0%] |
| 3 | Crius Unsecured Deficiency Claims | Impaired; Entitled to Vote on Plan | [0% to x.0%] |
| 4 | General Unsecured Claims | Impaired; Entitled to Vote on Plan | 0% to x.0% |
| 5 | Equity Interests | Impaired; Deemed to Reject Plan | 0% |

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR HOLDERS OF CLAIMS AGAINST THE DEBTOR AND THUS STRONGLY RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.**

## ARTICLE II:

## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the Combined Disclosure Statement and Plan, except as expressly provided or unless the context otherwise requires, (a) any capitalized term used in the Combined Disclosure Statement and Plan that is not defined in the Combined Disclosure Statement and Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (b) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter, (c) any reference in the Combined Disclosure Statement and Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (d) any reference in the Combined Disclosure Statement and Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (e) unless otherwise specified, all references in the Combined Disclosure Statement and Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

exhibits of or to the Combined Disclosure Statement and Plan, (f) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Disclosure Statement and Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Combined Disclosure Statement and Plan, (g) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Combined Disclosure Statement and Plan, and (h) except for section 102(5), the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## A.    Certain Defined Terms

**1.1**    "**Administrative Claim**" means a Claim for any costs or expenses of administration of the Estate under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, for: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor; (b) any payment to be made under the Combined Disclosure Statement and Plan to cure a default on an assumed Executory Contract or assumed Unexpired Lease; (c) any postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of its business and entitled to administrative expense priority under section 503(b) of the Bankruptcy Code; (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order under section 546(c)(2)(A) of the Bankruptcy Code; (e) any Allowed Claims of Professionals in the Chapter 11 Case; and (f) any fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

**1.2**    "**Administrative Claims Bar Date**" means the date that is thirty (30) days after the Confirmation Hearing, or such other date set by this Plan or the Bankruptcy Court as the last day for Filing all requests for payment of Administrative Claims.

**1.3**    "**Administrative Claims Reserve**" means any reserves of Cash established and maintained by the Debtor and, following the Effective Date, the Distribution Trust, to pay Allowed Administrative Claims (other than Professional Fee Claims).

**1.4**    "**Administrative Expense Request**" means a request for the payment of an Administrative Claim.

**1.5**    "**Affiliate**" means "affiliate" as defined in section 101(2) of the Bankruptcy Code.

**1.6**    "**Allowed**" means with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Interest:  (a) any Claim or Interest, proof of which (i) was timely Filed with the Bankruptcy Court or its duly appointed claims agent, (ii) was deemed timely filed pursuant to section 1111(a) of the Bankruptcy Code, or (iii) by a Final Order, was not required to be Filed; (b) any Claim or Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and not Disputed or Contingent (or as to which the applicable Proof of Claim has been withdrawn or Disallowed); and (c) any Claim or Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in (a), (b) and (c) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been Filed on or before the Claims Objection Bar Date and such other deadline provided in the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (d) any Claim or Interest allowed under or pursuant to the terms of the Combined Disclosure Statement and Plan; (e) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code which has been allowed in accordance with section 503(h) of the Bankruptcy Code; (f) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law; or (g) which is a Professional Fee Claim for which a fee award amount has been approved by Final Order of the Bankruptcy Court; provided, however, that Claims or Interests allowed solely for the purpose of voting to accept or reject the Combined Disclosure Statement and Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

**1.7** "**Allowed Claim**" means an Allowed Claim of the particular type or Class described.

**1.8** "**Allowed __ Claim**" means, with respect to any specified Class or type of Claim, whether classified or unclassified, that the referenced Claim is an Allowed Claim.

**1.9** "**Asset Purchase Agreement**" means that certain asset purchase agreement, dated September 23, 2016 (as the same has been or may be amended, together with the schedules and related documents thereto), by and among the Debtor, as seller and Crius, as purchaser.

**1.10** "**Available Cash**" means all of the Cash held by the Distribution Trust, including the Consideration disbursed from the Debtor or Crius to the Distribution Trust on the Effective Date and any proceeds of any Distribution Trust Assets.

**1.11** "**Avoidance Actions**" means any and all Causes of Action (other than those which are released or dismissed as part of and pursuant to the DIP Orders or the Combined Disclosure Statement and Plan) which a trustee, debtor-in-possession, the estate or other appropriate party in interest may assert under sections 502(d), 510, 541, 542, 543, 544, 545, 547,

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

**1.12** "**Ballot**" means each of the ballot forms, other than a master ballot form, distributed to each Holder of a Claim or Interest entitled to vote to accept or reject this Combined Disclosure Statement and Plan.

**1.13** "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case.

**1.14** "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Case or any aspect thereof.

**1.15** "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

**1.16** "**Bar Date(s)**" means the date (or dates) set by the Bankruptcy Court as the last day for Filing a Proof of Claim against the Debtor in the Chapter 11 Case.

**1.17** "**Bidding Procedures Order**" means that certain *Order (A) Approving Procedures In Connection With The Sale Of All Or Substantially All Of The Debtors Assets; (B) Scheduling The Related Auction And Hearing To Consider Approval Of Sale; (C) Approving Procedures Related To The Assumption Of Certain Executory Contracts And Unexpired Leases; (D) Approving The Form And Manner Of Notice Thereof; (E) Approving Breakup Fee And Expense Reimbursement; And (F) Granting Related Relief; And (II) (A) Authorizing The Sale Of All Or Substantially All Of The Debtors Assets; (B) Approving The Assumption And Assignment*

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

*Of Certain Executory Contracts And Unexpired Leases Related Thereto; And (C) Granting Related Relief* [D.I. 85].

1.18    "**Blue Sky Laws**" has the meaning ascribed to such term in Article XV.B.1 hereof.

1.19    "**Bridge Bank Loan**" means the line of credit provided to the Debtor from Bridge Bank dated March 20, 2014, as amended, and now owned by Crius.

1.20    "**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Wilmington, Delaware.

1.21    "**Cash or $**" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

1.22    "**Causes of Action**" means any and all actions, causes of action, Claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based on whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

1.23    "**Chapter 11 Case**" means chapter 11 case number 16-12098 (BLS) commenced by the Debtor in the Bankruptcy Court.

1.24    "**Claim**" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

1.25    "**Claims Agent**" means JND Corporate Restructuring, in its capacity as the Bankruptcy Court-appointed claims agent of the Debtor.

1.26    "**Claims Objection Bar Date**" means the date that is 180 days after the Effective Date or such later date as may be established by order of the Bankruptcy Court.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT for Circulation to All Creditors and Interest Holders or for the Use in Solicitation of Votes

**1.27** "**Class**" means a category of Holders of Claims or Common Equity Interests pursuant to section 1122(a) of the Bankruptcy Code, as described in Article VI of the Combined Disclosure Statement and Plan.

**1.28** "**Closing**" has the meaning ascribed to such term in Article VIII.F hereof.

**1.29** "**COD**" has the meaning ascribed to such term in Article XIV.E.1 hereof.

**1.30** "**Collateral**" means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.31** "**Combined Disclosure Statement and Plan**" means this combined disclosure Statement and Plan, including all exhibits and schedules annexed hereto or referenced herein, as may be amended, modified or supplemented.

**1.32** "**Common Equity Interest**" means any share of common stock, preferred stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in the Debtor that existed immediately prior to the Effective Date.

**1.33** "**Conditional Approval and Procedures Order**" has the meaning ascribed to such term in Article V.B.1 hereof, and shall be in form and substance satisfactory to Crius.

**1.34** "**Confirmation**" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified having been (a) satisfied, or (b) waived.

**1.35** "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.36** "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.37** "**Confirmation Notice**" has the meaning ascribed to such term in Article V.B.8 hereof.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

1.38    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Combined Disclosure Statement and Plan pursuant to, among others, section 1129 of the Bankruptcy Code, which shall be in form and substance satisfactory to Crius.

1.39    "**Consideration**" means the amount necessary, as of the Effective Date, to fund distributions to Holders of Allowed Claims in accordance with this Combined Plan and Disclosure Statement.

1.40    "**Consummation**" means the occurrence of the Effective Date.

1.41    "**Contingent**" means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

1.42    "**Creditor**" has the meaning ascribed in section 101(10) of the Bankruptcy Code.

1.43    "**Credit Agreement**" means the Credit Agreement effective as of September 23, 2016 (as the same has been or may be amended) between the DIP Lender and the Debtor pursuant to which DIP Lender agreed to extend debtor in possession financing to the Debtor.

1.44    "**Crius**" means Crius Solar Fulfillment, LLC.

1.45    "**Crius Unsecured Deficiency Claim**" means an Unsecured Claim in the amount of $[_____], which equals the amount of the Crius Prepetition Secured Claims and the amount of the Spruce Loans less $[_____].

1.46    "**Crius Prepetition Secured Claims**" means the Allowed Claim of Crius in the amount of not less than $[_____], arising under (a) the Bridge Bank Loan and, (b) the Investor Notes.

1.47    "**Cure**" means the Distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to the Bidding Procedures Order and section 365(b) of the Bankruptcy Code, in an amount equal to the Cure Amount.

1.48    "**Cure Amount**" means the amount of the Cure for each Executory Contract or Unexpired Lease determined pursuant to the Bidding Procedures Order as set forth in that certain *Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtor That May Be Assumed and Assigned* [D.I. 97], .

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**1.49** "**Cure Notice**" means that certain *Notice To Counterparties To Executory Contracts And Unexpired Leases Of The Debtor That May Be Assumed And Assigned* filed with the Bankruptcy Court at D.I. 97.

**1.50** "**Debtor**" is defined in the Introduction to this Combined Disclosure Statement and Plan.

**1.51** "**DIP Claims**" means all Claims of the DIP Lender arising under or related to the DIP Facility, including, without limitation all Claims for principal amounts outstanding, interest, fees, expenses, costs and other charges of the DIP Lender, except Professional fees which shall be paid in full on or before the Effective Date.

**1.52** "**DIP Facility**" means that certain senior secured superpriority postpetition financing facility made pursuant to that certain *Credit Agreement*, dated as of September 23, 2016, by and between the Debtor, the DIP Lender, and approved by the Bankruptcy Court, as subsequently amended or modified.

**1.53** "**DIP Lender**" means Crius, in its capacity as lender under the Credit Agreement.

**1.54** "*DIP Motion*" *means the Motion of the Debtor for an Order Under 11 U.S.C. §§ 105, 361, 362, 363(c), 364(d), 364(e) and 507 and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Authoring the Debtor to Continue to Use Case and/or Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Parties and (IV) Granting Related Relief [D.I. 11].*

**1.55** "**DIP Orders**" means those certain orders of the Court approving the DIP Facility and amendments thereto, dated September 26, 2016 [D.I. 36]; October 13, 2016 [D.I. 78]; December 29, 2016 [D.I. 143]; February 6, 2017 [D.I. 177]; and March 1, 2017 [D.I. 200].

**1.56** "**Disallowed**" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim or a Proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Combined Disclosure Statement and Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim or Proof of Interest; (vi) is evidenced by a Proof of Claim or a Proof of Interest which has been Filed, or which has been

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of Claim or Proof of Interest was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such claim.  In each case a Disallowed Claim or Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

1.57    "**Disallowed Claim**" means a Claim, or any portion thereof, that is Disallowed.

1.58    "**Disallowed Interest**" means an Interest, or any portion thereof, that is Disallowed.

1.59    "**Disbursing Agent**" means the Distribution Trustee or any Person or Persons designated by the Distribution Trustee, in its discretion, to serve as disbursing agent under the Combined Disclosure Statement and Plan with respect to Distributions to Holders in particular Classes of Claims; which may include, without limitation, the Claims Agent.

1.60    "**Disclosure Statement**" means the disclosure statement for the Combined Disclosure Statement and Plan, as amended, supplemented or modified from time to time, describing the Combined Disclosure Statement and Plan, that is prepared and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law and approved by the Bankruptcy Court.

1.61    "**Disputed**" means, with respect to any Claim, (a) if no Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Debtor's Schedules as other than disputed, contingent or unliquidated, but as to which the Debtor or Reorganized Debtor or, prior to the Confirmation Date, any other party in interest, has Filed an objection by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order; or (ii) a Claim that is listed on the Debtor's Schedules as disputed, contingent or unliquidated; or (b) if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim for which no corresponding Claim is listed on the Debtor's Schedules; (ii) a Claim for which a corresponding Claim is listed on the Debtor's Schedules as other than disputed, contingent or unliquidated, but

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

the nature or amount of the Claim as asserted in the Proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (iii) a Claim for which a corresponding Claim is listed on the Debtor's Schedules as disputed, contingent or unliquidated; (iv) a Claim for which an objection has been Filed by the Debtor or Reorganized Debtor or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order; or (v) a tort claim.  No portion of a Claim that is a Disputed Claim, whether in whole or in part, shall be an Allowed Claim unless and until the disputed portion of such claim is resolved.

**1.62** "**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor or the Reorganized Debtor, as applicable, and the Holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor or the Reorganized Debtor, as applicable, and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) zero, if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was Filed, or deemed to have been Filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Court.

**1.63** "**Disputed Claims Reserve**" means the reserve of Cash established and maintained by the Distribution Trust to pay Disputed Claims upon allowance by the Bankruptcy Court.

**1.64** "**Distribution**" means any distribution pursuant to the Combined Disclosure Statement and Plan to the Holders of Allowed Claims or Interests.

**1.65** "**Distribution Date**" means, when used with respect to an Allowed Claim, the Initial Distribution Date and any date after the Effective Date upon which a Distribution is made by the Distribution Trustee in accordance with the Combined Disclosure Statement and Plan which is the latest to occur of (a) the Initial Distribution Date; (b) the date that is ten (10) Business Days after the date after such Claim or Interest becomes an Allowed Claim by a Final Order; or (c) the date that such Claim becomes payable under any agreement between the Debtor and the Holder of such Claim.

**1.66** "**Distribution Record Date**" means the record date for determining entitlement to receive Distributions under the Combined Disclosure Statement and Plan on account of Allowed Claims and/or Allowed Interests.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

1.67 "**Distribution Trust**" means the trust to be formed on or prior to the Effective Date in accordance with the provisions of Article VIII.B of the Combined Disclosure Statement and Plan and the Distribution Trust Agreement to hold and administer the Distribution Trust Assets for the payment of Allowed Claims and for the benefit of the Distribution Trust Beneficiaries as set forth herein.

1.68 "**Distribution Trust Account**" means the segregated interest bearing account established by the Distribution Trust into which shall be deposited (a) the Consideration, and (b) the proceeds of the liquidation of all other Distribution Trust Assets.

1.69 "**Distribution Trust Agreement**" means the trust agreement that establishes the Distribution Trust and governs the powers, duties, and responsibilities of the Distribution Trustee. The Distribution Trust Agreement shall be part of the Plan Supplement and shall be in form and substance satisfactory to the Debtor and Crius.

1.70 "**Distribution Trust Assets**" means (A) the [Consideration] (after payment of claims in the course of the Chapter 11 Case or disbursement on the Combined Disclosure Statement and Plan Effective Date on account of Allowed Claims), (B) all Distribution Trust Avoidance Actions, (C) all litigation recoveries with respect to the foregoing asset described in clause (B) above, (D) the Administrative Claims Reserve, and (E) the Runoff Policy, which policy shall be held by the Distribution Trust solely to satisfy Indemnification Obligations assumed pursuant to Article IX.F of the Combined Disclosure Statement and Plan.

1.71 "**Distribution Trust Avoidance Actions**" means all Avoidance Actions other than Retained Avoidance Actions, including, without limitation, the Avoidance Actions set forth on Exhibit 3 hereto.

1.72 "**Distribution Trust Beneficiaries**" means the Holders of Allowed Class 3 Crius Deficiency Claims, and Allowed Class 4 General Unsecured Claims, whether Allowed on or after the Effective Date.

1.73 "**Distribution Trust Interests**" means the non-certificated beneficial interests of the Distribution Trust allocable to Holders of Allowed Class 3 Crius Deficiency Claims and Allowed Class 4 General Unsecured Claims in accordance with the terms and conditions of the Distribution Trust Agreement, which shall not be transferable.

1.74 "**Distribution Trustee**" means the Person pursuant to the Combined Disclosure Statement and Plan and the Distribution Trust Agreement appointed to administer the Distribution Trust with such rights, duties, and obligations as set forth in the Distribution Trust Agreement, which shall not take any action inconsistent with the purposes of the Distribution

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Trust and the qualification of the Distribution Trust as a "liquidating trust" for U.S. federal income tax purposes).

1.75    "**Effective Date**" means any Business Day following the date on which all conditions to consummation set forth in Article XII.B. of the Combined Disclosure Statement and Plan have been satisfied or, if capable of being duly and expressly waived, as provided in Article XII.D. of the Combined Disclosure Statement and Plan, any conditions to the occurrence of consummation set forth in the Combined Disclosure Statement and Plan has been satisfied or waived.

1.76    "**Entity**" means a Person, estate, trust, governmental unit, and U.S. Trustee, within the meaning of section 101(15) of the Bankruptcy Code.

1.77    "**Equity Interest**" means any share of common stock, preferred stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in the Debtor that existed immediately prior to the Effective Date.

1.78    "**Estate**" means the estate of the Debtor in the Chapter 11 Case, created pursuant to section 541 of the Bankruptcy Code.

1.79    "**Exchange Act**" has the meaning ascribed to such term in Article XV.B.3 hereof.

1.80    "**Executory Contract**" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.81    "**Face Amount**" means (a) when used in reference to a Disputed Claim, the Disputed Claim Amount and (b) when used in reference to an Allowed Claim, the Allowed Claim amount.

1.82    "**File, Filed or Filing**" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Case; provided, however, that with respect to Proofs of Claim and Proofs of Interest only, "Filed" shall mean delivered and received in the manner provided in any order approving the Bar Date or the Administrative Claims Bar Date.

1.83    "**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

**1.84** "**General Unsecured Claim**" means any Unsecured Claim against the Debtor that is not a Priority Tax Claim, an Other Priority Claim (including Administrative Expense Claims and Professional Fee Claims) or an Secured Claim

**1.85** "**Holder**" means the legal or beneficial holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

**1.86** "**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.87** "**Impaired Class**" means a Class or Claims or Interests that are Impaired.

**1.88** "**Indemnification Obligation**" means any Claim against or obligation of the Debtor to indemnify, reimburse, advance expenses or provide contribution to or with respect to any present or former officers, directors or employees pursuant to by-laws, articles of incorporation, agreements, contracts, common law or otherwise as may be in existence immediately prior to the Effective Date.

**1.89** "**Initial Distribution Date**" means, when used with respect to an Allowed Claim, the Effective Date or as soon as reasonably practicable after the Effective Date.

**1.90** "**Insured Claim**" means any Allowed Claim or portion of an Allowed Claim that is insured under the Debtor's insurance policies, but only to the extent of such coverage.

**1.91** "**Interest**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtor including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

**1.92** "**Investor Notes**" has the meaning ascribed to such term in Article III.C.3 hereof.

**1.93** "**IRS**" means the Internal Revenue Service.

**1.94** "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.95** "**Liquidation Analysis**" has the meaning ascribed to such term in Article III.N hereof.

**1.96** "**New Corporate Governance Documents**" means the certificate of formation and the certificate of conversion of the Reorganized Debtor, including charters, bylaws, operating agreements, or other organization or formation documents, as applicable substantially in the form set forth in the Plan Supplement, which shall be in the form and substance satisfactory to Crius.

**1.97** "**New Equity**" means the equity in the Reorganized Debtor issued as of the Effective Date to Crius.

**1.98** "**OID**" has the meaning ascribed to such term in Article XIV.E.5 hereof.

**1.99** "**Person**" means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, committee, or ad hoc committee, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, the term "Person" does not include governmental units, except that a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of a Debtor or an Affiliate of a Debtor; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**1.100** "**Petition Date**" means September 23, 2016, the date on which the Debtor Filed its petition for relief commencing the Chapter 11 Case.

**1.101** "**Plan**" means the plan of reorganization under chapter 11 of the Bankruptcy Code, filed as part of the Combined Disclosure Statement and Plan as it may be altered, amended, modified or supplemented from time to time with the consent of Crius including in accordance with any Plan Supplement and the Bankruptcy Code or the Bankruptcy Rules.

**1.102** "**Plan Supplement**" means the supplement to the Combined Disclosure Statement and Plan to be Filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing or such later date as may be established by order of the Bankruptcy Court, which shall be in form and substance satisfactory to Crius, and which shall include: (a) the Distribution Trust Agreement, (b) the New Corporate Governance Documents, (c) known Avoidance Actions other than Retained Avoidance Actions, (d) schedule of assumed contracts and leases with Cure Amounts (e) the identity and affiliations of (i) any individual proposed to serve, after Confirmation of the Combined Disclosure Statement and Plan, as a director, officer, or voting trustee of the Reorganized Debtor, (ii) any affiliate of the Debtor participating in a joint plan with the Debtor, or (iii) any successor to the Debtor under the Combined Disclosure Statement and Plan (and the appointment to, or continuance in, such office of such individual(s) is consistent with the interests of Claim and Interest Holders and with public policy), and (f) the identity of any insider that will be employed or retained by the Debtor and the nature of any compensation for such insider.

**1.103** "**Pre-Change Losses**" has the meaning ascribed to such term in Article XIV.E.2 hereof.

**1.104** "**Priority Non-Tax Claim**" means any and all Allowed Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim.

**1.105** "**Priority Tax Claim**" means any and all Claims of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

**1.106** "**Professional**" means any professional employed in this Chapter 11 Case pursuant to sections 327, 328, or 1103 of the Bankruptcy Code.

**1.107** "**Professional Fee Claim**" means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**1.108** "**Professional Fee Reserve**" means the reserves of Cash established and maintained by the Debtor or, following the Effective Date, counsel to the Debtor, to satisfy Allowed Professional Fee Claims.

**1.109** "**Proof of Claim**" means a proof of claim, including, but not limited to, any Administrative Expense Request, Filed with the Bankruptcy Court or its duly appointed claims agent in connection with the Chapter 11 Case pursuant to section 501 of the Bankruptcy Code.

**1.110** "**Proof of Interest**" means any proof of Interest Filed with the Bankruptcy Court or its duly appointed claims agent in connection with the Chapter 11 Case pursuant to Bankruptcy Rule 3002.

**1.111** "**Projections**" has the meaning ascribed to such term in Article V.B.6 hereof.

**1.112** "**Projection Period**" has the meaning ascribed to such term in Article V.B.6 hereof.

**1.113** "**Pro Rata Share**" means with respect to any Distribution to a Class under the Combined Disclosure Statement and Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim in such Class to the aggregate amount of all Allowed Claims plus the Disputed Claim Amount of all Disputed Claims in the same Class, at the relevant date of determination.

**1.114** "**Protected Parties**" means the (a) Debtor; (b) Reorganized Debtor; and (c) Crius.

**1.115** "**Reinstated**" means (i) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the Holder so as to leave such Claim or Interest Unimpaired in accordance with section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default (a) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (c) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim or Interest is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation and affirmative covenants

This Combined Disclosure Statement and Chapter 11 Plan has not yet been Approved by the Bankruptcy Court for Circulation to All Creditors and Interest Holders or for the Use in Solicitation of Votes

regarding corporate existence prohibiting certain transactions or actions contemplated by the Combined Disclosure Statement and Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish reinstatement.

1.116   "**Releasee**" has the meaning ascribed to such term in Article XVI.H.2 hereof.

1.117   "**Restricted Holders**" has the meaning ascribed to such term in Article XV.B.5 hereof.

1.118   "**Retained Avoidance Actions**" means any and all Avoidance Actions against Crius, any affiliate of Crius, counterparties to any Assumed Contract, customers of the Reorganized Debtor, and any Indemnified Person.

1.119   "**Reorganized Debtor**" means the Debtor as reorganized upon the Effective Date pursuant to this Combined Disclosure Statement and Plan.

1.120   "**Runoff Policy**" means that certain director & officer insurance policy purchased prior to the Petition Date by the Debtor.

1.121   "**Securities Act**" has the meaning ascribed to such term in Article XV.A hereof.

1.122   "**Solicitation Agent**" has the meaning ascribed to such term in Article V.B.9 hereof.

1.123   "**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

1.124   "**SEC**" means the United States Securities and Exchange Commission.

1.125   "**Secured Claim**" means a Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtor or the Reorganized Debtor and the Holder of such Claim.  The amount of any Claim that exceeds the value of the Holder's interest in the

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Estate's interest in property or the amount subject to setoff shall be treated as a General Unsecured Claim.

**1.126** "**Secured Tax Claim**" means a Claim of a governmental unit for the payment of a tax assessed against property of the Estate that is secured by a first Lien on property of the Estate.

**1.127 Solicitation Procedures Order**" means [**] [Docket No. ¶]

**1.128** "**Spruce Loans**" means, collectively: (i) *CPF Loan Addendum to Standard Master Installer Contract* dated May 9, 2014; (ii) *Restated and Amended CPF Loan Addendum to Standard Master Installer Contract* dated June 27, 2014; (iii) *Second Restated and Amended CPF Loan Addendum to Standard Master Installer Contract* dated September 12, 2014; (iv) *First Amendment to Second Restated and Amended CPF Loan Addendum to Standard Master Installer Contract* dated January 6, 2015; (v) *Third Restated and Amended CPF Loan Addendum to Standard Master Installer Contract* dated September 23, 2015; and (vi) *First Amendment to Third Restated and Amended CPF Loan Addendum to Standard Master Installer Contract* dated December 2, 2015.

**1.129** "**Tax Code**" means the Internal Revenue Code of 1986, as amended.

**1.130** "**Unexpired Lease**" means a lease of non-residential real property or personal to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.131** "**Unimpaired Claims**" means Claims in an Unimpaired Class.

**1.132** "**Unimpaired Class**" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

**1.133** "**Unknown Contract**" has the meaning ascribed to such term in Article IX.H hereof.

**1.134** "**Unsecured Claim**" means a Claim arising prior to the Petition Date against the Debtor that is neither a Secured Claim nor entitled to priority under section 507 of the Bankruptcy Code or any order of the Bankruptcy Court, which Claim may be a General Unsecured Claim.

**1.135** "**U.S.**" means the United Stated of America.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**1.136** "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

**1.137** "**Voting Deadline**" means April [24], 2017 at 4:00 p.m. (Eastern Time), which date and time has been established by the Bankruptcy Court [Docket No. ____] as the deadline by which all Ballots to accept or reject the Combined Disclosure Statement and Plan must be received in order to be counted for purposes of section 1126 of the Bankruptcy Code.

**1.138** "**Voting Objection**" has the meaning ascribed to such term in Article III.G hereof.

**1.139** "**Voting Objection Deadline**" has the meaning ascribed to such term in Article III.G hereof.

# ARTICLE III

## BACKGROUND AND DISCLOSURES

On the Petition Date, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code and, since that date, has operated as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**A.**      **General Background**

The Debtor is a privately held corporation organized under Delaware law, headquartered in Torrance, CA with warehouse operations centers in Anaheim and Valencia, CA, and an operations center in Phoenix, AZ.  The Debtor originated from Ken Button and Randy Bishop's purchase of Gemstar Builders in February 2008, which was subsequently renamed Verengo Solar, a d/b/a of Verengo, Inc.  The Debtor's business focuses on the installation of solar photovoltaic systems and is considered one of the most well-known and respected brands in residential solar.  The Debtor also markets and sells solar panels and semiconductor-based micro inverter systems in the United States.  As of August 2016, the Debtor installed 19,800 systems.  One of the Debtor's key strategic initiatives going forward is coupling energy storage with solar and the Debtor expects to be a leader in this segment by the time the market matures.

Following its inception, operations were opened in California, New Jersey, New York, and Connecticut.  In February 2015, however, all northeast operations were sold to NRG Energy, Inc.; contemporaneously, Northern and Central California operations were shut down.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Notwithstanding the shutdown, the Debtor remains the largest Southern California-based residential solar providers and its current business focus is California.

Through cost reductions, supply chain consolidation, and restructuring operations since the second quarter of 2016, the Debtor now has one of the industry's most competitive cost structures. Since its inception, the Debtor achieved numerous milestones, such as the following:

- August 2012: Ranked No. 649 on Inc. 5000's list of country's fastest growing private companies

- May 2014: Clean Power Finance signed as exclusive PPA/Lease provider

- August 2014: Awarded Angie's List Super Service Award for third straight year

- January 2016: Named preferred installer for SunStreet Energy Group

- April 2016: Swell Energy signed as an Originator

- May 2016: Transition to Third-Party Model; internal sales and marketing functions eliminated

- May 2016: Complete Solar & Guaranteed Solar signed as Originators

- June 2016: Pick My Solar signed as Originator

- July 2016: 19,800th installation equating to over 120 MW

- July 2016: Agreements with Sungevity

- July 2016: SunGuide Solutions signed as Originator

- September 2016: Agreements with SunPower Corporation

The Debtor also received two notable investments. The first was received in January 2011 from the Angeleno Group in the amount of $9.7 million. The second was received in September 2013 from ClearSky Power & Technology Fund in the amount of $10 million.

For the year ending December 31, 2015, the Debtor achieved $82 million in revenue and 3,170 installations. Notwithstanding, the Debtor found itself experiencing reduced cash flow in 2016 and strained liquidity as a result. The Debtor sought to address these issues by initiating this Chapter 11 Case.

**B.      Existing Corporate Structure**

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

The Debtor is structured as a corporation whose shares consist of Common and Preferred stock. Together, Angeleno Group and ClearSky Power & Technology Fund own approximately 90% of the Debtor's shares, with the other 10% disbursed widely among hundreds of smaller investors, including employees of the Company.

Currently, the Debtor employs approximately 102 employees (down from a high of over 1,000 in 2012).

## C.    Prepetition Capital Structures

### 1.    *Secured Loans*

Prior to the Petition Date, the Debtor had a line of credit with Bridge Bank with a high balance of $9.3 million, which balance was reduced over time. The Bridge Bank Loan was secured by all of the Debtor's rights and interest in any and all personal property, whether then existing or thereafter acquired, and all products and proceeds thereof. On July 15, 2016, Bridge Bank delivered a Notice of Default to the Debtor as a result of a payment default. On August 25, 2016 Bridge Bank froze the Debtor's account and swept funds from the Debtor's bank account at Bridge Bank, reducing the principal amount of the loan to approximately $983,000. On August 29, 2016, Bridge Bank delivered a second Notice of Default to the Debtor as a result of various covenant defaults. Finally, on August 31, 2016, Bridge Bank delivered a third Notice of Default to the Debtor as a result of various payment and covenant defaults. Immediately prior to the Petition Date, the loan was purchased from Bridge Bank and is now held by Crius.

### 2.    *The Spruce Loans*

CPF Asset Management, LLC, now known as Spruce Finance, loaned $8,500,000 to the Debtor via the Spruce Loans. Spruce Finance is an independent company that facilitates the Debtor's business by purchasing the installation projects from the Debtor and acting as a finance company for the Debtor's customers. Interest is accruing on the Spruce Loans but no principal payments have been made. The Debtor believes the Spruce Loans to be junior to the Bridge Bank Loan and the Investor Notes. Immediately prior to the Petition Date, the Spruce Loans were also acquired by Crius. Approximately $7,687,000 dollars were outstanding in connection with the Spruce Loans as of the Petition Date.

### 3.    *Related Party Debt*

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

The investor notes (the "**Investor Notes**") total $22,964,682 and pertain to certain secured notes in the below amounts:[3]

| | |
|---|---|
| Angeleno Group | $11,089,848 |
| ClearSky Power & Technology Fund | $11,089,848 |
| Arnold Fishman | $422,191 |
| BainBridge Partners | $133,460 |
| Org Bowen Campbell & Lauren Bishop | $10,639 |
| Bishop Living Trust | $218,695 |
| Total | $22,964,682 |

No principal or interest payments are currently being made on the Investor Notes. The Investor Notes were secured by liens on substantially all of the Debtor's assets. A Subordination Agreement existed between Bridge Bank, Angeleno Group, and ClearSky Power & Technology Fund, dated December 2, 2015. Immediately prior to the Petition Date, the Investor Notes held by Angeleno Group and ClearSky Power & Technology Fund were acquired by Crius.

**D.    Events Leading to the Debtor's Chapter 11 Case**

In 2013, the Debtor began to experience quality problems with its installations in the eastern part of the US. Eventually, the Debtor was suspended by the New York State Energy Research and Development Authority (NYSERDA), which prevented the Debtor from activating many of its installed systems until they were reinstalled. This resulted in additional costs to the Debtor and reduced cash flow. In January 2015, all northeast operations were sold to NRG Energy, Inc.; contemporaneously, Northern and Central California operations were shut down. In addition, between 2012 and 2016 sales and marketing expenses for the origination part of the business were excessive and weighed on the Debtor's cash flow.

In 2016, the Debtor continued to experience reduced cash flow and strained liquidity. As such, the Debtor implemented a focused business-to-business strategy, eliminating the unprofitable origination business and becoming an engineering, procurement and construction

---

[3] Immediately prior to the Petition Date, the Investor Notes held by Angeleno Group and ClearSky Power & Technology Fund were acquired by Crius and, for purposes of this Combined Disclosure Statement and Plan, are classified as Class 3 Crius Unsecured Deficiency Claims. The Investor Notes held by Arnold Fishman, BainBridge Partners, Org Bowen Campbell & Lauren Bishop, and Bishop Living Trust are, for purposes of this Combined Disclosure Statement and Plan, classified as Class 4 General Unsecured Claims.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

company.   As a result of these initiatives, the Debtor reduced year-over-year operating expenditures by $26.0 million and indirect costs by $3.9 million.

Given the Debtor's inability to independently survive as a going concern, the board of directors of the Debtor authorized the filing of this Chapter 11 Case to pursue a sale of the Debtor's assets.  In order to fund the continued operations of the Debtor during the pendency of this Chapter 11 Case, the Debtor procured from Crius, as DIP Lender, debtor-in-possession financing as authorized by the DIP Orders.

## E.    The Solicitation Process and the Chapter 11 Case

### 1.    *The Solicitation Process*

The following is a description of certain material events that have occurred during the solicitation process prior to and following the Petition Date.

In complement to the Debtor's prepetition internal restructuring detailed above, the Debtor engaged Roth Capital Partners, LLC as an M&A Advisor in April 2016.  Specifically, Roth Capital Partners, LLC was engaged to analyze the Debtor with respect to a valuation of the company, identify potential third party acquirers, and assist in structuring any transaction.  Based on its knowledge of the solar industry, Roth Capital Partners, LLC executed a targeted outreach effort to groups it felt were well qualified as potential acquirers.  This resulted in Roth Capital Partners, LLC contacting seventeen (17) strategic investors, holding in-depth discussions with seven (7), and securing four (4) groups under non-disclosure agreements.  Despite these efforts, none of these discussions resulted in a transaction.  In September 2016, the Debtor terminated Roth Capital Partners, LLC.

Subsequently, the Debtor solicited a pre-auction bid from Crius resulting in the Debtor's entry into a stalking horse agreement with Crius.  Crius was formed on or about September 12, 2016 in order to pursue a transaction with the Debtor.  A limited liability company agreement was subsequently entered into on September 22, 2016.  At all times since the execution of the limited liability company agreement, the membership units of Crius Solar Fulfilment, LLC have been and are owned in the following percentages: (i) Crius Energy Corp. owns 64.5%; (ii) Angeleno Investors III—Verengo Solar, L.P.  owns 19%; (iii) Spruce owns 10% (subject to performance metrics); and (iv) ClearSky Funding I LLC owns 6.5%.  In connection with the capitalization of Crius Solar Fulfilment, LLC, Angeleno Group, Spruce and ClearSky Power & Technology Fund each contributed the prepetition claims against the Debtor to Crius Solar Fulfilment, LLC, which now owns those claims; thus, none of Angeleno Investors III—Verengo

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Solar, L.P., Spruce and ClearSky Funding I LLC have any interest in such claims, except on account of their respective minority membership interests in Crius.

As part of the bankruptcy process, the Bankruptcy Court entered the Bidding Procedures Order on October 17, 2016, which, among other things, approved Crius as the stalking horse bidder and a corresponding marketing process to solicit interest in bids to culminate in an auction (if competing bids were received) in an effort to maximize the value of the Debtor's assets for the benefit of the Debtor and its estate, and all parties-in-interest.  The Debtor retained SSG Advisors, LLC as its investment banker to, among other things, shop around the stalking horse purchaser's offer in an effort to achieve the highest bid for the Debtor's assets.

In connection with the sale process, SSG Advisors, LLC contacted 167 different potential bidders and delivered an introductory teaser (a one page executive summary describing the Debtor's financial and operational highlights) and proposed form of confidentiality agreement. These 167 parties included private capital investment funds, institutional investors, and strategic parties.

Seventeen (17) parties expressed a sufficient interest in pursuing the opportunity further, thus triggering execution of a confidentiality agreement, and delivery of the confidential information memorandum.  Moreover, upon execution of the confidentiality agreement, and as deemed appropriate by management to avoid the potential disclosure of competitively sensitive information, certain parties were considered for access to the data room.  One party advanced far enough in diligence to justify access to the data room.

After an extensive marketing effort, no competitive offers to the stalking horse bid were received by the November 28, 2016 bid deadline.  Given the absence of any competing bid, the Debtor canceled the auction scheduled for December 1, 2016 and Crius was designated as the successful bidder in accordance with the Bidding Procedures Order.

Following the cancellation of the auction, the Debtor and Crius agreed to implement the sale transaction to Crius through a plan of reorganization, rather than through a pre-confirmation asset sale.  Implementation of the sale through a plan not only ensures that the Debtor will have sufficient sale proceeds to satisfy all administrative and priority claims (as required in order to confirm a plan), but also preserves the Debtor's net operating losses ("**NOLs**"), which the reorganized Debtor may be able to utilize (subject to applicable tax law and regulations) following its emergence from bankruptcy.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

### 2.     *The Chapter 11 Case*

The following is a description of certain material events that have occurred during the Chapter 11 Case.

(a)     Bidding Procedures Order

On October 17, 2016, the Bankruptcy Court entered the Bidding Procedures Order. Pursuant to the Bidding Procedures Order, Crius was approved as the stalking horse bidder. The Bidding Procedures Order also established a bid deadline of November 28, 2016 with an auction date of December 1, 2016. No competitive offers to the stalking horse bid were received, however, by the November 28, 2016 bid deadline. Given the absence of any competing bid, the Debtor canceled the auction scheduled for December 1, 2016 and Crius was designated as the successful bidder in accordance with the Bidding Procedures Order.

(b)     Debtor In Possession Financing Orders

On September 26, 2016, the Bankruptcy Court entered an order on an interim basis granting the relief requested in the DIP Motion authorizing, among other things, for the DIP Lender to loan the Debtor a maximum aggregate principal amount not to exceed One Million Five Hundred Thousand ($1,500,000). On October 13, 2016, the Bankruptcy Court entered a final order granting the relief requested in the DIP Motion which authorized, among other things, the DIP Lender to loan the Debtor a maximum aggregate principal amount not to exceed Two Million Dollars ($2,000,000). On December 29, 2016, the Bankruptcy Court entered the order authorizing entry into the First Amendment to the Credit Agreement, which extended the calendar date on which the outstanding loans under the Credit Agreement are to be repaid, from December 31, 2016 to January 31, 2017. On February 6, 2017, the Bankruptcy Court entered the order authorizing entry into the Second Amendment to the Credit Agreement, which extended the calendar date on which the outstanding loans under the Credit Agreement are to be repaid, from January 31, 2017 to February 10, 2017. On March 1, 2017, the Bankruptcy Court entered the order authorizing entry into the Third Amendment to the Credit Agreement, which extended the maturity date on which the outstanding loans under the Credit Agreement are to be repaid, from February 10, 2017 to May 15, 2017 and increased the maximum loan amount to Two Million Six Hundred Fifty Thousand Dollars ($2,650,000).

(c)     Claims Process and Bar Date

(i)     Bankruptcy Code section 341(a) Meeting of Creditors

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

On October 28, 2016, the United States Trustee presided over the Bankruptcy Code section 341(a) meeting of creditors in the Chapter 11 Case.

(ii)    Schedules and Statement of Financial Affairs

On October 24, 2016, the Debtor filed with the Bankruptcy Court its Schedules and Statement of Financial Affairs.

(iii)    Bar Date

On January 18, 2017, the Debtor filed the Motion of the Debtor to Establish Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof D.I. 163.

## F.    Voting Objection Deadline

Pursuant to Bankruptcy Rule 3018(a), the deadline for the Debtor to File and serve any objections to Claims (each a "**Voting Objection**") to temporarily allow a Claim for purposes of voting on the Combined Disclosure Statement and Plan in a different class or different amount than is set forth in the Proof of Claim timely Filed by the applicable Bar Date as set by the Bankruptcy Court, shall be April [13], 2017 at 4:00 p.m. (Eastern) (the "**Voting Objection Deadline**").  Any party with a response to a Voting Objection may be heard at the Confirmation Hearing.  Responses to any Voting Objection may be Filed with the Bankruptcy Court up to and including the date of the Confirmation Hearing.  If, and to the extent that, the Debtor and such party are unable to resolve the issues raised by the Voting Objection on or prior to the Confirmation Hearing, any such Voting Objection shall be heard at the Confirmation Hearing.

## G.    Confirmation Hearing and Deadline for Objections to Confirmation

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Combined Disclosure Statement and Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Combined Disclosure Statement and Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing to commence on May [2], 2017 at 1:30 p.m. (Eastern Time), before the Honorable Brendan L. Shannon, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801.  The Confirmation Hearing may be

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

Objections to Confirmation of the Combined Disclosure Statement and Plan must be filed and served so that they are actually received by no later than April [24], 2017 at 4:00 p.m. (Eastern Time).  Unless objections to Confirmation of the Combined Disclosure Statement and Plan are timely served and filed in compliance with the Conditional Disclosure Statement Order, they may not be considered by the Bankruptcy Court.

**H.      Further Information; Additional Copies**

If you have any questions or require further information about the voting procedures for voting your Claim or about the packet of material you received, or if you wish to obtain an additional copy of the Combined Disclosure Statement and Plan, this Combined Disclosure Statement and Plan, or any exhibits or appendices to such documents (at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d) or the Bankruptcy Court order approving the Debtor's solicitation procedures), please contact the Solicitation Agent at:

> Verengo's Claims Processing Center
> c/o JND Corporate Restructuring
> 8269 E. 23rd Avenue
> Suite 275, Denver, CO  80238

**I.      Requirements for Confirmation of the Combined Disclosure Statement and Plan**

At the Confirmation Hearing, the Bankruptcy Court must determine that the requirements for Confirmation as set forth in section 1129 of the Bankruptcy Code have been satisfied, including among others the following:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised by the Debtor or by a Person issuing securities or acquiring property under the Combined Disclosure Statement and Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Combined Disclosure Statement and Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before Confirmation of the Combined Disclosure Statement and

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Plan is reasonable, or if such payment is to be fixed after Confirmation of the Combined Disclosure Statement and Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

- The Debtor has disclosed or will disclose in the Plan Supplement (a) the identity and affiliations of (i) any individual proposed to serve, after Confirmation of the Combined Disclosure Statement and Plan, as a director, officer, or voting trustee of the Reorganized Debtor, (ii) any affiliate of the Debtor participating in a joint plan with the Debtor, or (iii) any successor to the Debtor under the Combined Disclosure Statement and Plan (and the appointment to, or continuance in, such office of such individual(s) is consistent with the interests of Claim and Interest Holders and with public policy), and (b) the identity of any insider that will be employed or retained by the Debtor and the nature of any compensation for such insider.

- With respect to each Class of Claims or Interests, each Impaired Claim and Impaired Interest Holder either has accepted the Combined Disclosure Statement and Plan or will receive or retain under the Combined Disclosure Statement and Plan, on account of the Claims or Interests held by such Holder, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

- The Plan provides that Allowed Administrative Claims and Priority Claims other than Priority Tax Claims will be paid in full on the Effective Date, except to the extent that the Holder of any such Claim has agreed to another less favorable treatment.

- If a Class of Claims is Impaired under the Combined Disclosure Statement and Plan, at least one Class of Impaired Claims has accepted the Combined Disclosure Statement and Plan, determined without including any acceptance of the Combined Disclosure Statement and Plan by insiders holding Claims in such Class.

- Confirmation of the Combined Disclosure Statement and Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Combined Disclosure Statement and Plan, unless such liquidation or reorganization is proposed in the Combined Disclosure Statement and Plan.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

The Debtor believes that, upon receipt of the votes required to confirm the Combined Disclosure Statement and Plan, the Combined Disclosure Statement and Plan will satisfy the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of chapter 11 and of section 1129, and that the Combined Disclosure Statement and Plan has been proposed and submitted to the Bankruptcy Court in good faith.

## J.      Feasibility of the Combined Disclosure Statement and Plan

In connection with Confirmation of the Combined Disclosure Statement and Plan, the Bankruptcy Court will be required to determine that the Combined Disclosure Statement and Plan is feasible pursuant to section 1129(a)(11) of the Bankruptcy Code, which means that the Confirmation of the Combined Disclosure Statement and Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

The Debtor believes that the Combined Disclosure Statement and Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code, as Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Reorganized Debtor.  In connection with the development of the Combined Disclosure Statement and Plan and for the purposes of determining whether the Combined Disclosure Statement and Plan satisfies this feasibility standard, the ability of the Reorganized Debtor to satisfy its financial obligations while maintaining sufficient liquidity and capital resources has been examined.

In particular, the Debtor is confident that the Reorganized Debtor will be feasible going forward, and will not require a further reorganization.  Further, Crius has committed to providing the DIP Financing and $200,000 cash, which will fund the acquisition of New Equity in the Debtor through the Plan no later than the Effective Date. Because distributions are from the Distribution Trust no subsequent Distributions to the creditors are dependent on any metrics related to the Reorganized Debtor.

## K.      Acceptance of the Combined Disclosure Statement and Plan

As a condition to Confirmation, the Bankruptcy Code requires that each Class of Impaired Claims vote to accept the Combined Disclosure Statement and Plan, except under certain circumstances.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that class, but for that purpose counts only those who actually timely and properly vote to accept or to reject the Combined Disclosure Statement and

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Plan. Thus, Holders of Claims in each of Classes 3 and 4 will have voted to accept the Combined Disclosure Statement and Plan only if two-thirds (2/3) in amount and a majority in number of the Claims actually voting in each Class cast their ballots in favor of acceptance. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

**L.    Alternative to the Combined Disclosure Statement and Plan**

If the Combined Disclosure Statement and Plan is not confirmed, the Debtor, could elect to proceed with a sale its assets. Or, the Debtor, or any other party in interest, could attempt to formulate a different plan. The additional costs, however, might constitute Administrative Claims and may be so significant that one or more parties in interest could request that the Chapter 11 Case be converted to a case under chapter 7. Accordingly, the Debtor believes that the Combined Disclosure Statement and Plan represents the best way to maximize value of the Debtor's estate.

**M.    Best Interest Test and Liquidation Analysis**

Even if a plan is accepted by each class of claims and interests, the Bankruptcy Code requires a bankruptcy court to determine that the plan is in the best interests of all holders of claims or interests that are impaired by the plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such Holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if a debtor were liquidated under chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its chapter 11 case was converted to a chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the chapter 7 case and the Chapter 11 Case. Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the debtor in its chapter 11 case (such as compensation of attorneys, financial advisors, and accountants) that are allowed in the chapter 7 cases, litigation costs, and Claims arising from the operations of the debtor during the pendency of the Chapter 11 Case.  The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business.  Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity security interests.  The liquidation would also prompt the rejection of a large number of executory contracts and unexpired leases and thereby significantly enlarge the total pool of unsecured claims by reason of resulting rejection damages Claims.

Once the bankruptcy court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable Distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation.  If such probable distribution has a value greater than the distributions to be received by such creditors and equity security holders under the plan, then the plan is not in the best interests of creditors and equity security holders.

For purposes of the best interests test, in order to determine the amount of liquidation value available to Creditors, the Debtor has prepared a liquidation analysis (the "**Liquidation Analysis**"), a copy of which is annexed as Exhibit 1.  Based on the Liquidation Analysis, the Debtor believes that Holders of Allowed General Unsecured Claims would recover less in a liquidation than under the Plan.

The Debtor notes that any liquidation analysis with respect to the Debtor is inherently speculative.  The Debtor's assets, on a going concern basis or on a standalone basis, are subject to significant valuation uncertainties for multiple reasons including, but not limited to, the Debtor's historical negative operating cash flows, declining historical revenue trend, ongoing research & development costs for future product cycles, intense industry competition, the limited pool of likely buyers for such specialized assets, and the risk of alternative or disruptive technologies.  The Liquidation Analysis necessarily contains estimates of the net proceeds that would be received from a sale of such assets conducted on an expedited timeframe.  Further, the Liquidation Analysis necessarily contains estimates of the amount of Claims that will ultimately become Allowed Claims.  As the Debtor has not yet reviewed and fully analyzed all Claims and Interests, the estimates of Claims underlying the Liquidation Analysis are based upon the Debtor's review of its books and records and of certain Proofs of Claim, and include estimates of a number of Claims that are contingent, disputed, and/or unliquidated.  The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including, without limitation, any determination of the value of any Distribution to be made on account of Allowed Claims under the Combined Disclosure Statement and Plan.

Notwithstanding the difficulty in quantifying recoveries on Allowed Claims with precision, the Debtor believes that Holders of Claims that are Impaired will receive equal or greater value as of the Effective Date than such Holders would receive in a chapter 7 liquidation. Accordingly, the Debtor believes that the Combined Disclosure Statement and Plan satisfies the "best interests" test of section 1129 of the Bankruptcy Code.

**N.     Confirmation Without Acceptance of All Impaired Classes: The "Cramdown" Alternative**

In the event that one of Classes 2B, 3 and 4 does not vote to accept the Combined Disclosure Statement and Plan, the Debtor will seek Confirmation of the Combined Disclosure Statement and Plan pursuant to the "cramdown" provisions of the Bankruptcy Code. Specifically, section 1129(b) of the Bankruptcy Code provides that a plan can be confirmed even if the plan is not accepted by all Impaired classes, as long as at least one impaired class of claims has accepted it.  The Bankruptcy Court may confirm a plan at the request of the Debtor if the Combined Disclosure Statement and Plan "does not discriminate unfairly" and is "fair and equitable" as to each Impaired class that has not accepted the Combined Disclosure Statement and Plan.  A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.

The Debtor believes the Combined Disclosure Statement and Plan does not discriminate unfairly with respect to the Claims and Interests in Classes.

A plan is fair and equitable as to a class of unsecured Claims that rejects a plan if the plan provides (i) for each Holder of a Claim included in the rejecting class to receive or retain on account of that Claim property that has a value, as of the effective date of the plan, equal to the Allowed amount of such Claim or (ii) that the Holder of any Claim or Interest that is junior to the Claims of such class will not receive or retain on account of such junior Claim or Interest any property at all.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (i) that each Holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the Allowed amount of any fixed liquidation preference to which such Holder is entitled, any fixed redemption price to which such Holder is entitled or the value of such interest or (ii) that the Holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property at all.

The Debtor believes that it will meet the "fair and equitable" requirements of section 1129(b) of the Bankruptcy Code with respect to Holders of Claims in Classes 2B, 3, 4, 5 and 6 and Holders of Interests in Class 7 and that the Combined Disclosure Statement and Plan

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

satisfies the foregoing requirements for nonconsensual confirmation of the Combined Disclosure Statement and Plan.

## O.  Releases by the Debtor and Third Parties

The release provisions set forth in Article XVI.H of this Combined Disclosure Statement and Plan are an integral part of this Combined Disclosure Statement and Plan.  Absent such releases, the Debtor and Crius would not have agreed to the terms of this Combined Disclosure Statement and Plan and the Holders of Allowed Claims would receive a diminished (or, in some cases, no) recovery on account of such Claims.

## P.  Estimated Effective Date and Date of Distributions

The Debtor estimates that the Effective Date will occur within 5 Business Days following the date that the Confirmation Order becomes final and non-appealable, which is expected to be on May 16, 2017.  The Debtor further estimates that all Distributions to the Holders of Allowed Claims will be completed prior to December 31, 2018.

## ARTICLE IV:

## SUMMARY OF DEBTOR'S ASSETS; SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

## A.  Summary of Treatment of Claims and Equity Interests and Estimated Recoveries

The following chart provides a summary of treatment of each Class of Claims and Equity Interests (other than Administrative Claims and Priority Tax Claims), and an estimate of the recoveries of each Class.[4]  The treatment provided in this chart is for informational purposes only and is qualified in its entirety by Article VI of the Combined Disclosure Statement and Plan.

---

[4]      These amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by Creditors in proofs of claim or otherwise.  The Debtor has not completed its analysis of Claims in the Chapter 11 Case and objections to such Claims have not been fully litigated.  Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time.  Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

| Class | Estimated Allowed Claims | Treatment / Voting Status | Estimated Recovery to Holders of Allowed Claims[5] |
|---|---|---|---|
| Class 1— Priority Non-Tax Claims | $xx,xxx.xx | Unimpaired; Deemed to Accept Plan | 100% |
| Class 2A— Secured Claims | $xx,xxx.xx | Unimpaired; Deemed to Accept Plan | 100% |
| Class 2B—Crius Prepetition Secured Claims | $xx,xxx.xx | Impaired; Entitled to Vote on Plan | [0% to x.0%] |
| Class 3— Crius Unsecured Deficiency Claims | $xx,xxx.xx | Impaired; Entitled to Vote on Plan | [0% to x.0%] |
| Class 4— General Unsecured Claims | $xx,xxx.xx | Impaired; Entitled to Vote on Plan | 0% to x.0% |
| Class 5— Common Equity Interests | N/A | Impaired; Deemed to Reject Plan | 0% |

ALTHOUGH THE DEBTOR BELIEVES THAT THE ESTIMATED RECOVERIES ARE REASONABLE, THERE IS NO ASSURANCE THAT THE ACTUAL AMOUNTS OF

---

[5] The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Case. As set forth in footnote 3 above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

ALLOWED CLAIMS IN EACH CLASS WILL NOT MATERIALLY EXCEED THE ESTIMATED AGGREGATE AMOUNTS SHOWN IN THE TABLE ABOVE. The actual recoveries under the Plan will depend upon a variety of factors, including whether, and in what amount and with what priority, contingent Claims against the Debtor become non-contingent and fixed; and whether, and to what extent, disputed Claims are resolved in favor of the Debtor. Accordingly, no representation can be or is being made with respect to whether each estimated recovery amount shown in the table above will be realized.

**The Debtor believes that the Plan provides Holders of Claims the best recovery possible. Accordingly, the Debtor believes that the Plan is in the best interests of creditors and shareholders and should be approved. Therefore, the Debtor recommends that all persons entitled to vote on the Plan vote to accept the Plan.**

## ARTICLE V

## CONFIRMATION AND VOTING PROCEDURES

### A.      Overview of the Combined Disclosure Statement and Plan

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of its creditors and shareholders. As a general matter, a plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by a bankruptcy court makes such plan binding upon a debtor and any creditor of or equity interest holder in such debtor, whether or not such creditor or equity interest holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan.

Under the Plan, Claims against and Equity Interests in the Debtor are divided into Classes according to their relative seniority and other criteria. If the Plan is confirmed by the Bankruptcy Court and becomes effective, the Claims and Equity Interests of the various Classes will be treated in accordance with the Plan provisions for each such Class. On the date that the Plan becomes effective, known as the Effective Date, and at certain times thereafter, distributions will be made to each Debtor s creditors as provided in the Plan. Article IV.A of this Combined Disclosure Statement and Plan includes a table that summarizes the classification and treatment of Claims and Equity Interests against the Debtor. *See* Article IV.A—"Summary of Treatment of Claims and Equity Interests and Estimated Recoveries." Set forth in Article VI.A of this Combined Disclosure Statement and Plan is a more detailed description of the Classes of Claims against and Equity Interests in the Debtor created under the Plan, the treatment of those Classes under the Plan, and the property to be distributed under the Plan.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

As noted above, the Plan provides for the following distributions to Holders of Claims:

- All Claims (except for the DIP Claims) that are Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims or Allowed Priority Non-Tax Claims, will be paid or otherwise satisfied in full as required by the Bankruptcy Code from the Distribution Trust or from the Professional Fee Reserve, unless otherwise agreed to by the Debtor (or the Distribution Trustee) and the Holders of such Claims.

- All Allowed General Unsecured Claims (including the Crius Deficiency Claim) shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, a Pro Rata Share of the Distribution Trust Interests.

- All Crius Prepetition Secured Claims shall be Allowed in full. $[_____] of such Claim shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Allowed Claim (together with distributions on account of the Crius DIP Claims), 100% of the New Equity in the Reorganized Debtor on the Effective Date.

- All Crius DIP Claims shall be Allowed in full and shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Allowed Claim (together with distributions on account of the Crius Prepetition Secured Claims), 100% of the New Equity in the Reorganized Debtor on the Effective Date.

- No Distributions will be made on account of any Equity Interests.  On the Effective Date, all Equity Interests shall be deemed cancelled and extinguished without further action by the Debtor or the Reorganized Debtor.

## B.   Confirmation Procedure

### 1.   *Confirmation Hearing*

On March [29], 2017, the Bankruptcy Court entered an Order [Docket No. __] (the "**Conditional Approval and Procedures Order**") conditionally approving the Combined Disclosure Statement for solicitation purposes only and authorizing the Debtor to solicit the Plan. The Confirmation Hearing has been scheduled for May [2], 2017 at [1:30 p.m. (Eastern Time)] at the Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom 1, Wilmington, Delaware 19801 to consider (i) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

**2.**      *Procedure for Objections*

Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Combined Disclosure Statement and Plan must be made in writing and filed with the Bankruptcy Court and served on (a) counsel to the Debtor, Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19801, Attn: Scott D. Cousins and Evan T. Miller; (b) counsel to Crius, (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Mark Getachew and Paul Shalhoub; and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square 1000 North King Street, Wilmington, DE 19801, Attn: Matthew B. Lunn and Justin H. Rucki, and (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, DE 19801, Attn: Mark S. Kenney, by no later than **April [24], 2017 at 4:00 p.m. (Eastern Time). Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.**

**3.**      *Requirements for Confirmation*

The Bankruptcy Court will confirm the Combined Disclosure Statement and Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, the Combined Disclosure Statement and Plan (i) must be accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, the Combined Disclosure Statement and Plan must not "discriminate unfairly" against and be "fair and equitable" with respect to such Class; and (ii) must be feasible. The Bankruptcy Court must also find that:

a.      the Combined Disclosure Statement and Plan has classified Claims and Equity Interests in a permissible manner;

b.      the Combined Disclosure Statement and Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

c.      the Combined Disclosure Statement and Plan has been proposed in good faith.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

4.      *Classification of Claims and Equity Interests*

Section 1122 of the Bankruptcy Code requires the Combined Disclosure Statement and Plan to place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such class. The Combined Disclosure Statement and Plan creates separate Classes to deal respectively with secured Claims, unsecured Claims and Equity Interests. The Debtor believes that the Combined Disclosure Statement and Plan's classifications place substantially similar Claims or Equity Interests in the same Class and thus, meet the requirements of section 1122 of the Bankruptcy Code.

5.      *Impaired Claims or Equity Interests*

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes impaired by the Combined Disclosure Statement and Plan and receiving a payment or Distribution under the Combined Disclosure Statement and Plan may vote on the Combined Disclosure Statement and Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be impaired if the Combined Disclosure Statement and Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Equity Interests treated in such Class. The Holders of Claims not impaired by the Combined Disclosure Statement and Plan are deemed to accept the Combined Disclosure Statement and Plan and do not have the right to vote on the Combined Disclosure Statement and Plan. The Holders of Claims or Equity Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Disclosure Statement and Plan are deemed to reject the Combined Disclosure Statement and Plan and do not have the right to vote. Finally, the Holders of Claims or Equity Interests whose Claims or Equity Interests are not classified under the Combined Disclosure Statement and Plan are not entitled to vote on the Combined Disclosure Statement and Plan.

6.      *Feasibility*

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Combined Disclosure Statement and Plan). The Debtor believes that the Combined Disclosure Statement and Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code, as confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor or any successor under the Combined Disclosure Statement and Plan. In connection with the development of the Combined Disclosure

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Statement and Plan and for the purposes of determining whether the Combined Disclosure Statement and Plan satisfies the feasibility standard, the Debtor analyzed its ability to satisfy its financial obligations while maintaining sufficient liquidity and capital resources.  The Debtor prepared financial projections (the "**Projections**") for the fiscal years 2016-2021 (the "**Projection Period**"), a copy of which is annexed as Exhibit 2.

The Debtor does not, as a matter of course, publish its business plans or strategies, projections or anticipated financial position.  Accordingly, the Debtor does not anticipate that it will, and disclaims any obligation to, furnish updated business plans or Projections to Holders of Claims or other parties in interest after the Effective Date, or otherwise make such information public, unless required to do so by the SEC or other regulatory bodies pursuant to the provisions of the Combined Disclosure Statement and Plan.  In connection with the planning and development of the Combined Disclosure Statement and Plan, the Projections were prepared by the Debtor, with the assistance of its professionals, to present the anticipated impact of the Combined Disclosure Statement and Plan.  The Projections assume that the Combined Disclosure Statement and Plan will be implemented in accordance with its stated terms and the contemplated schedule proposed herein.  The Projections are based on forecasts of key economic variables and may be significantly impacted by, among other factors, changes in demand for the Debtor's products and services, further competition within Debtor's current markets, changes in interest rates and inflation, changes in terms with material suppliers, continued operation of the Debtor's business in bankruptcy, and/or a variety of other factors.  Consequently, the estimates and assumptions underlying the Projections are inherently uncertain and are subject to material business, economic, and other uncertainties.  Therefore, such Projections, estimates, and assumptions are not necessarily indicative of current values or future performance, which may be significantly less or more favorable than set forth herein.  The Projections included herein were last updated on [_____, 2017].

The Projections should be read in conjunction with the significant assumptions, qualifications, and notes set forth below.

THE DEBTOR PREPARED THE PROJECTIONS IN CONNECTION WITH ITS CHAPTER 11 CASE.  THE DEBTOR DID NOT PREPARE SUCH PROJECTIONS TO COMPLY WITH THE GUIDELINES FOR PROSPECTIVE FINANCIAL STATEMENTS PUBLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS AND THE RULES AND REGULATIONS OF THE SEC.  EXCEPT FOR PURPOSES OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, THE DEBTOR DOES NOT PUBLISH PROJECTIONS OF ITS ANTICIPATED FINANCIAL POSITION OR RESULTS OF OPERATIONS.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

MOREOVER, THE PROJECTIONS CONTAIN CERTAIN STATEMENTS THAT ARE "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. THESE STATEMENTS ARE SUBJECT TO A NUMBER OF ASSUMPTIONS, RISKS, AND UNCERTAINTIES, MANY OF WHICH ARE BEYOND THE CONTROL OF THE DEBTOR, INCLUDING THE IMPLEMENTATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE CONTINUING AVAILABILITY OF SUFFICIENT BORROWING CAPACITY OR OTHER FINANCING TO FUND OPERATIONS, ACHIEVING OPERATING EFFICIENCIES, EXISTING AND FUTURE GOVERNMENTAL REGULATIONS AND ACTIONS OF GOVERNMENTAL BODIES, INDUSTRY-SPECIFIC RISK FACTORS, AND OTHER MARKET AND COMPETITIVE CONDITIONS. HOLDERS OF CLAIMS AND INTERESTS ARE CAUTIONED THAT THE FORWARD-LOOKING STATEMENTS SPEAK AS OF THE DATE MADE AND ARE NOT GUARANTEES OF FUTURE PERFORMANCE. ACTUAL RESULTS OR DEVELOPMENTS MAY DIFFER MATERIALLY FROM THE EXPECTATIONS EXPRESSED OR IMPLIED IN THE FORWARD-LOOKING STATEMENTS, AND THE DEBTOR UNDERTAKES NO OBLIGATION TO UPDATE ANY SUCH STATEMENTS.

THE PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, THOUGH CONSIDERED REASONABLE BY THE DEBTOR, MAY NOT BE REALIZED AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, INDUSTRY, REGULATORY, LEGAL, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTOR'S AND THE REORGANIZED DEBTOR'S CONTROL. THE DEBTOR CAUTIONS THAT NO REPRESENTATIONS CAN BE MADE OR ARE MADE AS TO THE ACCURACY OF THE PROJECTIONS OR TO THE REORGANIZED DEBTOR'S ABILITY TO ACHIEVE THE PROJECTED RESULTS. SOME ASSUMPTIONS INEVITABLY WILL BE INCORRECT. MOREOVER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THE DEBTOR PREPARED THESE PROJECTIONS MAY BE DIFFERENT FROM THOSE ASSUMED, OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND THUS THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. EXCEPT AS OTHERWISE PROVIDED IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE DEBTOR AND THE REORGANIZED DEBTOR, AS APPLICABLE, DO NOT INTEND AND UNDERTAKE NO OBLIGATION TO UPDATE OR OTHERWISE REVISE THE PROJECTIONS TO REFLECT EVENTS OR CIRCUMSTANCES EXISTING OR ARISING AFTER THE DATE HEREOF OR TO REFLECT THE OCCURRENCE OF UNANTICIPATED EVENTS. THEREFORE, THE PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTEE OR OTHER

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.   IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, HOLDERS OF CLAIMS MUST MAKE THEIR OWN DETERMINATIONS AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE PROJECTIONS AND SHOULD CONSULT WITH THEIR OWN ADVISERS.

The Projections assume that the Debtor will emerge from chapter 11 on or about April [__], 2017.

The Projections herein include pro forma consolidated statements of operations of the Debtor for fiscal years [2016-2021].

The Projections should be read in conjunction with the assumptions, qualifications, and explanations set forth in this Combined Disclosure Statement and Plan, and the Plan Supplement, in their entirety, and the historical consolidated financial statements (including the notes and schedules thereto).

### 7.    *Eligibility to Vote on the Combined Disclosure Statement and Plan*

Unless otherwise Ordered by the Bankruptcy Court, only Holders of Allowed Claims in Class 2B, Class 3, and Class 4 may vote on the Combined Disclosure Statement and Plan. Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Disclosure Statement and Plan, you must hold a Claim in Class 2B, Class 3 or Class 4, or be the Holder of a Claim in such Class that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

### 8.    *Solicitation Notice*

All Holders of Claims in Class 2B, Class 3 and Class 4 will receive (i) notice of the Confirmation Hearing on the Combined Disclosure Statement and Plan (the "**Confirmation Notice**"), (ii) a form of ballot, and (iii) a letter from the Debtor urging the Holders of Allowed General Unsecured Claims to vote to accept the Combined Disclosure Statement and Plan and any other materials provided in Solicitation Procedure Order.  All other Creditors and parties in interest not entitled to vote on the Combined Disclosure Statement and Plan will only receive a copy of the Confirmation Notice.

### 9.    *Solicitation Materials*

In soliciting votes for the Plan pursuant to this Combined Disclosure Statement and Plan, the Debtor, through its solicitation agent JND Corporate Restructuring (the "**Solicitation**

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY
COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**Agent**"), will send to Holders of Claims who are entitled to vote copies of (a) this Combined Disclosure Statement and Plan and Plan, (b) the notice of, among other things, (i) the date, time, and place of the hearing to consider Confirmation of the Combined Disclosure Statement and Plan and related matters and (ii) the deadline for filing objections to Confirmation of the Combined Disclosure Statement and Plan, (c) one or more ballots (and return envelopes) to be used in voting to accept or to reject the Combined Disclosure Statement and Plan, and (d) other materials as authorized by the Bankruptcy Court [Docket No. ___].

If you are the Holder of a Claim who believes you are entitled to vote on the Combined Disclosure Statement and Plan, but you did not receive a Ballot or your Ballot is damaged or illegible, or if you have any questions concerning voting procedures, you should contact the Solicitation Agent at:

> Verengo's Claims Processing Center
> c/o JND Corporate Restructuring
> 8269 E. 23rd Avenue
> Suite 275, Denver, CO  80238

### 10.    *Procedure/Voting Deadlines*

In order for your ballot to count, you must either (1) complete an electronic ballot at http://www.jndla.com/cases/verengo or (2) complete, date, sign and properly mail, courier or personally deliver a paper ballot (please note that envelopes are not included with the ballot) to the Claims and Balloting Agent at the following address: Verengo's Claims Processing Center, c/o JND Corporate Restructuring, 8269 E. 23rd Avenue, Suite 275, Denver, CO 80238. BALLOTS SENT BY FACSIMILE TRANSMISSION OR E-MAIL ARE NOT ALLOWED AND WILL NOT BE COUNTED.

Ballots must be submitted electronically, or the Claims and Balloting Agent must RECEIVE physically original ballots by mail or overnight delivery, on or before the Voting Deadline of **March [__], 2017, at 4:00 p.m. (prevailing Pacific Time)**. (Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a ballot is submitted electronically or the Claims and Balloting agent receives your original paper ballot.)

Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Disclosure Statement and Plan.

Chapter 11 Combined Disclosure Statement
and Plan of Reorganization

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**11.**     *Acceptance of the Combined Disclosure Statement and Plan*

If you are a creditor entitled to vote, your acceptance of the Combined Disclosure Statement and Plan is important. In order for the Combined Disclosure Statement and Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each impaired Class of Claims) must vote to accept the Combined Disclosure Statement and Plan.  At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Disclosure Statement and Plan.  The Debtor urges that you vote to accept the Combined Disclosure Statement and Plan.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY SUBMIT YOUR BALLOT.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

**12.**     *Elimination of Vacant Classes*

Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Disclosure Statement and Plan for all purposes, including for purposes of determining acceptance of the Combined Disclosure Statement and Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**13.**     *Waivers of Defects, Irregularities, Etc.*

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots will be determined by the Solicitation Agent and the Debtor in its sole discretion, which determination will be final and binding.  As indicated below under "Withdrawal of Ballots; Revocation," effective withdrawals of ballots must be delivered to the Solicitation Agent prior to the Voting Deadline.  The Debtor reserves the absolute right to contest the validity of any such withdrawal. The Debtor also reserves the right to reject any and all ballots not in proper form, the acceptance of which would, in the opinion of the Debtor or their counsel, be unlawful.  The Debtor further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular ballot.  The interpretation (including the ballot and the respective instructions thereto) by the Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.  Unless waived, any defects or irregularities in connection with deliveries of ballots must be cured within such time as the Debtor (or the Bankruptcy Court) determines.  Neither the Debtor nor any other Person will be under any duty to provide notification of defects or

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

irregularities with respect to deliveries of ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Bankruptcy Court, delivery of such ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

**14.** *Withdrawal of Ballots; Revocation*

Any party who has delivered a valid ballot for the acceptance or rejection of the Combined Disclosure Statement and Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline.  To be valid, a notice of withdrawal must (i) contain the description of the Claim(s) to which it relates and the aggregate principal amount represented by such Claim(s), (ii) be signed by the withdrawing party in the same manner as the ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be received by the Solicitation Agent in a timely manner. The Debtor intends to consult with the Solicitation Agent to determine whether any withdrawals of ballots were received and whether the requisite acceptances of the Combined Disclosure Statement and Plan have been received.  As stated above, the Debtor expressly reserves the right to contest the validity of any such withdrawals of ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of ballots which is not received in a timely manner by the Solicitation Agent will not be effective to withdraw a previously cast ballot.

Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed ballot may revoke such ballot and change his or its vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent properly completed ballot for acceptance or rejection of the Combined Disclosure Statement and Plan.  In the case where more than one timely, properly completed ballot is received, only the ballot which bears the latest date will be counted for purposes of determining whether the requisite acceptances have been received.

This Combined Disclosure Statement and Chapter 11 Plan has not yet been Approved by the Bankruptcy Court for Circulation to All Creditors and Interest Holders or for the Use in Solicitation of Votes

# ARTICLE VI:

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.      Classification of Claims

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and the respective treatment of such unclassified Claims is set forth below in this Article VI of the Combined Disclosure Statement and Plan.

| Class | Type | Status Under Combined Plan and Disclosure Statement | Voting Status |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| Class 2A | Secured Claims | Unimpaired | Deemed to Accept |
| Class 2B | Crius Prepetition Secured Claims | Impaired | Entitled to Vote |
| Class 3 | Crius Unsecured Deficiency Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Common Equity Interests | Impaired | Deemed to Reject |

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Combined Disclosure Statement and Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

   **1.      *Unclassified Claims (not entitled to vote on the Combined Disclosure Statement and Plan)***

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

      *(a)*    *Administrative Claims*

      *(b)*    *Priority Tax Claims*

      *(c)*    *DIP Claims*

**2.**    ***Unimpaired Classes of Claims and Interests (deemed to have accepted the Combined Disclosure Statement and Plan and, therefore, not entitled to vote on the Combined Disclosure Statement and Plan)***

      *(a)*    *Class 1.  Priority Non-Tax Claims*

      *(b)*    *Class 2A.  Secured Claims*

**3.**    ***Impaired/Voting Classes of Claims***

      (a)    *Class 2B.  Crius Prepetition Secured Claims*

      (b)    *Class 3.  Crius Unsecured Deficiency Claims*

      *(c)*    *Class 4.  General Unsecured Claims*

      *(d)*    *Class 5.  Common Equity Interests*

**B.**    **Treatment of Claims**

**1.**    ***Unclassified Claims***

      (a)    *Administrative Claims*

Except to the extent that an Allowed Administrative Claim has been satisfied prior to the Effective Date, and except as otherwise provided for herein (including with respect to Professional Fee Claims), each Holder of an Allowed Administrative Claim shall be entitled to receive in full, final and complete settlement, release, and discharge of such Claim, payment from the Distribution Trust in full in Cash of the unpaid portion of such Allowed Administrative Claim on the Distribution Date.

      (b)    *Priority Tax Claims*

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Except to the extent that an Allowed Priority Tax Claim has been satisfied prior to the Effective Date, each Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full, final and complete settlement, release, and discharge of such Claim, at the election of the Debtor or the Distribution Trustee, payment from the Distribution Trust in full in Cash of the unpaid portion of such Allowed Priority Tax Claim on the Distribution Date or such other treatment by the Distribution Trust as permitted under section 1129(a)(9)(C) of the Bankruptcy Code.

(c)    *DIP Claims*

The Crius DIP Claims shall be Allowed in full and shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Allowed Claim (together with distributions on account of the Crius Prepetition Secured Claims), 100% of the New Equity in the Reorganized Debtor on the Effective Date.

**2.    *Other Provisions Governing Administrative Claims***

(i)    *General Provisions*:  Except as otherwise provided in this Article VI, requests for payment of Administrative Claims must be included within an application (setting forth the amount of, and basis for, such Administrative Claims, together with documentary evidence) and Filed and served on respective counsel for the Debtor, the Reorganized Debtor, Crius, and the Distribution Trustee no later than thirty (30) days after the Confirmation Hearing or by such earlier deadline governing such an Administrative Claim as established by other order of the Bankruptcy Court entered before the Effective Date.   Holders of Administrative Claims (including, without limitation, Holders of any Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date specified in this section shall be forever barred from asserting such Claims against the Debtor, Reorganized Debtor, Distribution Trust or any of their property.  Requests for payments of Administrative Claims included within a proof of claim are of no force and effect, and are disallowed in their entirety as of the Effective Date, and shall be satisfied only to the extent such Administrative Claim is subsequently Filed in a timely fashion as provided by this subsection and subsequently becomes an Allowed Claim.

(ii)    *Professionals*.    All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the Chapter 11 Case) shall File and serve on the Debtor, the Reorganized Debtor, Crius, the Distribution Trustee, and the U.S. Trustee an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective

Date. Objections to applications of Professionals for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor, the Distribution Trustee, Crius, the U.S. Trustee, and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date the application is filed, or the Bankruptcy Court may enter an order authorizing the fees without a hearing. Any professional fees and reimbursements or expenses incurred by the Distribution Trust subsequent to the Effective Date may be paid in accordance with the Distribution Trust Agreement. Any professional fees and reimbursements or expenses incurred by the Reorganized Debtor subsequent to the Effective Date may be paid without further order of, or application to, the Bankruptcy Court. For the avoidance of doubt and without limiting the foregoing, from and after the Effective Date, all Allowed Professional Fee Claims shall be satisfied from the Professional Fee Reserve to the extent any remaining availability therein in accordance with Bankruptcy Court order.

### 3. *Unimpaired Classes of Claims and Interests*

(a) *Class 1: Priority Non-Tax Claims*

<u>Classification</u>: Class 1 consists of Priority Non-Tax Claims against the Debtor.

<u>Treatment</u>: Unless otherwise agreed to by the Holders of the Allowed Class 1 Claims and the Debtor, each Holder of an Allowed Priority Non-Tax Claim shall receive in full, final and complete satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, payment from the Distribution Trust in full in Cash of the unpaid portion of such Allowed Claim on the Distribution Date or pursuant to such other terms as may be agreed to between such Holder and the Debtor or Distribution Trustee; <u>provided</u>, <u>however</u>, that, notwithstanding any contract provision or applicable law that entitles a holder of an Allowed Class 1 Claim to postpetition interest, no Allowed Class 1 Claim shall receive postpetition interest on account of such Claim.

<u>Voting</u>: Class 1 is Unimpaired, and the Holders of Class 1 Claims will be conclusively deemed to have accepted the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Claims will not be entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

(b) *Class 2A: Secured Claims*

<u>Classification</u>: Class 2A consists of Secured Claims against the Debtor.

<u>Treatment</u>: Each Holder of an Allowed Class 2A Claim shall receive, in full, final and complete satisfaction, settlement, release, and discharge of and in exchange of such Allowed

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Claim, payment from the Distribution Trust in full in Cash of the unpaid portion of such Allowed Claim on the Distribution Date; provided, however, that to the extent such Allowed Claim is secured by a deposit held by such Holder, such Allowed Claim shall be satisfied by setoff of the amount of such deposit first against any Claim of such Holder that would otherwise be an Administrative Claim and second against any other Claim of such Holder, with any excess deposit to be paid by such Holder to the Distribution Trust.

Voting:  Class 2A is Unimpaired, and the Holders of Class 2A Claims will be conclusively deemed to have accepted the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2A Claims will not be entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

4.    *Impaired/Voting Classes of Claims and Interests*

(a)    *Class 2B: Crius Prepetition Secured Claims*

Classification:  Class 2B consists of the Crius Prepetition Secured Claims against the Debtor.

Treatment: The Crius Prepetition Secured Claims shall be Allowed in full. $[_____] of such Claim shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Allowed Claim (together with distributions on account of the Crius DIP Claims), 100% of the New Equity in the Reorganized Debtor on the Effective Date.

Voting:  Class 2B is Impaired, and the Holder of the Class 2B Claim will be entitled to vote to accept or reject the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)    *Class 3: Crius Unsecured Deficiency Claims*

Classification:  Class 3 consists of the Crius Unsecured Deficiency Claims against the Debtor.

Treatment:  The Crius Unsecured Deficiency Claim shall be Allowed in the amount of $[____.00] plus interest and fees accrued prepetition.  Crius shall receive, from the Distribution Trust, in full and complete settlement, release, and discharge of and in exchange for the Crius Unsecured Deficiency Claim, Cash equal to the Pro Rata share of its beneficial interest

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

in the Distribution Trust, after payment in full, or a reserve being established for, all Administrative Claims, Priority Claims, and Secured Claims.

Voting:  Class 3 is Impaired, and the Holder of the Class 3 Claim will be entitled to vote to accept or reject the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code.

(c)    *Class 4: General Unsecured Claims*

Classification:  Class 4 consists of General Unsecured Claims against the Debtor, including the claims related to the Investor Notes held by Arnold Fishman, BainBridge Partners, Org Bowen Campbell & Lauren Bishop, and Bishop Living Trust.

Treatment:  Each Holder of an Allowed Class 4 Claim shall be paid in Cash from the Distribution Trust on the Distribution Date, the Pro Rata share of its beneficial interest in the Distribution Trust, after payment in full, or a reserve being established for, all Administrative Claims, Priority Claims, and Secured Claims.

Voting:  Class 4 is Impaired, and the Holder of the Class 4 Claim will be entitled to vote to accept or reject the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code.

A schedule of the Debtor's known Avoidance Actions other than Retained Avoidance Actions will be provided as part of the Plan Supplement as Exhibit 3 thereto.

(d)    *Class 5: Common Equity Interests*

Classification:  Class 5 consists of all Common Equity Interests in the Debtor.

Treatment:   Class 5 Equity Interests will be canceled, released, waived and extinguished as of the Effective Date, and will be of no further force or effect, whether surrendered for cancelation or otherwise, and there shall be no distribution on account of such Interests to any Holder thereof.

Voting:  Class 5 is Impaired.  Each Holder of an Equity Interest will be conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, no Holder of an Equity Interest will be entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**5.    *Recourse to Distribution Trust Only***

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims and Allowed General Unsecured Claims shall receive Distributions under the Plan on account of such claims solely from the Distribution Trust in accordance with the terms of this Combined Disclosure Statement and Plan.  Such Distributions shall be in full and final satisfaction of such Claims, and neither the Distribution Trust, the Distribution Trustee, the Distribution Trust Beneficiaries, nor the holders of such Claims shall have any recourse to the Debtor, the Reorganized Debtor, Crius, or the respective directors, managers, employees, agents, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, or any of their property or assets, on account of such Claims or otherwise.

### 6.    *Reservation of Rights Regarding Claims*

Except as otherwise explicitly provided in the Combined Disclosure Statement and Plan, nothing herein shall affect the Debtor's, the Reorganized Debtor's, or the Distribution Trust's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### 7.    *Special Provisions Regarding Insured Claims*

(a)  Distributions under the Combined Disclosure Statement and Plan to each holder of an Insured Claim shall be in accordance with the treatment provided under the Combined Disclosure Statement and Plan for General Unsecured Claims; provided, however, that the maximum amount of any Distribution under the Combined Disclosure Statement and Plan on account of an Allowed Insured Claim shall be limited to an amount equal to the applicable self-insured retention under the relevant insurance policy; provided further, however, that, to the extent a Holder has an Allowed Insured Claim, the amount of which exceeds the total coverage available from the relevant insurance policies of the Debtor, such Holder shall have an Allowed General Unsecured Claim in the amount by which such Allowed Insured Claim exceeds the coverage available from the Debtor's insurance policies.  Nothing in this section shall constitute a waiver of any Causes of Action the Debtor may hold against any Person, including the Debtor' insurance carriers; and nothing in this section is intended to, shall, or shall be deemed to preclude any Holder of an Allowed Insured Claim from seeking and/or obtaining a Distribution or other recovery from any insurer of the Debtor in addition to (but not in duplication of) any Distribution such Holder may receive under the Combined Disclosure Statement and Plan; provided, however, that the Debtor does not waive, and expressly reserve its rights to assert that any insurance coverage is property of the Estates to which it is entitled.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

(b) The Combined Disclosure Statement and Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtor's insurers under their policies, and the Debtor's insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtor, the existence, primacy and/or scope of available coverage under any alleged applicable policy. The Combined Disclosure Statement and Plan shall not operate as a waiver of any other Claims the Debtor's insurers have asserted or may assert in any Proof of Claim or the Debtor's rights and defenses to such Proofs of Claim.

## ARTICLE VII:

## ACCEPTANCE OR REJECTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN

**A.     Acceptance or Rejection by Class**

**1.     *Impaired Classes of Claims Entitled to Vote***

Holders of Allowed Claims and Interests in each Impaired Class of Claims or Interests and not otherwise deemed to reject the Combined Disclosure Statement and Plan are entitled to vote as a Class to accept or reject the Combined Disclosure Statement and Plan. Accordingly, only the votes of Holders of Claims in Class 2B, Class 3 and Class 4 shall be solicited with respect to the Combined Disclosure Statement and Plan.

**2.     *Acceptance by an Impaired Class***

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Combined Disclosure Statement and Plan if the Combined Disclosure Statement and Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Combined Disclosure Statement and Plan.

**3.     *Presumed Acceptances by Unimpaired Classes***

Class 1, Class 2A, Class 3 and Class 4 are Unimpaired under the Combined Disclosure Statement and Plan. Under section 1126(f) of the Bankruptcy Code, Holders of such Unimpaired

Claims are conclusively presumed to have accepted the Combined Disclosure Statement and Plan, and the votes of Holders of such Unimpaired Claims shall not be solicited.

### 4.    *Presumed Rejection by Impaired Class*

Class 5 is Impaired under the Combined Disclosure Statement and Plan.  Under section 1126(g) of the Bankruptcy Code, Holders of such Equity Interests do not receive or retain any property under the Combined Disclosure Statement and Plan and are conclusively presumed to have rejected the Combined Disclosure Statement and Plan, and the votes of Holders of such Equity Interests shall not be solicited

### B.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

To the extent that any Impaired Class rejects the Combined Disclosure Statement and Plan or is deemed to have rejected the Combined Disclosure Statement and Plan, the Debtor reserves its rights to request Confirmation of the Combined Disclosure Statement and Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Combined Disclosure Statement and Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE VIII:

## MEANS FOR IMPLEMENTATION OF THE
## COMBINED DISCLOSURE STATEMENT AND PLAN

### A.    Vesting of Estate Property

On the Effective Date, except as otherwise expressly provided in the Combined Disclosure Statement and Plan or Confirmation Order, the Distribution Trust Assets shall automatically vest in the Distribution Trust free and clear of all Claims, Liens and Interests. Except for the Distribution Trust Assets or as otherwise expressly provided in the Combined Disclosure Statement and Plan or in the Confirmation Order, pursuant to section 1123(b)(3) and section 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all of the property and assets of the Debtor shall automatically vest in the Reorganized Debtor, free and clear of all Claims, Liens and Interests.

The Reorganized Debtor may operate its business and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Bankruptcy Court.  As of the Effective Date, all such property of each Reorganized Debtor shall be free and clear of all Claims, Liens and Interests, , and the Reorganized Debtor shall receive the benefit of any and all discharges under the Bankruptcy Code and the Combined Disclosure Statement and Plan.

**B.      The Distribution Trust**

**1.      *Execution of Distribution Trust Agreement***

On or prior to the Effective Date, the Debtor shall execute the Distribution Trust Agreement, and shall take all other necessary steps to establish the Distribution Trust, which shall be for the payment of Allowed Administrative Claims, Allowed Priority Claims, Allowed Secured Claims, and for the benefit of the Distribution Trust Beneficiaries.  In the event of any conflict between the terms of this Article VIII.B and the terms of the Distribution Trust Agreement as such conflict relates to the establishment of the Distribution Trust, the terms of the Combined Disclosure Statement and Plan shall govern.  The Distribution Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Distribution Trust as a "liquidating trust" for United States federal income tax purposes and are not inconsistent with the terms of this Combined Disclosure Statement and Plan.

**2.      *Purpose of the Distribution Trust***

The Distribution Trust shall be established for the sole purpose of liquidating and distributing the assets of the Debtor contributed to such Distribution Trust in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

**3.      *Distribution Trust Assets***

The Distribution Trust shall consist of the Distribution Trust Assets.  On the Effective Date, all of the Distribution Trust Assets shall transfer to and be vested in the Distribution Trust.

**4.      *The Administration of the Distribution Trust and Authority and Powers of the Distribution Trustee***

The authorities and powers of the Distribution Trustee shall include, among other things, the sole and full power, authority, and standing to prosecute, compromise, or otherwise resolve the Distribution Trust Avoidance Actions and any other Claims and Causes of Action comprising

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

the Distribution Trust Assets. The Distribution Trust shall be administered by the Distribution Trustee pursuant to the Distribution Trust Agreement and the Combined Disclosure Statement and Plan.  In the event of an inconsistency between the Combined Disclosure Statement and Plan and the Distribution Trust Agreement as such conflict relates to anything other than the establishment of the Distribution Trust, the Distribution Trust Agreement shall control. All compensation for the Distribution Trustee and other costs of administration shall be paid from the Distribution Trust Assets in accordance with the Distribution Trust Agreement.   The Reorganized Debtor shall have no liability for any fees, costs or expenses of the Distribution Trust.

The Debtor has identified [name], the [title] of the Debtor, as the initial Distribution Trustee for the Distribution Trust, subject to ratification by the Bankruptcy Court at the Confirmation Hearing.   The approved person shall serve as the Distribution Trustee upon execution of the Distribution Trust Agreement at the Closing.

### 5.    *Mutual Cooperation*

As the Debtor (or Reorganized Debtor) or the Distribution Trustee may reasonably request, each shall use commercially reasonable efforts to cooperate with the other with respect to the implementation of the Combined Disclosure Statement and Plan (including, without limitation, the resolution of Disputed Claims, the determination of taxes and the preparation and filing of tax returns), with all out-of-pocket expenses incurred by the Reorganized Debtor in connection therewith being borne by the Distribution Trust; provided, however, that neither party shall be required to (i) provide information, records or employees or other personnel under circumstances which the providing party believes in its sole reasonable determination may waive privilege, confidentiality or a similar protection or expose it to material liability to any person or may prejudice any legal interest of the providing party, or (ii) take any action that in the providing party's reasonable determination unreasonably interferes with its business.

### 6.    *Cash Investments*

The Distribution Trustee may invest Cash (including any earnings thereon or proceeds therefrom); provided, however, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

### 7.    *Distributions to Holders of Claims and Distribution Trust Beneficiaries*

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

(i)        The Distribution Trustee shall be responsible for making all Distributions to Holders of Allowed Administrative Claims, Allowed Priority Claims, Allowed Secured Claims, and Allowed General Unsecured Claims, required to be made on or after the Effective Date pursuant to the Combined Disclosure Statement and Plan.

(ii)        After payment in full (or reserving for payment in full) of all Administrative Claims, Priority Claims and Secured Claims as and when Allowed, the Distribution Trustee shall distribute to the Holders of Allowed General Unsecured Claims in Class 3 and Class 4 on account of their Distribution Trust Interests, on at least a semi-annual basis, all Available Cash (treating any permissible investment as Cash for this purpose), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Distribution Trust Assets during liquidation, (b) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Distribution Trust or in respect of the Distribution Trust Assets, including with respect to Assets allocable to Disputed Claims), or (c) satisfy other liabilities incurred or anticipated by such Distribution Trust in accordance with the Combined Disclosure Statement and Plan or Distribution Trust Agreement; provided, however, that such Distribution Trustee shall not be required to make a Distribution pursuant to this Article VIII.B.7 of the Combined Disclosure Statement and Plan if such Distribution Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.

### 8.        *Federal Income Tax Treatment of Distribution Trust*

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Distribution Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Distribution Trustee and Distribution Trust Beneficiaries) shall treat the transfer of Distribution Trust Assets to the Distribution Trust as (1) a transfer of Distribution Trust Assets (subject to any and all Allowed Administrative Claims, Allowed Priority Claims, and Allowed Secured Claims, to the extent not satisfied by the Debtor prior to the Effective Date, that are payable by the Distribution Trust pursuant to the Combined Disclosure Statement and Plan) directly to Distribution Trust Beneficiaries (other than to the extent Distribution Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to the Distribution Trust of Distribution Trust Assets in exchange for the Distribution Trust Interests.  Accordingly, except in the event of contrary definitive guidance, Distribution Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Distribution Trust Assets (other than such Distribution Trust Assets as are allocable to Disputed Claims).  The foregoing treatment shall

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

also apply, to the extent permitted by applicable law, for state and local income tax purposes. For the avoidance of doubt, the term "party" as herein used shall not include the United States or any agency or department thereof, or any officer or employee thereof acting in such capacity.

**9.**     *Tax Reporting*

(i)       The Distribution Trustee shall file tax returns for the Distribution Trust treating such Distribution Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a).  The Distribution Trustee also shall annually send or otherwise provide to each holder of the Distribution Trust Interest a separate statement regarding the receipts and expenditures of the Distribution Trust as relevant for U.S. federal income tax purposes.

(ii)       Allocations of Distribution Trust taxable income among Distribution Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Distribution Trust) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Distribution Trust had distributed all its assets (valued at their tax book value, other than, if applicable, assets allocable to Disputed Claims) to the holders of Distribution Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Distribution Trust. Similarly, taxable loss of the Distribution Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Distribution Trust Assets.  The tax book value of Distribution Trust Assets for purpose of this paragraph shall equal their fair market value on the date Distribution Trust Assets are transferred to the Distribution Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(iii)       As soon as reasonably practicable after Distribution Trust Assets are transferred to the Distribution Trust, the Distribution Trustee (in consultation with the Reorganized Debtor) shall make a good faith valuation of Distribution Trust Assets.  Such valuation shall be made available from time to time to all parties to the Distribution Trust (including, without limitation, the Debtor and Distribution Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(iv)       Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Distribution Trustee of a private letter ruling if the Distribution Trustee so requests one, or the receipt of an adverse determination by the IRS upon

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

audit if not contested by such Distribution Trustee), the Distribution Trustee (i) shall treat any Distribution Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9 (and make any necessary elections with respect thereto) and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  All parties (including the Distribution Trustee, the Debtor and Distribution Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

    (v)        The Distribution Trustee shall be responsible for payment, out of the Distribution Trust Assets, of any taxes imposed on the Distribution Trust or its assets (including with respect to assets allocable to Disputed Claims).

    (vi)        The Distribution Trustee may request an expedited determination of taxes of the Distribution Trust, including any reserve for Disputed Claims, or of the Debtor as to whom the Distribution Trust was established, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Distribution Trust or the Debtor for all taxable periods through the dissolution of such Distribution Trust.

### 10.   *Dissolution*

    (i)        The Distribution Trustee and Distribution Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Distribution Trust Assets have been distributed pursuant to the Combined Disclosure Statement and Plan and the Distribution Trust Agreement, (ii) the Distribution Trustee determines, in its sole discretion, that the administration of any remaining Distribution Trust Assets is not likely to yield sufficient additional Distribution Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by the Distribution Trustee under the Combined Disclosure Statement and Plan and the Distribution Trust Agreement have been made; provided, however, that in no event shall the Distribution Trust be dissolved later than three (3) years from the creation of such Distribution Trust unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Distribution Trustee that any further extension would not adversely affect the status of the trust as the Distribution trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Distribution Trust Assets.

    (ii)        If at any time the  Distribution Trustee determines, in reliance upon such professionals as the Distribution Trustee may retain, that the expense of administering the Distribution Trust so as to make a final Distribution to Distribution Trust Beneficiaries is likely

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

to exceed the value of the assets remaining in such Distribution Trust, such Distribution Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Distribution Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation", as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtor, such Distribution Trust, and any insider of such Distribution Trustee, and (iii) dissolve such Distribution Trust.

## C.    The Reorganized Debtor

### 1.    *Continued Corporate Existence*

The Reorganized Debtor will continue to exist after the Effective Date as a corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is incorporated and pursuant to the New Corporate Governance Documents.  After the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The New Corporate Governance Documents shall be consistent with section 1123(a)(6) of the Bankruptcy Code, as applicable, and in form and substance acceptable to Crius.

### 2.    *Management and Board of Directors*

The members of the board of directors of the Debtor existing immediately before the Effective Date shall be deemed to have resigned immediately prior to the Effective Date.  Crius shall designate three (3) new members for the board of directors of the Reorganized Debtor whose identities shall be disclosed at or before the Confirmation Hearing.

Subject to the Reorganized Debtor's contractual agreements and obligations entered into and arising on and after the Effective Date and applicable non-bankruptcy law based upon facts and circumstances arising on and after the Effective Date, no director, officer, employee, consultant, or agent of the Debtor is entitled to continued employment or engagement, and, if employed, each is an at-will employee and is not entitled to any severance, termination, or other payment in connection with a termination of services.

### 3.    *Corporate Action*

On the Effective Date, the adoption and filing of the New Corporate Governance Documents, the appointment of officers of the Reorganized Debtor, and all actions contemplated

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

by the Combined Disclosure Statement and Plan will be authorized and approved in all respects pursuant to the Combined Disclosure Statement and Plan and without any requirement for further action by the Debtor or Reorganized Debtor, the board of directors or stockholders.  On the Effective Date, pursuant to section 1142(b) of the Bankruptcy Code and Section 303 of the Delaware General Corporation Law, the appropriate officers or directors of the Reorganized Debtor will be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Combined Disclosure Statement and Plan with like effect as if exercised and taken by unanimous action of the directors and stockholders of the Debtor.

### 4.      *Effectuating Documents; Further Transactions*

Any officer of the Reorganized Debtor, as designated, shall be authorized, on behalf of the Reorganized Debtor, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.  The Secretary or Assistant Secretary of the Reorganized Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.  The Distribution Trustee shall be authorized, on behalf of the Distribution Trust, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan and Distribution Trust Agreement.  On the Effective Date, pursuant to sections 1123 and 1141 of the Bankruptcy Code and section 303 of the Delaware General Corporation Law, the Debtor or the Reorganized Debtor may transfer any or all of its assets to one or more subsidiaries (including subsidiaries that are newly-formed for such purpose) without any further notice, action, third-party consents, court order or process of any kind.

## D.      Preservation of Rights of Action

Unless any Claims against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred to the Distribution Trust or settled in the Combined Disclosure Statement and Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all causes of action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date.

## E.      Exemption From Transfer Taxes

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

The Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Combined Disclosure Statement and Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; (d) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; or (e) the making or delivery of any deed or other instrument of transfer under the Combined Disclosure Statement and Plan in connection with the vesting of the Debtor's assets in the Reorganized Debtor or the Distribution Trustee pursuant to or in connection with the Combined Disclosure Statement and Plan, including, without limitation, merger agreements, stock purchase agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property. Pursuant to section 1146 of the Bankruptcy Code and the Combined Disclosure Statement and Plan, any such act described or contemplated in the Combined Disclosure Statement and Plan will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

**F.      The Closing**

The following actions shall occur at or before the closing of the transactions required and contemplated under the Combined Disclosure Statement and Plan (the "**Closing**") (unless otherwise specified), and shall be effective on the Effective Date:

(a)      Execution of Documents and Corporate Action.  The Debtor shall execute and deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Combined Disclosure Statement and Plan.  An officer of the Debtor, as appropriately designated, is authorized (i) to execute on behalf of the Debtor, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Combined Disclosure Statement and Plan and (ii) to undertake any other action on behalf of the Debtor to consummate the Combined Disclosure Statement and Plan. Each of the matters provided for under the Combined Disclosure Statement and Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtor.

(b)      Cancellation of Equity Interests and Issuance of New Equity.  On the Effective Date, all existing Equity Interests of Debtor shall be retired, cancelled, extinguished and/or discharged in accordance with the terms of the Combined Disclosure

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Statement and Plan, and 100% of the New Equity of the Reorganized Debtor shall be issued, free and clear of all Liens, Claims and Interests, to Crius.

(c)     Execution and Ratification of the Distribution Trust Agreement.   On the Effective Date, the Distribution Trust Agreement shall be executed by all parties thereto. The Distribution Trust Agreement shall be provided in the Plan Supplement.   Each Holder of a Claim to receive any Distribution from the Distribution Trust shall be deemed to have ratified and become bound by the terms and conditions of the Distribution Trust Agreement.

(d)     Transfer of Distribution Trust Assets.     All property of the Debtor constituting the Distribution Trust Assets shall be conveyed and transferred by the Debtor to the Distribution Trust free and clear of all Liens, Claims and Interests except as expressly set forth herein.

(e)     Transfer of Professional Fee Reserve.   The Professional Fee Reserve shall be transferred to a trust account established by counsel to the Debtor to be disbursed in accordance with this Combined Disclosure Statement and Plan and orders of the Bankruptcy Court.

# ARTICLE IX:

# TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND WARRANTIES

## A.      Assumption of Executory Contracts and Unexpired Leases

Except as otherwise provided in the Combined Disclosure Statement and Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each pre-petition written Executory Contract and Unexpired Lease to which it is a party unless such Executory Contract or Unexpired Lease (a) was previously assumed or rejected upon motion by a Final Order, (b) previously expired or terminated pursuant to its own terms, (c) is listed on the Schedule of assumed contracts and leases to be provided with the Plan Supplement, or (d) is the subject of any pending motion, including to assume, to assume on modified terms, to reject or to make any other disposition Filed by the Debtor on or before the Confirmation Date.   The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365(a) of the Bankruptcy Code approving the rejection, assumption and/or assignment of pre-petition Executory Contracts and Unexpired

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Leases described above, as of the Effective Date. Notwithstanding anything to the contrary herein, the Debtor and the Reorganized Debtor reserve the right to assert that any license, franchise and partially performed contract is a property right and not an Executory Contract. Contracts or leases entered into after the Petition Date will be performed by the Reorganized Debtor in the ordinary course of business.

Notwithstanding anything to the contrary in any contract, agreement or lease to which the Reorganized Debtor is a party, (a) the transactions contemplated by the Combined Disclosure Statement and Plan and (b) the consequences of the Combined Disclosure Statement and Plan's implementation shall not trigger any change in control or similar provisions and shall not be voided by any restraints against assignment in any contract, agreement or lease governed by the Combined Disclosure Statement and Plan. The Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumption and assignments and rejections pursuant to section 365 of the Bankruptcy Code.

## B.      Assignment of Executory Contracts and Unexpired Leases

To the extent provided under the Bankruptcy Code or other applicable law, any Executory Contract or Unexpired Lease transferred and assigned pursuant to this Combined Disclosure Statement and Plan shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such Executory Contract or Unexpired Lease (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease or that terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension or modify any term or condition upon any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

## C.      Cure Rights for Executory Contracts and Unexpired Leases Assumed Under Combined Disclosure Statement and Plan

Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed pursuant to the Combined Disclosure Statement and Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of any Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

assumption, Cure shall occur following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that the Debtor or Reorganized Debtor, as applicable, shall be authorized to reject any Executory Contract or Unexpired Lease to the extent the Debtor or Reorganized Debtor, in the exercise of its sound business judgment, concludes that the amount of the Cure obligation as determined by such Final Order, renders assumption of such Executory Contract or Unexpired Lease unfavorable to the Debtor or Reorganized Debtor. Cure Amounts are listed in the Plan Supplement, which shall be Filed at least ten (10) days prior to the Confirmation Hearing as part of the Plan Supplement. If no Cure amount for an assumed Executory Contract or Unexpired Lease is listed in the Plan Supplement, the Cure amount shall be deemed to be $0.

**D.     Rejection Damages Bar Date for Rejections Pursuant to Combined Disclosure Statement and Plan**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Combined Disclosure Statement and Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Distribution Trust unless a Proof of Claim is Filed with the claims agent and served upon counsel to the Reorganized Debtor within thirty (30) days after entry of the Confirmation Order. The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease; any other Claims held by a party to a rejected contract or lease shall have been evidenced by a Proof of Claim Filed by earlier applicable Bar Dates or shall be barred and unenforceable.

**E.     Rejection of Executory Contracts and Unexpired Leases**

The contracts and leases set forth in the Schedule of rejected contracts and leases to be provided with the Plan Supplement shall be deemed rejected as of the Effective Date. The Debtor reserves the right, at any time prior to the Effective Date, except as otherwise specifically provided in the Combined Disclosure Statement and Plan, to seek to reject any Executory Contract or Unexpired Lease to which the Debtor is a party and to File a motion requesting authorization for the rejection of any such Executory Contract or Unexpired Lease.

**F.     Certain Indemnification Obligations Owed by Debtor**

(a) Indemnification Obligations owed to directors, officers, and employees of the Debtor (or the Estate) who served or were employed by the Debtor as of and after the Petition Date, excluding (i) claims resulting from gross negligence, willful misconduct, breach of fiduciary duty, self-interested transactions or intentional tort and (ii) claims arising from actions, events or circumstances prior to the Petition Date, shall be deemed to be, and shall be treated up to the

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

extent of available insurance proceeds under applicable insurance policies as though they are, Executory Contracts that are assumed pursuant to section 365 of the Bankruptcy Code and this Article IX of the Combined Disclosure Statement and Plan.  Notwithstanding the foregoing, the Reorganized Debtor shall not assume any claim for liability, reimbursement obligations, contributions or indemnity concerning the contractual obligations of directors or officers of the Debtor, including, without limitation, the contractual guaranties.

(b)   All Indemnification Obligations owed to directors, officers, and employees of the Debtor who served or were employed by the Debtor on or prior to, but not after, the Petition Date shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Combined Disclosure Statement and Plan.

## G.   Continuing Obligations Owed to Debtor

(a)   Any confidentiality agreement entered into between the Debtor and any other Person requiring the parties to maintain the confidentiality of each other's proprietary information shall be deemed to be, and shall be treated as though it is, an Executory Contract that is assumed and assigned pursuant to section 365 of the Bankruptcy Code and this Article IX of the Combined Disclosure Statement and Plan.

(b)   Any indemnity agreement entered into between the Debtor and any other Person requiring the supplier to provide insurance in favor of the Debtor, to warrant or guarantee such supplier's goods or services, or to indemnify the Debtor for claims arising from the goods or services shall be deemed to be, and shall be treated as though it is, an Executory Contract that is assumed and assigned pursuant to section 365 of the Bankruptcy Code and this Article IX of the Combined Disclosure Statement and Plan; provided, however, that if any party thereto asserts any Cure, at the election of the Debtor such agreement shall not be deemed assumed, and shall instead be rejected pursuant to section 365 of the Bankruptcy Code under the Combined Disclosure Statement and Plan.

(c)   Continuing obligations of third parties to the Debtor under insurance policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay insured claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain confidentiality, or to honor releases, shall continue and shall be binding on such third parties notwithstanding any provision to the contrary in the Combined Disclosure Statement and Plan, unless otherwise specifically terminated by the Debtor or by order of Bankruptcy Court.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

(d)    To the extent any insurance policy under which the insurer has a continuing obligation to pay the Debtor or a third party on behalf of the Debtor is held by the Bankruptcy Court to be an Executory Contract, such insurance policy shall be treated as though it is an Executory Contract that is assumed pursuant to section 365 of the Bankruptcy Code and this Article IX of the Combined Disclosure Statement and Plan.  Any and all Claims (including Cure) arising under or related to any insurance policies or related insurance agreements that are assumed by the Debtor prior to or as of the Effective Date:  (i) shall not be discharged; (ii) shall be Allowed Administrative Claims; and (iii) shall be paid in full in the ordinary course of business of the Reorganized Debtor; provided, however, that at the election of the Debtor the Debtor may reject such insurance policy pursuant to section 365 of the Bankruptcy Code under the Combined Disclosure Statement and Plan.

**H.    Limited Extension of Time to Assume or Reject**

(a)  In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of the Debtor or the Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract or lease is executory or unexpired.

(b)    In the event the Debtor or the Reorganized Debtor becomes aware after the Confirmation Date of the existence of an Executory Contract or Unexpired Lease that was not included in the Schedules, the right of the Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Reorganized Debtor receives written notice of the existence and terms of such contract or lease (an "**Unknown Contract**").  Such Unknown Contract may be assumed or rejected by the Reorganized Debtor.

**I.    Post-petition Contracts and Leases**

The Debtor shall not be required to assume or reject any contract or lease entered into by the Debtor after the Petition Date.  Any such contract or lease shall continue in effect in accordance with its terms after the Effective Date, unless the Reorganized Debtor has obtained a Final Order of the Bankruptcy Court approving rejection or other termination of such contract or lease.  Contracts or leases entered into after the Petition Date will be performed by the Reorganized Debtor in the ordinary course of its business.

**J.    Treatment of Claims Arising from Assumption or Rejection**

All Allowed Claims for Cure arising from the assumption of any Executory Contract or Unexpired Lease shall be treated as Administrative Claims pursuant to Article VI of the

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY
COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Combined Disclosure Statement and Plan; all Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be treated, to the extent applicable, as General Unsecured Claims, unless otherwise ordered by Final Order of the Bankruptcy Court; and all other Allowed Claims relating to an Executory Contract or Unexpired Lease shall have such status as they may be entitled to under the Bankruptcy Code as determined by Final Order of the Bankruptcy Court.  As more fully set forth in Article X, the Distribution Trustee shall fund the Administrative Claims Reserve to account for Allowed Claims for Cure and shall pay Distributions on account of Allowed Administrative Claims.

## ARTICLE X:

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Distributions for Allowed Claims

#### 1.    *In General*

Except as otherwise provided by the Combined Disclosure Statement and Plan with respect to (a) the distribution of New Equity and (b) payment from the Professional Fee Reserve, after the Effective Date all Distributions required to be made under the Combined Disclosure Statement and Plan shall be made by the Distribution Trustee from the Distribution Trust.

#### 2.    *Distributions on Allowed Claims Only*

Distributions from the Distribution Trust shall be made only from Available Cash to holders of Distribution Trust Interests on account of such holder's Allowed Claims.  Until a Disputed Claim becomes an Allowed Claim in its entirety, the holder of that Disputed Claim shall not receive any Distribution from the Distribution Trust.

#### 3.    *Place and Manner of Payments of Distributions*

Except as otherwise specified in the Combined Disclosure Statement and Plan, Distributions from Available Cash shall be made by mailing such Distribution to the Creditor at the address listed in any proof of claim filed by the Creditor or at such other address as such Creditor shall have specified for payment purposes in a written notice received by the Distribution Trustee at least twenty (20) days before a Distribution Date.  If a Creditor has not filed a proof of claim or interest or sent the Distribution Trustee a written notice of payment address, then the Distribution(s) for such Creditor will be mailed to the address identified in the

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Schedules of Assets and Liabilities.  The Distribution Trustee shall distribute any Cash by wire, check, or such other method as it deems appropriate under the circumstances.  Before receiving any Distributions, all Creditors, at the request of the Distribution Trustee, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Distribution Trustee; otherwise, the Distribution Trustee may suspend Distributions to any Creditors who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

### 4.    *Undeliverable Distributions*

If a Distribution made from Available Cash to any Creditor is returned as undeliverable, the Distribution Trustee shall use reasonable efforts to determine such Creditor's then current address.  If the Distribution Trustee cannot determine, or is not notified of, a Creditor's then current address within three months after the Effective Date, the Distribution reserved for such Creditor shall be deemed an unclaimed Distribution, and Article X.A.5—"Unclaimed Distributions" shall be applicable thereto.

### 5.    *Unclaimed Distributions*

If the current address for a Creditor entitled to a Distribution from Available Cash under the Combined Disclosure Statement and Plan has not been determined within three months after the Effective Date or such Creditor has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to the Distribution Trustee, then such Creditor (i) shall no longer be a Creditor and (ii) shall be deemed to have released such Claim.

### 6.    *Withholding*

In connection with the Combined Disclosure Statement and Plan, any party issuing any instrument or making any Distribution described in the Combined Disclosure Statement and Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each Holder of an Allowed Claim or any other Person that receives a Distribution shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such Distribution.  Any party issuing any instrument or making any Distribution has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  The Distribution Trustee, in the exercise of its sole discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

amounts that may be withheld in accordance with the provisions of this section. Any party entitled to receive any property as an issuance or distribution under the Combined Disclosure Statement and Plan shall, upon request, by the Debtor or Distribution Trustee, as applicable, provide an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8. If such request is made and such party fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtor or Distribution Trust, as applicable, and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor, the Distribution Trust and their respective property.

**7.     *Procedures Regarding Distributions from the Distribution Trust***

Procedures regarding Distributions from the Distribution Trust to Holders of Classes 2B, 3 and 4 Allowed General Unsecured Claims shall be governed by the Distribution Trust Agreement.

**8.     *Allocation of Distributions Between Principal and Interest***

Except as otherwise provided in this Plan, to the extent that any Claim entitled to a distribution under the Combined Disclosure Statement and Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

**9.     *Accounts; Escrows; Reserves***

The Debtor or Distribution Trustee will, subject to and in accordance with the provisions of the Combined Disclosure Statement and Plan, (a) establish one or more general accounts into which shall be deposited all funds not required to be deposited into any other account, reserve or escrow, (b) create, fund and withdraw funds from, as appropriate, the Administrative Claims Reserve, and the Professional Fee Reserve and (c) if practicable, invest any Cash that is withheld as the applicable Claims reserve in an appropriate manner to ensure the safety of the investment. Nothing in the Combined Disclosure Statement and Plan shall be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, however.

**10.     *Administrative Claims Reserve***

Under the Combined Disclosure Statement and Plan, on the Effective Date (or as soon thereafter as is practicable), the Debtor or the Distribution Trustee will create and fund the Administrative Claims Reserve in the initial amount budgeted to be used by the Distribution

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Trustee to pay Distributions on account of Allowed Administrative Claims.  In the event that any Cash remains in the Administrative Claims Reserve after payment of all Allowed Administrative Claims to be paid thereunder, such Cash will be distributed to the Reorganized Debtor.

### 11.    *Professional Fee Reserve*

On the Effective Date, the Debtor will transfer [_____] to the Professional Fee Reserve to be held in Debtor's counsel trust account, which amount will be used to pay Allowed Professional Fee Claims held by any professionals of the Debtor.  In the event that any Cash remains in the Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such Cash will be distributed to the Reorganized Debtor.

## B.    Procedures for Resolution of Disputed Claims

### 1.    *Right to Object to Claims*

The Distribution Trustee shall have the authority, but not the obligation, to object to, litigate, and settle, the amount, priority or the extent of any Administrative Claim, Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, or General Unsecured Claim. Notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, subject to the terms and conditions set forth in the Distribution Trust Agreement, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Combined Disclosure Statement and Plan on and after the Effective Date, the Distribution Trustee shall have the authority, but not the obligation, to: (1) file, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.  The Distribution Trustee shall succeed to any pending objections to Claims filed by the Debtor prior to the Effective Date, and shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the causes of action retained under the Combined Disclosure Statement and Plan.  The Reorganized Debtor shall provide commercially reasonable assistance and cooperation to the Distribution Trustee in connection with the Distribution Trustee's prosecution of objections to Claims, including, without limitation, access to the books and records of the Debtor or the Reorganized Debtor (as the case may be) and other information reasonably requested by the Distribution Trustee to enable the Distribution Trustee to perform its obligations under the Distribution Trust Agreement, with all out-of-pocket expenses incurred by the Reorganized Debtor in connection therewith being borne by the Distribution Trust.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

### 2.      *Deadline for Objecting to Claims*

Objections by any Person to any Claims must be filed with the Bankruptcy Court, and a copy of the objection must be served on the subject Creditor before the objection deadline applicable to such Claim (unless such period is further extended by subsequent orders of the Bankruptcy Court); otherwise such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code.  The objection shall notify the Creditor of the deadline for responding to such objection.

### 3.      *Deadline for Responding to Claim Objections*

Within 30 days after service of an objection, or such other date as is indicated on such objection or the accompanying notice thereof in accordance with applicable Bankruptcy Rules or order of the Bankruptcy Court, the Creditor whose Claim was objected to must file a written response to the objection with the Bankruptcy Court and serve a copy on the Distribution Trustee.  Failure to file a written response within the prescribed time period shall constitute a waiver and release of that portion of the subject Claim that was subject to the objection, and shall cause the Bankruptcy Court to enter a default judgment against the non- responding Creditor or granting the relief requested in the claim objection.

### 4.      *Right to Request Estimation of Claims*

Pursuant to section 502(c) of the Bankruptcy Code, the Reorganized Debtor or the Distribution Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

## ARTICLE XI:

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

## A.      Prosecution of Objections to Claims

### 1.      *Objections to Claims; Estimation Proceedings*

Except as set forth in the Combined Disclosure Statement and Plan or any applicable Bankruptcy Court order, all objections to Claims must be Filed and served on the Holders of

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

such Claims by the applicable Claims Objection Bar Date, as the same may be extended by the Bankruptcy Court.  If a timely objection has not been Filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.  No payments or Distributions shall be made on account of a Claim until such Claim becomes an Allowed Claim in full.  Notice of any motion for an order extending any Claims Objection Bar Date shall be required to be given only to those Persons or Entities that have requested notice in the Chapter 11 Case, or to such Persons as the Bankruptcy Court shall order.

The Debtor (prior to the Effective Date) or Distribution Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Distribution Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court, as applicable.  If the estimated amount constitutes a maximum limitation on such Claim, the Disbursing Agent may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanisms.

The Distribution Trustee will have no obligation to review and/or respond to any Claim that is not Filed by the applicable Bar Date unless: (i) the filer has obtained an order from the Bankruptcy Court authorizing it to File such Claim; or (ii) the Distribution Trustee has consented to the Filing of such Claim in writing.

## 2.    *Authority to Prosecute Objections*

After the Effective Date, only the Distribution Trustee shall have the authority to File objections to Claims and to settle, compromise, withdraw, or litigate to judgment objections to Claims, including, without limitation, Claims for reclamation under section 546(c) of the Bankruptcy Code.  The Distribution Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

## B.    Treatment of Disputed Claims

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

### 1.    *No Distribution Pending Allowance*

Notwithstanding any other provisions of the Combined Disclosure Statement and Plan, no payments or Distributions will be made on account of a Disputed Claim or, if less than the entire Claim is a Disputed Claim, the portion of a Claim that is Disputed, until such Disputed Claim becomes an Allowed Claim.

### 2.    *Distributions on Accounts of Disputed Claims Once They are Allowed*

The Disbursing Agent shall, on the applicable Distribution Dates, make Distributions on account of any Disputed Claim that has become an Allowed Claim.  Such Distributions shall be made pursuant to the provisions of the Combined Disclosure Statement and Plan governing the applicable Class.  Such Distributions shall be based upon the Distributions that would have been made to the Holder of such Claim under the Combined Disclosure Statement and Plan if the Disputed Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

## C.    Provisions for Disputed Claims

On the Effective Date and on each subsequent Distribution Date, the Distribution Trustee or Disbursing Agent shall withhold on a Pro Rata basis from property that would otherwise be distributed to Classes of Claims entitled to Distributions under the Combined Disclosure Statement and Plan on such date, in a separate Disputed Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions to which Holders of such Disputed Claims would be entitled under this Combined Disclosure Statement and Plan if such Disputed Claims were allowed in their Disputed Claims Amount.  The Distribution Trustee or Disbursing Agent may request, if necessary, estimation for any Disputed Claim that is contingent or unliquidated, or for which the Distribution Trustee or Disbursing Agent determine to reserve less than the Face Amount.  The Distribution Trustee or Disbursing Agent shall withhold the applicable portion of the Disputed Claims Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court.  If the Distribution Trustee or Disbursing Agent elects not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is contingent or unliquidated, the Distribution Trustee or Disbursing Agent shall withhold the applicable Disputed Claims Reserve based upon the good faith estimate of the amount of such Claim by the Distribution Trustee or Disbursing Agent.  If practicable, the Distribution Trustee or Disbursing Agent will invest any Cash that is withheld as the applicable Disputed Claims Reserve in an appropriate manner to ensure the safety of the investment.  Nothing in this Combined Disclosure Statement

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

and Plan shall be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, however.

## D.   Accounts; Escrows; Reserves

The Distribution Trustee and Disbursing Agent shall, subject to and in accordance with the provisions of this Combined Disclosure Statement and Plan (a) establish one or more general accounts into which shall be deposited all funds not required to be deposited into any other account, reserve or escrow, (b) create, fund and withdraw funds from, as appropriate, the Administrative Claims Reserve, and the Professional Fee Reserve and (c) if practicable, invest any Cash that is withheld as the applicable claims reserve in an appropriate manner to ensure the safety of the investment.   Nothing in this Combined Disclosure Statement and Plan shall be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, however.

### 1.   *Administrative Claims Reserve*

On the Effective Date (or as soon thereafter as is practicable), the Distribution Trustee or Disbursing Agent shall create and fund the Administrative Claims Reserve in the amount budgeted to be used by the Disbursing Agent to pay Distributions on account of Allowed Administrative Claims, including Claims under section 503(b)(9) and any required Cure.   To the extent necessary to fund payments to Allowed Claims thereunder, the funds in the Administrative Claims Reserve shall be periodically replenished by the Disbursing Agent in such amounts as may be determined by the Disbursing Agent in its sole discretion.   The Disbursing Agent shall be obligated to pay all Allowed Claims designated to be paid from the proceeds of the Administrative Claims Reserve thereunder in excess of the amounts actually deposited in the Administrative Claims Reserve.   In the event that any Cash remains in the Administrative Claims Reserve after payment of all Allowed Claims to be paid thereunder, such Cash shall be distributed to the Reorganized Debtor.

### 2.   *Professional Fee Reserve*

The Debtor or Disbursing Agent shall create and fund the Professional Fee Reserve on the Effective Date (or as soon thereafter as is practicable) in the amount of the budgeted but unpaid Professional fees projected through the Effective Date, which amount shall be used to pay Allowed Professional Fee Claims held by any professionals working on behalf of the Debtor. The Disbursing Agent shall be obligated to pay all Allowed Professional Fee Claims even if in excess of the amounts actually deposited in the Professional Fee Reserve.   In the event that any

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Cash remains in the Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such Cash will be distributed to the Reorganized Debtor.

## ARTICLE XII:

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.      Conditions to Confirmation**

The following conditions precedent to the occurrence of the Confirmation Date must be satisfied unless any such condition shall have been waived by the Debtor:

(a)    The Confirmation Order shall have been entered in form and substance satisfactory to the Debtor and Crius, and shall, among other things provide that the Debtor and the Reorganized Debtor are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Combined Disclosure Statement and Plan.

(b)   The Bankruptcy Court finds that adequate information and sufficient notice of the Combined Disclosure Statement and Plan, and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Combined Disclosure Statement and Plan has been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b); and

(c)    All exhibits to the Combined Disclosure Statement and Plan are in form and substance satisfactory to the Debtor and Crius.

**B.      Conditions to the Effective Date**

The following conditions precedent to the occurrence of the Effective Date must be satisfied or waived, with the consent of Crius, by the Debtor on or prior to the Effective Date in accordance with this Article XII.B of the Combined Disclosure Statement and Plan:

(a)    the Combined Disclosure Statement and Plan, and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be in form and substance acceptable to the Debtor and Crius;

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

(b)   the Confirmation Order shall be a Final Order and approves and authorizes the Debtor and the Reorganized Debtor to take all actions necessary or appropriate to implement the Combined Disclosure Statement and Plan, including completion of the transactions contemplated by the Combined Disclosure Statement and Plan and the implementation of and consummation of contracts, instruments, releases and other agreements or documents created in connection with the Combined Disclosure Statement and Plan;

(c)   each of the exhibits to the Combined Disclosure Statement and Plan and any other necessary documents shall be fully executed and delivered to the Debtor, shall be in form and substance acceptable to the Debtor and Crius, and shall be fully enforceable in accordance with their terms;

(d)   Crius shall acquire the New Equity free and clear of all Liens, Claims and Interests; and

(e)   The amount of the consideration to be funded by Crius on the Effective Date shall not exceed (a) $200,000 cash, plus (b) up to [_____].

## C.    Notice of Occurrence of the Effective Date

The Debtor or Reorganized Debtor shall File a notice of the occurrence of the Effective Date within five (5) days thereafter.

## D.    Waiver of Conditions

Each of the conditions set forth in this Article XII.A and Article XII.B may be waived in whole or in part by the Debtor, with the consent of Crius, without any notice to parties-in-interest or the Bankruptcy Court and without a hearing.

## E.    Consequences of Non-Occurrence of Effective Date

If the Confirmation Order is vacated, (a) the Combined Disclosure Statement and Plan shall be null and void in all respects; (b) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) to the extent permitted under the Bankruptcy Code, the time within which the Debtor may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of one hundred twenty (120) days after the date the Confirmation Order is vacated.

## F.    Substantial Consummation

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Substantial Consummation of the Combined Disclosure Statement and Plan shall be deemed to occur on the Effective Date.

## ARTICLE XIII:

## RETENTION OF JURISDICTION

### A.    Scope of Retention of Jurisdiction

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Chapter 11 Case and the Combined Disclosure Statement and Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising in or related to the Chapter 11 Case and the Combined Disclosure Statement and Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with section 1334(b) of title 28 of the United States Code), including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Interest not otherwise Allowed under the Combined Disclosure Statement and Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Allowance or priority of Claims;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Combined Disclosure Statement and Plan or under sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Professionals of the Reorganized Debtor or the Distribution Trust shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or Allowance of any Claims arising therefrom;

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

(d)     effectuate performance of and payments under the provisions of the Combined Disclosure Statement and Plan and enforce remedies upon any default under the Combined Disclosure Statement and Plan;

(e)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case, the Avoidance Actions, or the Combined Disclosure Statement and Plan;

(f)     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Combined Disclosure Statement and Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Combined Disclosure Statement and Plan or the Confirmation Order;

(g)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Combined Disclosure Statement and Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Combined Disclosure Statement and Plan;

(h)     consider any modifications of the Combined Disclosure Statement and Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the implementation, consummation, or enforcement of the Combined Disclosure Statement and Plan or the Confirmation Order;

(j)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)     hear and determine any matters arising in connection with or relating to the Combined Disclosure Statement and Plan, the Plan Supplement, the schedules to the Combined Disclosure Statement and Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Combined Disclosure Statement and Plan, the Plan Supplement, the schedules to the Combined Disclosure Statement and Plan or the Confirmation Order;

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

(l)       enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

(m)      enforce, interpret, and determine any disputes arising in connection (including  with any claims or potential causes of action against any current or former directors or officers and access to any insurance policies existing prior to the Petition Date;

(n)      except as otherwise limited in the Combined Disclosure Statement and Plan, recover all assets of the Debtor and property of the Estate, wherever located;

(o)      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(p)      hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

(q)      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(r)      hear and determine disputes arising in connection with the interpretation and implementation of the Distribution Trust; and

(s)      enter a final decree closing the Chapter 11 Case.

## B.       Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Article XIII.A of the Combined Disclosure Statement and Plan, the provisions of this Article XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

# ARTICLE XIV:

## CERTAIN RISK FACTORS TO BE CONSIDERED

THE IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF MATERIAL RISKS, INCLUDING THOSE ENUMERATED BELOW.  IN EVALUATING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.    THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS ASSOCIATED WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN.

The Distributions on Allowed Claims and the Reorganized Debtor's future results are dependent upon the successful Confirmation and implementation of a plan of reorganization. Failure to obtain this approval in a timely manner could adversely affect the Debtor's operating results, as the Debtor's ability to obtain financing to fund its operations may be harmed by protracted bankruptcy proceedings, and may adversely affect the Available Cash for Distributions on Allowed Claims.  Furthermore, the Debtor cannot predict the ultimate amount of all settlement terms for its liabilities that will be subject to a plan of reorganization.

A.      **Non-Confirmation or Delay of Confirmation of the Combined Disclosure Statement and Plan**

The Bankruptcy Court, which sits as a court of equity, may exercise substantial discretion.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of the Combined Disclosure Statement and Plan not be followed by a need for further financial reorganization and that the value of Distributions to dissenting creditors and shareholders not be less than the value of Distributions such creditors and shareholders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

Although the Debtor believes that the Combined Disclosure Statement and Plan will satisfy all requirements for Confirmation under the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Confirmation or that such modifications would not be sufficiently material as to necessitate the resolicitation of votes on the Combined Disclosure Statement and Plan.

In the event that any Class of Claims entitled to vote fails to accept the Combined Disclosure Statement and Plan in accordance with section 1126(c) and 1129(a)(8) of the Bankruptcy Code, the Debtor, subject to the terms of the Combined Disclosure Statement and Plan and the Combined Disclosure Statement, reserves the right:  (a) to request that the Bankruptcy Court confirm the Combined Disclosure Statement and Plan in accordance with section 1129(b) of the Bankruptcy Code; and/or (b) to modify the Combined Disclosure Statement and Plan in accordance with Article XVI.B hereof.  While the Debtor believes that the Combined Disclosure Statement and Plan satisfies the requirements for non-consensual Confirmation under section 1129(b) of the Bankruptcy Code because it does not "discriminate unfairly" and is "fair and equitable" with respect to the Classes that reject or are deemed to reject the Combined Disclosure Statement and Plan, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  There can be no assurance that any such challenge to the requirements for non-consensual Confirmation will not delay the Debtor's emergence from chapter 11 or prevent Confirmation of the Combined Disclosure Statement and Plan.

If the Combined Disclosure Statement and Plan is not confirmed, there can be no assurance that the Chapter 11 Case will continue rather than be converted into chapter 7 liquidation case or that any alternative plan of reorganization would be on terms as favorable to the Holders of Claims against and Interests in the Debtor as the terms of the Combined Disclosure Statement and Plan.  If a liquidation or protracted reorganization of the Debtor's Estate were to occur, there is a substantial risk that the Debtor's going concern value would be substantially eroded to the detriment of all stakeholders.

Moreover, there can be no assurance with respect to timing of the Effective Date.  The occurrence of the Effective Date is also subject to certain conditions precedent as described in Article XII of the Combined Disclosure Statement and Plan.  Failure to meet any of these conditions could result in the Combined Disclosure Statement and Plan not being consummated.

If the Confirmation Order is vacated, (a) the Combined Disclosure Statement and Plan shall be null and void in all respects; (b) any settlement of Claims or Interests provided for in the Combined Disclosure Statement and Plan shall be null and void without further order of the Bankruptcy Court; and (c) the time within which the Debtor may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of one hundred twenty (120) days after the date the Confirmation Order is vacated.

If the Effective Date of the Combined Disclosure Statement and Plan does not occur, there can be no assurance that the Chapter 11 Case will continue rather than be converted into

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

chapter 7 liquidation case or that any alternative plan of reorganization would be on terms as favorable to the Holders of Claims against any of the Debtor as the terms of the Combined Disclosure Statement and Plan.  If a liquidation or protracted reorganization of the Debtor's Estate were to occur, there is a substantial risk that the Debtor's going concern value would be eroded to the detriment of all stakeholders.

**B.        Classification and Treatment of Claims and Equity Interests**

Section 1122 of the Bankruptcy Code requires that a plan classify claims against, and interests in, a debtor.  The Bankruptcy Code also provides that a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.  The Debtor believes that all Claims and Interests have been appropriately classified in the Combined Disclosure Statement and Plan.

To the extent that the Bankruptcy Court finds that a different classification is required for the Combined Disclosure Statement and Plan to be confirmed, the Debtor presently anticipates that it would seek (i) to modify the Combined Disclosure Statement and Plan to provide for whatever classification might be required for confirmation and (ii) to use the acceptances received from any creditor pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such creditor ultimately is deemed to be a member.  Any such reclassification of creditors, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such creditor was initially a member, or any other Class under the Combined Disclosure Statement and Plan, by changing the composition of such Class and the vote required for approval of the Combined Disclosure Statement and Plan.  There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Disclosure Statement and Plan based upon such reclassification.  Except to the extent that modification of classification in the Combined Disclosure Statement and Plan requires resolicitation, the Debtor will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Combined Disclosure Statement and Plan of any Holder of Claims pursuant to this solicitation will constitute a consent to the Combined Disclosure Statement and Plan's treatment of such Holder regardless of the Class as to which such Holder is ultimately deemed to be a member.  The Debtor believes that under the Federal Rules of Bankruptcy Procedure the Debtor would be required to resolicit votes for or against the Combined Disclosure Statement and Plan only when a modification adversely affects the treatment of the claim of any creditor or equity Holder.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its claim or interest.  The Debtor believes it has complied with the requirement of equal treatment.  To the extent that the Bankruptcy Court finds that the Combined Disclosure Statement and Plan does not satisfy such requirement, the Bankruptcy Court could deny Confirmation of the Combined Disclosure Statement and Plan.

Issues or disputes relating to classification and/or treatment could result in a delay in the Confirmation and consummation of the Combined Disclosure Statement and Plan and could increase the risk that the Combined Disclosure Statement and Plan will not be consummated.

## C.    Claims Estimation

The Debtor and Distribution Trustee reserve the right to object to the amount or classification of any Claim or Interest except any such Claim or Interest that is deemed Allowed under the Combined Disclosure Statement and Plan or except as otherwise provided in the Combined Disclosure Statement and Plan.  There can be no assurance that any estimated Claim amounts set forth in this Combined Disclosure Statement and Plan are correct.  The actual Allowed amount of Claims likely will differ in some respect from the estimates.  The estimated amounts are subject to certain risks, uncertainties, and assumptions.  Should one or more of these risks or uncertainties materialize, or should the underlying assumptions prove incorrect, the actual Allowed amount of Claims may vary from those estimated herein.

## D.    Risks Related to Financial Information

The financial information contained in this Combined Disclosure Statement and Plan has not been audited.  In preparing this Combined Disclosure Statement and Plan, the Debtor relied on financial data derived from their books and records that was available at the time of such preparation.  Although the Debtor has used reasonable efforts to assure the accuracy of the financial information provided in this Combined Disclosure Statement and Plan, and while the Debtor believes that such financial information fairly reflects the financial condition of the Debtor, the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

## E.    Certain Income Tax Consequences of the Combined Disclosure Statement and Plan

**[To Be Provided]**

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

# ARTICLE XV:

## CERTAIN SECURITIES LAW MATTERS

### A.    In General

The Plan provides for the establishment of the Distribution Trust and for the issuance of Distribution Trust Interests therein.  In general, beneficial interests in trusts may sometimes be subject to regulation under applicable federal and state securities laws.  However, as discussed herein, the Debtor does not believe that the Distribution Trust Interests constitute "securities" for purposes of applicable nonbankruptcy law.  Alternatively, even if the Distribution Trust Interests were to constitute "securities," the Debtor believes that they would be exempt from registration pursuant to section 1145(a)(1) of the Bankruptcy Code.

Further, the offer and sale of a security, such as the New Equity in the Reorganized Debtor, also may be subject to regulation under applicable federal and state securities laws unless an exemption is available.  The Debtor believes that the New Equity in the Reorganized Debtor and the offering and issuance thereof will be exempt from Section 5 of the Securities Act of 1933 (as amended, the "**Securities Act**"), if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and will otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including, without limitation, section 1145 of the Bankruptcy Code.  If the issuance of the New Equity does not qualify for an exemption under section 1145 of the Bankruptcy Code, the New Equity will be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Section 4(a)(2) of the Securities Act and/or the safe harbor provisions promulgated thereunder.

### B.    Distribution Trust Related Matters

#### 1.    *Initial Issuance of Distribution Trust Interests*

Unless an exemption is available, the offer and sale of a security generally is subject to registration with the SEC under Section 5 of the Securities Act.  In the opinion of the Debtor, and based on "no action" letters by the SEC, the Distribution Trust Interests will not be considered "securities" within the definition of Section 2(11) of the Securities Act and corresponding definitions under state securities laws and regulations ("**Blue Sky Laws**") because the Distribution Trust Interests will be uncertificated and non-transferable other than by operation of law, neither the Distribution Trustee nor other persons affiliated with the Distribution Trust or the Debtor will take any actions to facilitate or encourage any trading in the Distribution Trust

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Interests or any instrument or interest tied to the value of the Distribution Trust Interests and the purpose of the Distribution Trust is to liquidate the distribute the assets transferred to it. Accordingly, the Distribution Trust Interests should be issuable in accordance with the Combined Disclosure Statement and Plan without registration under the Securities Act or any Blue Sky Law.

Alternatively, in the event that the Distribution Trust Interests are deemed to constitute securities, section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan of reorganization from registration under the Securities Act and Blue Sky Laws if three principal requirements are satisfied:

(a)    the securities are offered and sold under a plan of reorganization and are securities of the debtor, of an affiliate of the debtor participating in a joint plan with the debtor, or of a successor to the debtor under the plan;

(b)    the recipients of the securities hold a pre-petition or administrative claim against the debtor or an interest in the debtor; and

(c)    the securities are issued entirely in exchange for recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property.

If and to the extent that the Distribution Trust Interests may constitute securities, the Debtor believes that these beneficial interests issued in respect of certain Allowed Claims will qualify as securities "of the debtor . . . or of a successor to the debtor" pursuant to section 1145(a)(1). In addition, the Distribution Trust Interests will be issued entirely in exchange for such Claims. Thus, the Debtor believes that the issuance of the Distribution Trust Interests pursuant to the Combined Disclosure Statement and Plan will satisfy the applicable requirements of section 1145(a)(1) of the Bankruptcy Code, and that such issuance should be exempt from registration under the Securities Act and any applicable Blue Sky Law.

The Debtor believes that their reliance upon the foregoing exemptions in respect of the issuance of the Distribution Trust Interests is consistent with positions taken by the SEC with respect to similar transactions and arrangements by other chapter 11 debtors in possession. The Debtor has not sought any "no-action" letter by the SEC with respect to any such matters, however, and therefore no assurance can be given regarding the availability of any exemptions from registration with respect to any securities, if any, issued pursuant to the Combined Disclosure Statement and Plan.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

## 2.    *Resales*

The Distribution Trust Interests will be subject to transfer restrictions under the terms of the Distribution Trust Agreement.  As provided in said agreement, generally, the Distribution Trust Interests cannot be assigned or transferred other than by operation of law, and will not be represented by certificates.

## 3.    *Exchange Act Compliance*

Section 12(g) of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), applies only to a company that has both (i) total assets in excess of $10.0 million and (ii) a class of equity securities held of record by more than 2,000 persons or 500 persons who are not accredited investors (within 120 days after the last day of the company's fiscal year).  The Debtor believes it unlikely conditions (i) and (ii) will be deemed satisfied in respect to the Distribution Trust and Distribution Trust Interests, and in any event, the Distribution Trust should not be required to register under Section 12(g) of the Exchange Act.  The Debtor understands that the staff of the SEC has issued no-action letters with respect to the non-necessity of Exchange Act registration of a bankruptcy plan trust when the following are true:

(a)    the beneficial interests in the trust are not represented by certificates or, if they are, the certificates bear a legend stating that the certificates are transferable only upon death or by operation of law;

(b)    the trust exists only to effect a liquidation and will terminate within a reasonable period of time; and the trust will issue annual unaudited financial information to all beneficiaries;

(c)    the beneficial interests in the trust are not transferable or assignable except by will, intestate succession, or operation of law;

(d)    neither the trustee nor other persons affiliated with the trust or the company will take any actions to facilitate or encourage any trading in the beneficial interests in the trust or any instrument or interest tied to the value of the beneficial interests in the trust.

Based on the foregoing, the Debtor believes that the Distribution Trust will not be subject to registration under the Exchange Act.  The views of the SEC on the matter have not been sought by the Debtor, however; therefore, no assurance can be given regarding this matter.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**4.**      *Compliance if Required*

Notwithstanding the preceding discussion, if the Distribution Trustee, in relation to the Distribution Trust, determines, with the advice of counsel, that the Distribution Trust is required to comply with the registration and reporting requirements of the Exchange Act, then prior to the registration of the Distribution Trust under the Exchange Act, the Distribution Trustee (subject to the terms of the Distribution Trust Agreement) will seek to amend the Distribution Trust Agreement, to make such changes as are deemed necessary or appropriate to ensure that the Distribution Trust is not subject to registration or reporting requirements of the Exchange Act. The Distribution Trust Agreement, as so amended, will be effective after notice and opportunity for a hearing, and the entry of an order of the Bankruptcy Court.

If the Distribution Trust Agreement, as amended, is not approved by the Bankruptcy Court or the Bankruptcy Court otherwise determines in a Final Order that registration under the Exchange Act (or any other related or similar federal laws) is required, then the Distribution Trustee will take such actions as may be required to satisfy the registration and reporting requirements of the Exchange Act (or any other related or similar federal laws).

**5.**      *New Equity Related Matters*

As noted above, the offer and sale of a security generally is subject to registration with the SEC under Section 5 of the Securities Act unless an exemption is available. The offering and issuance of the New Equity in the Reorganized Debtor pursuant to the Combined Disclosure Statement and Plan is being made in reliance upon section 1145(a) of the Bankruptcy Code.

Section 1145(a) of the Bankruptcy Code exempts securities issued pursuant to a plan from registration under the Securities Act, or any state law requiring registration for the sale or offering of securities, provided certain conditions are met, except for securities issued to an "underwriter," as defined in Section 1145(b) of the Bankruptcy Code. Subsequent transfers of the New Equity by persons that are not "underwriters" will generally be exempt from federal and state securities registration requirements.

Specifically, section 1145(a) of the Bankruptcy Code generally exempts from federal and state registration requirements the issuance of securities if the following conditions are satisfied:

(i)      the securities are offered or sold under a Chapter 11 plan by (x) a debtor, (y) one of its affiliates participating in a joint plan with the debtor, or (z) a successor to a debtor under the plan; and

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

(ii)      the securities are issued in exchange for a claim against or interest in the debtor or such affiliate, or are issued principally in such exchange and partly for cash or property.

Notwithstanding the foregoing, the registration exemption provided by section 1145(a) of the Bankruptcy Code will not apply if the applicable securities holder is an "underwriter," as defined in section 1145(b) of the Bankruptcy Code. Section 1145(b)(1) of the Bankruptcy Code defines "underwriter" as one who (A) purchases a claim or interest with a view to distribution of any security to be received in exchange for the claim or interest, (B) offers to sell securities issued under a plan for the holders of such securities, (C) offers to buy securities issued under a plan from the holders receiving such securities, if the offer to buy is made with a view to distribution of such securities and under an agreement made in connection with the plan, with the consummation of the plan, or with the offer or sale of securities under the plan, or (D) is an issuer of the securities within the meaning of Section 2(a)(11) of the Securities Act.

For persons deemed to be "underwriters" who receive New Equity pursuant to the Combined Disclosure Statement and Plan, including control person underwriters (collectively, "**Restricted Holders**"), resales of New Equity will not be exempt under section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Restricted Holders, however, may be able to, at a future time and under certain conditions described below, sell New Equity without registration pursuant to the resale provisions of Rule 144 or other applicable exemptions under the Securities Act.

Under certain circumstances, holders of New Equity deemed to be "underwriters" may be entitled to resell their securities pursuant to the limited safe harbor resale provisions of Rule 144 of the Securities Act, to the extent available, and in compliance with applicable state and foreign securities laws. Generally, Rule 144 of the Securities Act provides that persons who hold securities received in a transaction not involving a public offering or who are affiliates of an issuer who resell securities, will not be deemed to be underwriters if certain conditions are met. These conditions vary depending on whether the seller is a holder of restricted securities or a control person of the issuer and whether the security to be sold is an equity security or a debt security. The conditions include required holding periods in certain cases, the requirement that current public information with respect to the issuer be available, a limitation as to the amount of securities that may be sold in certain cases, the requirement in certain cases that the securities be sold in a "brokers transaction" or in a transaction directly with a "market maker," and that, in certain cases, notice of the resale be filed with the SEC.

Under the Combined Disclosure Statement and Plan, the Debtor is offering and issuing the New Equity to Crius in exchange for the Crius DIP Claims, or principally in such exchange

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

and partly for cash or property. The Debtor believes that the offering and issuance of the New Equity satisfies the requirements of section 1145(a)(1) of the Bankruptcy Code and consequently will be exempt from registration under Section 5 of the Securities Act or other state or other federal securities laws. If the issuance of the New Equity does not qualify for an exemption under section 1145(a)(1) of the Bankruptcy Code, however, then the New Equity will be issued in a manner that qualifies for any other available exemption from registration, whether as a private placement under Section 4(a)(2) of the Securities Act or the safe harbor provisions promulgated thereunder.

### 6.    *Disclaimers*

**IN VIEW OF THE COMPLEXITY OF THE APPLICABLE SECURITIES LAWS, AND THE SUBJECTIVE, FACT SPECIFIC NATURE OF THE QUESTION OF WHETHER A RECIPIENT OF EQUITY IN THE REORGANIZED DEBTOR OR OF BENEFICIAL INTERESTS IN THE DISTRIBUTION TRUST IS AN UNDERWRITER, THE DEBTOR MAKES NO REPRESENTATIONS CONCERNING THE RIGHT OF ANY PERSON TO TRADE IN EQUITY OF THE REORGANIZED DEBTOR OR IN THE DISTRIBUTION TRUST INTERESTS TO BE DISTRIBUTED PURSUANT TO THE PLAN. ACCORDINGLY, THE DEBTOR RECOMMENDS THAT POTENTIAL RECIPIENTS OF EQUITY IN THE REORGANIZED DEBTOR OR OF DISTRIBUTION TRUST INTERESTS CONSULT THEIR OWN COUNSEL CONCERNING WHETHER THEY MAY FREELY TRADE SUCH SECURITIES OR BENEFICIAL INTERESTS.**

### ARTICLE XVI:

### MISCELLANEOUS PROVISIONS

#### A.    Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the Distribution Trust. The obligation of each of the Distribution Trust to pay quarterly fees to the Office of the United States Trustee pursuant to section 1930 of title 28 of the United States Code shall continue until such time as the Debtor's case is closed.

#### B.    Modifications and Amendments

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

(a)   The Debtor may alter, amend, or modify the Combined Disclosure Statement and Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date, with the consent of Crius.  The Debtor shall provide parties-in-interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court.  A Holder of a Claim that has accepted the Combined Disclosure Statement and Plan shall be deemed to have accepted the Combined Disclosure Statement and Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Holder.  In the event of any dispute as to whether such proposed alteration, amendment, modification, or clarification materially and adversely changes the treatment of the Claim of any such Holder, the Debtor shall bear the burden of demonstrating that such proposed alteration, amendment, modification, or clarification does not materially adversely change the treatment of the Claim of such Holder.

(b)   After the Confirmation Date and prior to substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of the Combined Disclosure Statement and Plan, the Debtor or Reorganized Debtor, as applicable, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Combined Disclosure Statement and Plan or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Combined Disclosure Statement and Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Combined Disclosure Statement and Plan or the discharge of the Reorganized Debtor; provided, however, that, to the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court.  A Holder of a Claim that has accepted the Combined Disclosure Statement and Plan shall be deemed to have accepted the Combined Disclosure Statement and Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Holder. In the event of any dispute as to whether such proposed alteration, amendment, modification, or clarification materially and adversely changes the treatment of the Claim of any such Holder, the Debtor or Reorganized Debtor, as the case may be, shall bear the burden of demonstrating that such proposed alteration, amendment, modification, or clarification does not materially adversely change the treatment of the Claim of such Holder.

## C.      Continuing Exclusivity and Solicitation Period

Subject to further order of the Bankruptcy Court, until the Effective Date, the Debtor shall, pursuant to section 1121 of the Bankruptcy Code, retain the exclusive right to amend the Combined Disclosure Statement and Plan and to solicit acceptances thereof, and any modifications or amendments thereto.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**D.    Severability of Combined Disclosure Statement and Plan Provisions**

If, prior to Confirmation, any term or provision of the Combined Disclosure Statement and Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor and Crius, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Combined Disclosure Statement and Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Combined Disclosure Statement and Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**E.    Successors and Assigns and Binding Effect**

The rights, benefits, and obligations of any Person or Entity named or referred to in the Combined Disclosure Statement and Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person or Entity, including, but not limited to, the Reorganized Debtor and all other parties-in-interest in the Chapter 11 Case.

**F.    Compromises and Settlements**

From and after the Effective Date, the Reorganized Debtor may compromise and settle various Claims against them, Causes of Action, Litigation Rights, and/or Avoidance Actions that they may have against other Persons or Entities without any further approval by the Bankruptcy Court; provided, however, that to the extent any such Claims, Causes of Action, Litigation Rights or Avoidance Actions are pending before the Bankruptcy Court pursuant to Filings made during the pendency of the Chapter 11 Case, the Debtor shall be required to obtain an appropriate order of the Bankruptcy Court concluding any such Filings.

Until the Effective Date, the Debtor expressly reserves the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against the Debtor, Causes of Action, Avoidance Actions, Litigation Rights or other claims that they may have against other Persons or Entities.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

### G.    Releases and Satisfaction of Subordination Rights

All Claims against the Debtor and all rights and claims between or among the Holders of Claims relating in any manner whatsoever to any claimed subordination rights shall be deemed satisfied by the Distributions under, described in, contemplated by, and/or implemented in Article VI of the Combined Disclosure Statement and Plan.  Distributions under, described in, contemplated by, and/or implemented by the Combined Disclosure Statement and Plan to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Holder of a Claim by reason of any claimed subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the Distributions in the manner set forth in the Combined Disclosure Statement and Plan.

### H.    Releases and Related Matters

#### 1.    *Releases by Debtor*

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, the Reorganized Debtor and any Person or Entity seeking to exercise the  rights of the Debtor's estate, including, without limitation, any successor to the Debtor or any estate  representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge each of the Protected Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or related to the Debtor, the conduct of the Debtor's business, the Chapter 11 Case, or the Combined Disclosure Statement and Plan (other than the rights of the Debtor and the Reorganized Debtor to enforce the obligations under the Confirmation Order and the Combined Disclosure Statement and Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the conduct of the Debtor's business, the Reorganized  Debtor, the Chapter 11 Case, the Combined Disclosure Statement and Plan, and that may be asserted by or on behalf of the Debtor, the Estate, or the Reorganized Debtor against (i) any of the present or former shareholders, directors, officers, employees or advisors of any of the Debtor, excluding claims resulting from gross  negligence, willful misconduct, breach of fiduciary duty, self-interested transactions or intentional tort and (ii) any Professionals of the Debtor; provided, however, that nothing in this Article XIV.H. shall be deemed to prohibit the Reorganized Debtor from asserting and enforcing any**

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any employee (including directors and officers) for alleged breach of confidentiality, or any other contractual obligations owed to the Debtor or the Reorganized Debtor, including non-compete and related agreements or obligations.   Nothing herein constitutes a waiver of any right of the Reorganized Debtor to (i) enforce all rights and claims concerning any and all intellectual property (including, without limitation, trademarks, copyrights, patents, customer lists, trade secrets and confidential or proprietary business information), all of which rights are expressly reserved and not released  and (ii) assert any defense based on whether or not applicable standards have been met.**

       2.      *Releases by Holders of Claims*

      **As of the Effective Date and to the extent permitted under Delaware law, Holders of Claims and Interests (a) who are not Impaired under the Combined Disclosure Statement and Plan; or (b) who vote to accept the Combined Disclosure Statement and Plan; or (c) who abstain from voting on the Combined Disclosure Statement and Plan and elect not to opt out of the release contained in this paragraph, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Debtor, the Reorganized Debtor and the present or former shareholders, directors, officers, employees or advisors of the Debtor (the "Releasees") from any and all Claims (including Avoidance Actions), Interests, Causes of Action or Avoidance Actions that such Entity would have been legally entitled to assert (whether individually or collectively or directly, indirectly or derivatively, at law, in equity or otherwise), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the conduct of the Debtor's business, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Disclosure Statement and Plan, the business or contractual arrangements between any Releasee and the Debtor, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation or preparation of the Combined Disclosure Statement and Plan, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of the Debtor, the Reorganized Debtor, or a Releasee that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Debtor, the Reorganized Debtor, or the Releasee reasonably believed to be in the best interests of the Debtor (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct or gross negligence; <u>provided</u>, <u>however</u>, that nothing in the Combined Disclosure Statement and Plan shall be deemed to prohibit any party from asserting or**

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**enforcing any direct contractual obligation against any Releasee, with all rights and defenses to such claims being reserved by the Releasees.**

## I.      Discharge of the Debtor

(a)      Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Combined Disclosure Statement and Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release, effective as of the Effective Date, of all Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on such Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Combined Disclosure Statement and Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is Filed or deemed Filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Combined Disclosure Statement and Plan.  The Combined Disclosure Statement and Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Combined Disclosure Statement and Plan or votes to reject the Combined Disclosure Statement and Plan.

(b)      As of the Effective Date, except as provided in the Combined Disclosure Statement and Plan or the Confirmation Order, Persons shall be precluded from asserting against the Debtor or the Reorganized Debtor or any of their assets or properties, any other or further claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Combined Disclosure Statement and Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination, as of the Effective Date, of discharge of all such Claims and other debts and liabilities against the Debtor and termination of all Common Equity Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**J.      Injunction**

(a)   Except as provided in the Combined Disclosure Statement and Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged pursuant to Article XIV.I of the Combined Disclosure Statement and Plan, released pursuant to Article XIV.H of the Combined Disclosure Statement and Plan, or are subject to exculpation pursuant to Article XIV.K of the Combined Disclosure Statement and Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, and their respective affiliates or their property on account of any such discharged Claims, debts, or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Reorganized Debtor or its property; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a right of setoff, recoupment or subrogation of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Combined Disclosure Statement and Plan.

(b)   Without limiting the effect of the foregoing provisions of this Article XIV.J upon any Person, by accepting Distributions pursuant to the Combined Disclosure Statement and Plan, each Holder of an Allowed Claim receiving a Distribution pursuant to the Combined Disclosure Statement and Plan shall be deemed to have specifically consented to the injunctions set forth in this Article XIV.J.

(c)   Nothing in this Article XIV.J shall impair (i) the rights of any Holder of a Disputed Claim to establish its Claim in response to an objection Filed by the Debtor or the Reorganized Debtor, (ii) the rights of any defendant in an Avoidance Action Filed by the Debtor to assert defenses in such action, or (iii) the rights of any party to an Executory Contract or Unexpired Lease that has been assumed by the Debtor pursuant to an order of the Bankruptcy Court or the provisions of the Combined Disclosure Statement and Plan to enforce such assumed contract or lease.

**K.      Exculpation and Limitations of Liability**

(a)   On the Effective Date, the Protected Parties shall neither have, nor incur any liability to any Holder of a Claim or an Interest, the Debtor, the Reorganized Debtor, or any other party-in-interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any pre-petition

or post-petition act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Combined Disclosure Statement and Plan, the solicitation of acceptances of the Combined Disclosure Statement and Plan, the pursuit of Confirmation of the Combined Disclosure Statement and Plan, the Confirmation of the Combined Disclosure Statement and Plan, the consummation of the Combined Disclosure Statement and Plan, or the administration of the Combined Disclosure Statement and Plan or the property to be distributed under the Combined Disclosure Statement and Plan, except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct; **provided further, however**, that the foregoing is not intended to limit or otherwise impact any defense of qualified immunity that may be available under applicable law; **provided further**, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Combined Disclosure Statement and Plan; **provided still further**, that the foregoing Exculpation shall not be deemed to, release, affect, or limit any of the rights and obligations of the Protected Parties from, or exculpate the Protected Parties with respect to, any of the Protected Parties' obligations or covenants arising pursuant to the Combined Disclosure Statement and Plan or the Confirmation Order.

(b)  Notwithstanding any other provision of the Combined Disclosure Statement and Plan, no Holder of a Claim or an Interest, the Debtor, the Reorganized Debtor, no other party-in-interest, none of their respective agents, employees, representatives, advisors, attorneys, or affiliates, and none of their respective successors or assigns shall have any right of action against any of the Protected Parties for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Combined Disclosure Statement and Plan, solicitation of acceptances of the Combined Disclosure Statement and Plan, the pursuit of Confirmation of the Combined Disclosure Statement and Plan, the Confirmation of the Combined Disclosure Statement and Plan, the consummation of the Combined Disclosure Statement and Plan, or the administration of the Combined Disclosure Statement and Plan or the property to be distributed under the Combined Disclosure Statement and Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct.

L.    Abrogation of Successor Liability

To the extent permitted pursuant to applicable law, the transfer of property of the Debtor to the Reorganized Debtor shall be free and clear of any claim, or resulting liability, that the Reorganized Debtor and the Combined Disclosure Statement and Crius are to any extent a successor to any of the Debtor under any state or federal statutory or common law relating to successor liability, or any claim that an entity is legally responsible for the debts or liabilities of another entity as a successor to, continuation of, or participant in a de facto

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

**or actual merger with, the other entity, under any theory or legal doctrine of any type or nature whatsoever.  To the extent permitted pursuant to applicable law, none of the Reorganized Debtor or the Combined Disclosure Statement and Crius shall be, or shall be deemed to be, a successor to any of the Debtors for any purpose.**

**M.      Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Combined Disclosure Statement and Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

**N.      Revocation, Withdrawal or Non-Consummation**

The Debtor reserves the right to revoke or withdraw the Combined Disclosure Statement and Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtor revokes or withdraws the Combined Disclosure Statement and Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Combined Disclosure Statement and Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Combined Disclosure Statement and Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Combined Disclosure Statement and Plan, and any document or agreement executed pursuant to the Combined Disclosure Statement and Plan shall be deemed null and void, and (c) nothing contained in the Combined Disclosure Statement and Plan, and no acts taken in preparation for consummation of the Combined Disclosure Statement and Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Interests in, the Debtor, or any Causes of Action, Avoidance Actions, Litigation Rights or other claims by or against the Debtor or any Person or Entity, (ii) prejudice in any manner the rights of the Debtor or any Person or Entity in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person or Entity.

**O.      Plan Supplement**

The Plan Supplement shall be Filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing or such later date as may be established by order of the Bankruptcy Court.  Upon such Filing, all documents set forth in the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Interests may obtain a copy of any document set forth in the Plan Supplement upon written request to the Debtor in accordance with this Article XIV.Q.

**P.     Notices**

Any notice, request, or demand required or permitted to be made or provided under the Combined Disclosure Statement and Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor:

> Scott D. Cousins
> Evan T. Miller
> Bayard, PA
> 222 Delaware Avenue, Suite 900
> Wilmington, DE  19801

Notices to Crius:

> Crius Solar Fulfillment, LLC
> c/o Crius Energy, LLC
> 1055 Washington Blvd., Floor 7
> Stamford, CT 06901
> Attention: Chief Legal Officer

with a copy (which shall not constitute notice) to:

> Willkie Farr & Gallagher LLP
> 787 Seventh Avenue
> New York, New York 10019
> Attention:  Mark Getachew
> Paul Shalhoub

with a copy (which shall not constitute notice) to:

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Attention: Matthew B. Lunn
Justin H. Rucki

**Q.     Computation of Time**

In computing any period of time prescribed or allowed by the Combined Disclosure Statement and Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**R.     Section 1125(e) of the Bankruptcy Code**

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtor (and each of its successors, predecessors, control persons, members, Affiliates, agents, directors, officers, employees, investment bankers, financial advisors, accountants, attorneys and other professionals and any officer or employee serving as a director, manager, officer or employee of any Affiliate of the Debtor or trustee (or similar position) of any employee benefit plan or trust (or similar person) of the Debtor or its Affiliates) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities under this Plan. Accordingly, such entities and individuals shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or the offer and issuance of the securities under this Plan.

**S.     Determination of Tax Filings and Taxes**

The Reorganized Debtor shall have the right to request an expedited determination of its tax liability, if any, under section 505(b) of the Bankruptcy Code with respect to any tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date. The Reorganized Debtor shall have the right, at their expense, to control, conduct, compromise and settle any tax contest, audit or administrative or court proceeding relating to any liability for taxes.

**T.     Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Delaware shall govern the construction

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

and implementation of the Combined Disclosure Statement and Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Combined Disclosure Statement and Plan and (b) the laws of the state of incorporation of the Debtor shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

**U.      Exhibits**

All exhibits are incorporated into and are a part of this Combined Disclosure Statement and Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be Filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of exhibits can be obtained upon written request to Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19801, Attn: Scott D. Cousins, counsel to the Debtor or by downloading such exhibits from the Bankruptcy Court's website at http://www.deb.uscourts.gov (registration required) or the Claims Agent's website at http://www.jndla.com/cases/verengo.  To the extent any exhibit is inconsistent with the terms of the Combined Disclosure Statement and Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Combined Disclosure Statement and Plan shall control.

Dated:  March 6, 2017                              **BAYARD, P.A.**

                                    */s/ Scott D. Cousins*
                                    Scott D. Cousins (No. 3079)
                                    GianClaudio Finizio (No. 4253)
                                    Evan T. Miller (No. 5364)
                                    222 Delaware Avenue, Suite 900
                                    Wilmington, DE 19801
                                    Phone: (302) 655-5000

                                    Counsel for the Debtor and Debtor-in-Possession

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

# Exhibit 1

to

Disclosure Statement with Respect to Chapter 11 Liquidating Plan Proposed by the Debtors and Debtors in Possession, Dated March [7], 2017

# Liquidation Analysis

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

# Exhibit 2

to

Disclosure Statement with Respect to Chapter 11 Liquidating Plan Proposed by the Debtors and Debtors in Possession, Dated March [7], 2017

# Financial Projections

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

Financial Projections

x

| | Q1 | Q2 | Q3 | Q4 | 2017 | |
|---|---|---|---|---|---|---|
| **Revenue** | $1,768,261 | $2,223,642 | $2,253,424 | $2,256,396 | **$8,501,723** | 100.0% |
| New Home | $694,682 | $1,066,240 | $1,032,920 | $1,016,260 | **$3,810,102** | 44.8% |
| Sungevity | $422,769 | $458,466 | $478,458 | $471,300 | **$1,830,994** | 21.5% |
| O&M | $74,100 | $121,200 | $159,600 | $199,050 | **$553,950** | 6.5% |
| EPC | $576,711 | $577,735 | $582,445 | $569,786 | **$2,306,677** | 27.1% |
| | | | | | | |
| **COGS** | $1,189,492 | $1,283,545 | $1,266,363 | $1,286,897 | **$5,026,297** | |
| | | | | | | |
| **Gross Margin** | $578,769 | $940,097 | $987,060 | $969,499 | **$3,475,426** | |
| GPM | 32.7% | 42.3% | 43.8% | 43.0% | **40.9%** | |
| | | | | | | |
| **Operating Expenses** | $1,009,835 | $709,761 | $635,013 | $634,071 | **$2,988,680** | |
| OpEx % | 57.1% | 31.9% | 28.2% | 28.1% | **35.2%** | |
| | | | | | | |
| **Operating Income** | ($431,066) | $230,336 | $352,047 | $335,429 | **$486,745** | |
| % of Rev. | -24.4% | 10.4% | 15.6% | 14.9% | 5.7% | |

THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS OR FOR THE USE IN SOLICITATION OF VOTES

# Exhibit 3

to

Disclosure Statement with Respect to Chapter 11 Liquidating Plan Proposed by the Debtors and Debtors in Possession, Dated March [7], 2017

## Distribution Trust Avoidance Actions