## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| VERENGO, INC.,[1] | Case No.: 16-12098 (BLS) |
| Debtor. | **Re: D.I. 236, 239, 262, 265, 273, 275** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING AND CONFIRMING SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF REORGANIZATION FOR VERENGO, INC. PROPOSED BY THE DEBTOR AND DEBTOR IN POSSESSION

The above-captioned debtor and debtor in possession (the "**Debtor**") having filed the *Second Amended Combined Disclosure Statement* (as amended, modified or supplemented in accordance with its terms, the "**Disclosure Statement**") *And Chapter 11 Plan Of Reorganization For Verengo, Inc. Proposed By The Debtor And Debtor In Possession* (as amended, modified or supplemented in accordance with its terms, the "**Plan**") [D.I. 236]; and the Court having entered the *Order (I) Approving on an Interim Basis the Second Amended Combined Disclosure Statement and Plan as Containing Adequate Information For Solicitation Purposes; (II) Scheduling The Combined Hearing And the Deadline For Filing Objections; (III) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject The Combined Disclosure Statement And Plan, And Approving The Form Of Ballots And Solicitation Package; (IV) Establishing the Voting Record Date; And (V) Approving The Notice Procedures* [D.I. 239] (the "**Conditional Approval and Procedures Order**") approving, among other things, the Disclosure Statement on an interim basis, the contents of the Solicitation Package and the

---

[1]     The Debtor and the last four digits of its identification number are as follows: Verengo, Inc. [6114]. The address of the Debtor's corporate headquarters is 1899 Western Way, Suite 340, Torrance, CA 90501.

procedures for soliciting and tabulating votes to accept or reject the Plan;[2] and the Debtor having filed the Plan Supplement, as amended [D.I. 262, 265, 273]; and upon the filed affidavits of service documenting compliance with the notice and solicitation requirements of the Conditional Approval and Procedures Order [D.I. 248, 259, 264] (the "**Solicitation Affidavits**"); and upon the *Certification of JND Corporate Restructuring Regarding Tabulation of Votes in Connection With the Second Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization for Verengo, Inc.* [D.I. 274] (the "**Voting Declaration**"); and upon the *Declaration of Dan Squiller in Support of Confirmation of the Debtor's Second Amended Combined Disclosure Statement and Plan* [D.I. 271] ("**Squiller Declaration**"); and upon the *Declaration of Andrew De Camara Support of Confirmation of the Debtor's Second Amended Combined Disclosure Statement and Plan* [D.I. 270] ("**De Camara Declaration**"); and upon the *Debtor's Memorandum of Law in Support of Approval and Confirmation of the Debtor's Second Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization for Verengo, Inc.* (the "**Confirmation Memorandum**") [D.I. 275]; and upon any objections to the Plan or Disclosure Statement having been resolved or overruled by the Court; and the Court having conducted a hearing to consider final approval of the Disclosure Statement and confirmation of the Plan on April 24, 2017 (the "**Confirmation Hearing**"); and upon the evidence adduced and offered and the arguments of counsel made at the Confirmation Hearing; and the Court having reviewed all documents in connection with confirmation and having heard all parties desiring to be heard; and upon the full record of this case; and after due deliberation and consideration of all of the foregoing; and upon sufficient cause appearing therefor,

---

[2]     Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    Findings and Conclusions.  The findings of fact and conclusions of law set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction and Venue.  The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court and in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Case Status.  On September 26, 2016, the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been requested or appointed in this case.

D.    Adequacy of the Disclosure Statement.  The information contained in the Disclosure Statement contained extensive material information regarding the Debtor so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. Additionally, the Disclosure Statement contains adequate information as that term is defined in section 1125(a) of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable nonbankruptcy law. Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under

the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions.

      E.     <u>Notice and Service of Solicitation Materials</u>.  The Voting Declaration and the Solicitation Affidavits establish the transmittal and service of the Disclosure Statement, Plan and related solicitation materials and notices (including without limitation notice of all deadlines for objecting to, or voting to accept or reject, the Plan and of the proposed release, discharge, exculpation and injunction provisions of the Plan) in accordance with the Conditional Approval and Procedures Order. Under the circumstances, such transmittal and service constitutes due, adequate and sufficient notice of the Disclosure Statement, Plan and the Confirmation Hearing to all parties entitled to such notice under the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is necessary or required.

      F.     <u>Solicitation</u>.  The Debtor has solicited votes for acceptance and rejection of the Plan in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Conditional Approval and Procedures Order, all applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.  The Debtor is entitled to the protections of section 1125(e) of the Bankruptcy Code.

      G.     <u>Vote Certification</u>.  All procedures used to tabulate the Ballots were fair and conducted in accordance with the Conditional Approval and Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.  As evidenced by the Voting Declaration, Classes 2B, 3, and 4 voted to accept the Plan.

      H.     <u>Plan Supplement</u>.  In accordance with the Conditional Approval and Procedures Order, on April 13, 2017, the Debtor filed the initial Plan Supplement [D.I. 262].  On April 20,

2017, the Debtor filed an amended Exhibit E to the Plan Supplement and then a further amended Exhibit E to the Plan Supplement, therein providing disclosures pursuant to section 1129(a)(5) of the Bankruptcy Code regarding the individuals proposed to serve as directors and officers of the Reorganized Debtor after the Effective Date [D.I. 265, 273]. The information and documents comprising the Plan Supplement and the amendments or supplements thereto are integral to, part of, and incorporated by reference into the Plan. Under the circumstances, the filing and service of such documents as set forth in the Conditional Approval and Procedures Order constitutes due, adequate and sufficient notice of the Disclosure Statement, Plan, and the Confirmation Hearing to all parties entitled to such notice under the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is necessary or required. Consistent with the terms of the Plan, the Debtor reserves the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.

I.      Bankruptcy Rule 3016. The Plan is dated and identifies its proponent in accordance with Bankruptcy Rule 3016(a). The Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities subject to such injunction in accordance with Bankruptcy Rule 3016(c).

J.      Burden of Proof. The Debtor has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code necessary to confirm the Plan by a preponderance of the evidence.

K.      Section 1129(a)(1). The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with all applicable provisions of the Bankruptcy Code, including but not limited to the following:

1.    The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. In addition to Administrative Claims, Priority Tax Claims, and DIP Claims, which need not be classified, the Plan classifies Claims and Equity Interests into six (6) separate Classes. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for the separate Classes of Claims and Equity Interests established under the Plan. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.    Article VI of the Plan specifies that Classes 1 and 2A are not impaired under the Plan. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

3.    Article VI of the Plan designates Classes 2A, 3, 4, and 5 as impaired and specifies the treatment of Claims and Equity Interests in such Classes. Thus, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

4.    Articles IV and VI of the Plan provide for the same treatment by the Debtor for each Claim or Equity Interest in each respective Class. Thus, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

5.    The Plan provides adequate and proper means for its implementation, including without limitation: (i) the vesting of assets in the Reorganized Debtor and the vesting of the Distribution Trust Assets in the Distribution Trust; (ii) the creation, governance of, and administration of the Distribution Trust; (iii) the Debtor's continued corporate existence as the Reorganized Debtor; (iv) the Reorganized Debtor's board and management composition; (v) the preservation of rights of action; (vi) the Closing of the Plan, including cancellation of old equity interests, the issuance of the Reorganized Debtor's equity interests, the execution of certain documents, and the transfer of the Distribution Trust Assets and the Professional Fee Reserve. Thus, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

6.    The Reorganized Debtor's New Corporate Governance Documents, as filed with the Plan Supplement, are consistent with section 1123(a)(6) of the Bankruptcy Code. Thus, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

7.    Article VIII of the Plan sets forth the manner of selection of the directors and officers of the Reorganized Debtor, and of the Distribution Trustee. The Debtor has adequately disclosed the identity and affiliations of persons to serve on the initial board of directors or to be an officer of the Reorganized Debtor in the Plan Supplement. The manner of selection of such individuals is consistent with the interests of Holders of Claims and

Equity Interests and with public policy. Thus, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

8.  The Plan's additional provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, provisions for: (i) the impairment of certain classes of claims; (ii) the disposition of Executory Contracts and Unexpired Leases; (iii) the releases by the Debtor of certain parties; (iv) the releases by certain third parties; (v) the exculpations of certain parties; (vi) the injunctions against certain parties; (vii) the retention of, and the right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties to the extent not waived or released under the Plan or this Confirmation Order; (viii) the permissible modifications of the rights of Holders of Claims or Equity Interest; (ix) the operations of the Distribution Trust; (x) the distributions to Holders of Allowed Claims; (xi) the exemption of the securities issued under the Plan from transfer taxes; and (xii) the retention of jurisdiction by the Court over certain matters after the Effective Date.

L.  Section 1129(a)(2). The Debtor has complied with all applicable provisions of the Bankruptcy Code, including without limitation sections 1122, 1123, 1124, 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Conditional Approval and Procedures Order, and other orders of the Court.

M.  Section 1129(a)(3). The Plan has been proposed by the Debtor in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In making this determination, the Court has considered the circumstances and record of this case and the process leading to the filing of the Disclosure Statement and Plan and the Confirmation Hearing. The Plan is the result of a market-tested process and of extensive arm's length and good faith negotiations among the Debtor, Cruis, and key stakeholders, and has received strong support from creditors. The Plan is proposed to effect a successful reorganization of the Debtor and to maximize creditor recoveries, and accordingly is consistent with the objectives and purposes of the Bankruptcy Code.

N.    Section 1129(a)(4).  Except with respect to fees and expenses of Crius as DIP Lender, the payments made or to be made by or on behalf of the Debtor to professionals for services or costs in connection with the Plan or incident to the case, either have been approved by or are subject to the approval of the Court as reasonable.  Thus, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

O.    Section 1129(a)(5).  The identity and affiliations of the individuals that will serve as directors and officers of the Reorganized Debtor have been disclosed in the Plan Supplement, in satisfaction of section 1129(a)(5)(A)(i) of the Bankruptcy Code.  Further, in accordance with section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the appointment of the directors and officers to such offices is consistent with the interests of creditors and with public policy inasmuch as no objection to their appointment was received.  Moreover, the identity and affiliation of the Distribution Trustee was disclosed in the Plan Supplement, in satisfaction of section 1129(a)(5)(A)(i) of the Bankruptcy Code.  Further, in accordance with section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the appointment of the Distribution Trustee is consistent with the interests of creditors and with public policy inasmuch as no objection to the proposed Distribution Trustee was received.

P.    Section 1129(a)(6).  The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.  As such, section 1129(a)(6) of the Bankruptcy Code is inapplicable in this case.

Q.    Section 1129(a)(7).  Each Holder of an impaired Claim or Equity Interest that has not accepted or is deemed not to have accepted the Plan will, on account of such Claim or Equity Interest, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated

under chapter 7 of the Bankruptcy Code on such date.  In making this determination, the Court has considered the liquidation analysis attached to the Disclosure Statement, the Squiller Declaration, and other evidence introduced at the Confirmation Hearing, which are credible and persuasive, are based on reasonable methodologies and assumptions, and establish that that the distributions under the Plan to impaired Classes would not be less than in a liquidation. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

R.    Section 1129(a)(8).  Class 1 (Priority Non-Tax Claims) and Class 2A (Secured Claims) are Unimpaired under the Plan and each is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 2B (Crius Prepetition Secured Claims), Class 3 (Crius Unsecured Deficiency Claims), and Class 4 (General Unsecured Claims) have each voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. However, section 1129(a)(8) of the Bankruptcy Code has not been satisfied because Class 5 (Common Equity Interests) is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  However, as set forth below the Plan is confirmable because it satisfies the nonconsensual confirmation requirements pursuant to section 1129(b) of the Bankruptcy Code.

S.    Section 1129(a)(9).  The treatment of Administrative Claims, DIP Claims, Priority Tax Claims, and Priority Non-Tax Claims under the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

T.    Section 1129(a)(10).  Classes 2B, 3, and Class 4 are impaired and have voted to accept the Plan, determined without including any acceptance by any insider.  Therefore, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

U.    Section 1129(a)(11). Confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of the Debtor or any successor to the Debtor under the Plan. As an initial matter, pursuant to the Plan the Reorganized Debtor will be discharged of prepetition claims and will emerge as a debt free company. Moreover, the Distribution Trust will be funded with cash for distributions. No distributions to creditors under the Plan are related in any way to the performance of the Reorganized Debtor. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

V.    Section 1129(a)(12). The Plan provides for the payment by the Effective Date of all fees required under 28 U.S.C. § 1930(a), and thereby satisfies section 1129(a)(12) of the Bankruptcy Code.

W.    Section 1129(a)(13)-(16). The Debtor does not owe retiree benefits (as defined under section 1114 of the Bankruptcy Code), and accordingly section 1129(a)(13) does not apply to the Plan. Additionally, sections 1129(a)(14)-(16) of the Bankruptcy Code apply to individuals or nonprofit entities and are not applicable to this case.

X.    Section 1129(b). All of the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8), are satisfied by the Plan. Class 5 (Common Equity Interests) is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code (the "**Deemed Rejecting Class**"). The Plan's classification scheme, including its treatment of the Deemed Rejecting Class, is appropriate as similarly situated Equity Interests receive substantially similar treatment under the Plan and valid business, factual, and legal reasons exist for the separate classification and treatment of the Claims or Equity Interests across the various Classes established under the Plan. In addition, there is no Holder of any Claim or Equity Interest that is junior to the Equity Interests in the Deemed Rejecting Class that will receive or

retain any property under the Plan on account of such junior Claim or Equity Interest, and no Class is receiving or retaining property under the Plan with a value greater than the Allowed amount of Claims in such Class.  Therefore, the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Deemed Rejecting Class.  Accordingly, the Plan satisfies the requirements of and may be confirmed under section 1129(b) of the Bankruptcy Code.

Y.    Section 1129(c).  The Plan is the only plan that has been filed in the Bankruptcy Case, and accordingly the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

Z.    Section 1129(d).  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933, and no party in interest, including but not limited to any governmental unit, has requested that the Court deny confirmation of the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

AA.    Securities Exempt from Registration.  The offering, issuance and distribution of any securities pursuant to the Plan, including without limitation the issuance of the New Equity to Crius and the distribution of the Distribution Trust Assets to the Distribution Trust Beneficiaries, are subject to, or made in good faith and in reliance on, exemptions from section 5 of the Securities Act of 1933 and any state or local laws requiring registration or licensing for issuers, underwriters or brokers, pursuant to section 1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, or any other applicable exemption under the Securities Act.

BB.    Executory Contracts and Unexpired Leases.  Article IX of the Plan provides for the rejection of all Executory Contracts or Unexpired Leases of the Debtor as of the Effective Date, except for those explicitly designated for assumption pursuant to the Schedule of Assumed Contracts, for certain procedures to assume or reject Unknown Contracts, for certain procedures

by which counterparties may assert objections to the proposed treatment or cure of their respective Executory Contract or Unexpired Lease under the Plan, and for certain procedures by which the Schedule of Assumed Contracts may be amended or modified. Article IX of the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code and satisfies the requirements of section 365 of the Bankruptcy Code. The assumption or rejection of the Executory Contracts or Unexpired Leases as set forth therein and in the Schedule of Assumed Contracts, notice of which has been provided in accordance with the Conditional Approval and Procedures Order and Plan, is a reasonable exercise of business judgment by the Debtor and is in the best interests of the Debtor and the Estate. The Debtor has provided adequate assurance that the Reorganized Debtor will cure defaults (if any) and timely perform under each Executory Contract or Unexpired Lease being assumed pursuant to the Plan.

CC.    <u>Releases, Exculpation, Discharge and Injunction</u>.    The release, exculpation, discharge, and injunction provisions of Article XVI of the Plan, as modified herein, constitute good faith compromises and settlements of the matters covered thereby. The parties released or exculpated pursuant to such provisions have made substantial contributions to the Debtor's reorganization, and such provisions are (i) fair, equitable and reasonable, (ii) integral elements of the Debtor's reorganization and resolution of this case and without which the Debtor's ability to confirm the Plan would be seriously impaired, (iii) supported by and represent the valid exercise of the Debtor's business judgment, (iv) supported by good and valuable consideration, and (v) in the best interests of the Debtor, its estate and creditors. Each such provision is within the jurisdiction of the Court pursuant to 28 U.S.C. § 1334, is a material element of the compromises, settlements and transactions incorporated into and to be effectuated by the Plan and is important to facilitate an overall resolution with respect to the Debtor's reorganization among or against the

parties in interest in this case, and is consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and all other applicable law.

DD.    <u>Plan Conditions to Confirmation</u>.  Any and all conditions to confirmation set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan.

EE.    <u>Plan Conditions to Consummation</u>.  Each of the conditions to the Effective Date under the Plan, as set forth in Article XII therein, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

FF.    <u>Retention of Jurisdiction</u>.  The Court may property retain jurisdiction after the effective date of the Plan over the matters set forth in the Article XIII of the Plan.

GG.    <u>Waiver of Stay</u>.  Under the circumstances, good cause exists to waive the stay imposed by Bankruptcy Rule 3020(e).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Adequacy of the Disclosure Statement</u>.  The Disclosure Statement is approved on a final basis as containing adequate information with the meaning of section 1125 of the Bankruptcy Code and contains sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules and regulations.

2.    <u>Solicitation and Tabulation.</u>  The solicitation and tabulation of votes on the Plan complied with the Conditional Approval and Procedures Order and applicable bankruptcy law, were appropriate and satisfactory, and are approved in all respects.

3.    <u>Confirmation</u>.  The Plan, in the form attached as <u>Exhibit A</u> and including all documents of the Plan Supplement, as modified by this Confirmation Order, is hereby approved and confirmed pursuant to section 1129 of the Bankruptcy Code.

4.    <u>Objections</u>. All Objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Combined Hearing, shall be, and hereby are, OVERRULED and DENIED in their entirety. All withdrawn objections are deemed withdrawn with prejudice.

5.    <u>Amendments, Modifications or Alterations</u>.  To the extent the Plan has been amended, modified or supplemented subsequent to solicitation, including as modified herein, then to the extent that such revisions do not materially and adversely affect the treatment of any Claims or Equity Interests pursuant to the Plan and otherwise are consistent with section XVI.B of the Plan, pursuant to Bankruptcy Rule 3019, such revisions, if any, do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

6.    <u>Plan Modifications</u>.  The following provisions of the Plan are deleted and replaced in their entirety with the following:

Section II.A.1.89

"Indemnified person" means all (a) present officers, directors, employees; (b) former officers, directors, employees, serving in such capacities on or after August 2015; and (c) members, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals and representatives of the Debtor (in each case in his, her or its capacity as such).

Section II.A.1.116

"Protected Parties" means the (a) Debtor; (b) Reorganized Debtor; (c) Crius; and (d) the Indemnified persons.

Section II.A.1.122

"Runoff Policy" means that certain director & officer insurance policy purchased prior to the Petition Date by the Debtor, if any.

Section XVII.H.1 Releases by Debtor

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, the Reorganized Debtor and any Person or Entity seeking to exercise the  rights of the Debtor's estate, including, without limitation, any successor to the Debtor or any estate  representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge each of the Protected Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or related to the Debtor, the conduct of the Debtor's business, the Chapter 11 Case, or the Combined Disclosure Statement and Plan (other than the rights of the Debtor and the Reorganized Debtor to enforce the obligations under the Confirmation Order and the Combined Disclosure Statement and Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the  Effective Date in any way relating to the Debtor, the conduct of the Debtor's business, the Reorganized  Debtor, the Chapter 11 Case, the Combined Disclosure Statement and Plan, and that may be asserted by or on behalf of the Debtor, the Estate, or the Reorganized Debtor against (i) any of the present or former shareholders, directors, officers, employees or advisors of any of the Debtor, excluding claims resulting from gross  negligence, willful misconduct, or intentional tort and (ii) any Professionals of the Debtor; provided, however, that nothing in this Article XIV.H. shall be deemed to prohibit the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any employee (including directors and officers) for alleged breach of confidentiality, or any other contractual obligations owed to the Debtor or the Reorganized  Debtor, including non-compete and related agreements or obligations.  Nothing herein constitutes a waiver of any right of the Reorganized Debtor to (i) enforce all rights and claims concerning any and all intellectual property (including, without limitation, trademarks, copyrights, patents, customer lists, trade secrets and confidential or proprietary business information), all of which rights are expressly reserved and not released and (ii) assert any defense based on whether or not applicable standards have been met.

7.      <u>Compromise of Controversies</u>. For the reasons stated herein, the Plan constitutes a good faith, arm's-length compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any Distribution to be made or obligation to be incurred pursuant to the Plan, and the entry of this Plan Confirmation Order constitutes approval of all such compromises and settlements.

8.      <u>Implementation</u>.   The Debtor, the Reorganized Debtor, and the Distribution Trustee are hereby authorized to take all actions as necessary, appropriate, or desirable to enter into, implement, and consummate the transactions contemplated by the Plan and the contracts, instruments, releases, leases, agreements, or other documents created or executed in connection with the Plan and its related documents.  Pursuant to this Confirmation Order, the Debtor is hereby authorized and empowered, without action by its stockholders or further action by its board of directors, to take any and all actions as are consistent with the Plan and as are reasonably determined by any of its executive officers to be necessary or appropriate to implement, effectuate or consummate any and all instruments, documents or transactions contemplated by the Plan or this Confirmation Order.  Without further order or authorization of the Court, the Debtor, the Reorganized Debtor, and the Distribution Trustee are authorized to make all modifications to all Plan and its related documents in accordance with the Plan. Execution versions of the Plan and its related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

9.    Effective Date.  The Effective Date of the Plan shall occur on the date, as determined by the Debtor and Crius, when the conditions set forth in section XII.B of the Plan have been satisfied or waived in accordance with the Plan.

10.    Binding Effect.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan and this Confirmation Order shall be binding upon: (a) the Reorganized Debtor; (b) the Distribution Trustee and any professionals or other parties assisting and supporting the Distribution Trustee; (c) all Professionals; (d) any and all non-Debtor parties to judicial or administrative proceedings in which the Debtor is a party; (e) any and all Holders of Claims or Equity Interests (irrespective of (i) whether such Claims or Equity Interests are impaired under the Plan, (ii) whether the Holders of such Claims or Equity Interests accepted, rejected, or are deemed to have accepted or rejected the Plan, or (iii) whether such Claims or Equity Interests have been asserted in a filed proof of claim, proof of interest, request for administrative expense payment or other pleading or filing); (f) any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtor; (g) any Person that received or may be deemed to have received actual or constructive notice of the Plan and the Confirmation Hearing; and (h) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.  All settlements, compromises, releases, waivers, exonerations, and injunctions set forth in the Plan and this Confirmation Order shall be, and hereby are, effective and binding on all Persons who may have had standing to assert any settled, released, exculpated, or enjoined causes of action, and no other Person or entity shall possess such standing to assert such causes of action after the Effective Date.

11.    <u>Vesting of Estate Property; Transfers</u>.    On the Effective Date, the Distribution Trust Assets shall vest in the Distribution Trust free and clear of all Claims, Liens, charges, encumbrances, rights, Equity Interests, and Interests.  Except for the Distribution Trust Assets or as otherwise explicitly provided for in the Plan, all of the property and assets of the Debtor shall vest on the Effective Date in the Reorganized Debtor, free and clear of all Claims, Liens, charges, encumbrances, rights, Equity Interests, and Interests.  For the avoidance of doubt, except to the extent expressly waived, relinquished, released, or compromised in the Plan, all claims and Causes of Action of the Debtor (including, without limitation, all Avoidance Actions and all causes of action in all other litigation presently pending in other forums) are preserved for the benefit of the Reorganized Debtor or the Distribution Trust in accordance with the Plan; *provided, however*, that the Debtor, the Distribution Trust, the Reorganized Debtor, Crius, Angeleno Investors III, L.P. ("**Angeleno**"), and ClearSky Power & Technology Fund I LLC ("**ClearSky**") covenant and agree not to commence or otherwise prosecute (i) any Retained Avoidance Actions or (ii) any Causes of Action arising from acts or omissions taken or omitted to be taken prior to the Effective Date and related to the Debtor against any Indemnified person who covenants and agrees in writing not to commence or otherwise prosecute any Causes of Action against the Distribution Trust, the Reorganized Debtor, Crius, Angeleno or ClearSky.  Without limiting the foregoing, the right of the Reorganized Debtor on behalf of the Debtor, the Distribution Trust, Crius, Angeleno and ClearSky to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, are preserved.

12.    <u>Distribution Trust</u>.  On the Effective Date, the Distribution Trust shall be established pursuant to the terms of the Plan and Distribution Trust Agreement.  For federal income tax purposes, all parties shall treat the transfer of Distribution Trust Assets to the Distribution Trust as (a) a transfer of Distribution Trust Assets (subject to any and all Allowed Administrative Claims, Allowed Priority Claims, and Allowed Secured Claims, to the extent not satisfied by the Debtor prior to the Effective Date, that are payable by the Distribution Trust pursuant to the Combined Disclosure Statement and Plan) directly to Distribution Trust Beneficiaries (other than to the extent Distribution Trust Assets are allocable to Disputed Claims), followed by (b) the transfer by such beneficiaries to the Distribution Trust of Distribution Trust Assets in exchange for the Distribution Trust Interests.  Accordingly, except in the event of contrary definitive guidance, Distribution Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Distribution Trust Assets (other than such Distribution Trust Assets as are allocable to Disputed Claims).

13.    <u>Distribution Trustee</u>.  Wayne Weitz is hereby approved as the initial Distribution Trustee in accordance with this Confirmation Order, the Plan, and the Distribution Trust Agreement.  The Distribution Trustee shall be compensated from, and all other costs of administration of the Distribution Trust shall be paid from, the Distribution Trust Assets.  The Distribution Trustee shall not be required to post a bond or other security in connection with its obligations under this Distribution Trust Agreement.  Following the Effective Date, the authorities and powers of the Distribution Trustee shall include, among other things, the sole and full power, authority, and standing to prosecute, compromise, or otherwise resolve the Distribution Trust Avoidance Actions and any other Claims and Causes of Action comprising the

Distribution Trust Assets.  Further, after the Effective Date, only the Distribution Trustee shall have the authority to File objections to Claims and to settle, compromise, withdraw, or litigate to judgment objections to Claims, including, without limitation, Claims for reclamation under section 546(c) of the Bankruptcy Code.  The Distribution Trustee may settle or compromise any Disputed Claim without approval of this Court.

       14.    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to taxation under any law imposing a stamp tax or similar tax, recording tax or filing fee, in each instance to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code and whether such action is taken by the Debtor, Reorganized Debtor, Distribution Trust, or any other Person:  (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (c) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (d) the making or assignment of any lease; (e) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; or (f) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Debtor's assets or property in the Reorganized Debtor or the Distribution Trust pursuant to or in connection with the Plan, including, without limitation, merger agreements, stock purchase agreement, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property.  Upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents

without the payment of any such tax or governmental assessment. The Court shall retain specific jurisdiction with respect to these matters.

15.    New Equity. On the Effective Date, the Reorganized Debtor shall issue or cause to be issued the New Equity for distribution to Crius in accordance with the terms of the Plan and the articles of incorporation of the Reorganized Debtor without the need for any further corporate or shareholder action. Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the shareholders or directors of the Reorganized Debtor, the directors and officers of the Reorganized Debtor are authorized to perform all tasks necessary and to execute and deliver all documents, agreements and instruments necessary or appropriate to issue the New Equity.

16.    Securities Exempt from Registration.  To the maximum extent provided by section 1145 of the Bankruptcy Code and/or applicable non-bankruptcy law, the issuance of the New Equity pursuant to the Plan, and any issuance of Distribution Trust Interests pursuant to the Plan, will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.  The issuance of the New Equity to Crius is or was in exchange for Claims against the Debtor within the meaning of section 1145(a)(1) of the Bankruptcy Code.  Pursuant to section 1145(c) of the Bankruptcy Code, the resale of any equity and any other securities issuable pursuant to the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities, except for any restrictions set forth in section 1145(b) of the Bankruptcy Code and any restriction contained in the Plan related documents.

17.     Further Approvals.  Any action under the Plan or this Confirmation Order to be taken by, or required of, the Debtor or the Reorganized Debtor, including without limitation, the adoption or amendment of the New Corporate Governance Documents, the issuance of securities and instruments, or the selection of officers or directors, shall be authorized and approved in all respects, without the requirement of further action by any of the Debtor's or Reorganized Debtor's boards of directors or shareholders.

18.     Directive in Furtherance of Plan.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, filings and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

19.     Releases by Debtor.  Section XVI.H.1 of the Plan, as modified herein, is hereby approved in its entirety, and, subject to the occurrence of the Effective Date, is immediately effective and binding in accordance with its terms.

20.     Releases by Holders.  Section XVI.H.2 of the Plan is hereby approved in its entirety, incorporated into this Confirmation Order as if set forth in full herein, and, subject to the occurrence of the Effective Date, is immediately effective and binding in accordance with its terms.

21.     Exculpation.  Section XVI.K of the Plan is hereby approved in its entirety, and, subject to the occurrence of the Effective Date, is immediately effective and binding in accordance with its terms.

22.     Discharge; Injunction.  Sections XVI.I and XVI.J of the Plan re hereby approved in their entirety, incorporated into this Confirmation Order as if set forth in full herein, and, subject to the occurrence of the Effective Date, is immediately effective and binding in

accordance with its terms.  Without limiting the foregoing, effective as of the Effective Date, all existing Claims against and Equity Interests in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all Liens against or security interests in any Estate property shall be, and shall be deemed to be, released and discharged.  The Debtor, Reorganized Debtor or an authorized representative thereof are authorized to and may issue, execute, deliver, file or record a power of attorney or any other instrument as may be necessary or appropriate to effectuate and implement the release of such Liens and/or security interests.

23.    _Existing Injunctions or Stays_.  All injunctions or stays in effect during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date, _provided, however_, that no such injunction or stay shall preclude enforcement of any Person's rights under the Plan and the related documents.  Any action taken following the Petition Date in violation of section 362 of the Bankruptcy Code shall be void ab initio without any further action on the part of the Debtor, the Reorganized Debtor or further order of this Court.

24.    _No Successor Liability_.  Except as may be provided in the Plan, the transfer of property of the Debtor to the Reorganized Debtor shall be free and clear of any claim, or resulting liability, to the extent that the Reorganized Debtor or Crius are to any extent a successor to the Debtor under any state or federal statutory or common law relating to successor liability, or any claim that an entity is legally responsible for the debts or liabilities of another entity as a successor to, continuation of, or participant in a de facto or actual merger with, the other entity, under any theory or legal doctrine of any type or nature whatsoever.  To the extent permitted pursuant to applicable law, none of the Reorganized Debtor or Crius shall be, or shall be deemed to be, a successor to any of the Debtors for any purpose.

25.    <u>Executory Contracts and Unexpired Leases</u>.  The provisions of Article IX of the Plan, including without limitation the rejection of Executory Contracts and Unexpired Leases unless specifically assumed in accordance with the Plan, are specifically approved in all respects, are incorporated herein in their entirety, and are so ordered.  Pursuant to section 365 of the Bankruptcy Code and subject to the occurrence of the Effective Date, (a) the assumption of each Executory Contract and Unexpired Lease specified in the Schedule of Assumed Contracts is hereby approved, and (b) the rejection of all other Executory Contracts and Unexpired Leases of the Debtor, unless previously assumed or rejected upon motion by a Final Order or previously expired or terminated pursuant to its own terms, is hereby approved.

26.    <u>Bar Date for Rejection Claims</u>.  All claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to Article IX of the Plan must be filed with the Court on or before 30 days after the Effective Date (the "**Rejection Damages Bar Date**"). Any such Claims not timely filed shall be forever barred. Any objections to any rejection damages claim must be filed and served on such claimant no later than the Claims Objection Deadline.

27.    <u>Administrative Claim Bar Date Provisions</u>.  Unless previously filed or as otherwise governed by a bar date order or in another order of the Court, requests for payment of Administrative Claims must be included within an application (setting forth the amount of, and basis for, such Administrative Claims, together with documentary evidence) filed with the Court and served on counsel to the Debtor, the Reorganized Debtor, Crius, and the Distribution Trust by the Administrative Claim Bar Date, which shall be 30 days after the Effective Date (the "**Administrative Claim Bar Date**").  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve

such a request by the Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claims against the Debtor, the Estate, the Reorganized Debtor, the Distribution Trust, or their respective property. Any objections to any request for payment of Administrative Claims must be filed and served on such claimant no later than the Claims Objection Deadline.

28.    Professional Compensation. Each Professional shall file an application for allowance of final compensation and reimbursement of expenses in the Bankruptcy Case, for the period through the Effective Date, no later than thirty (30) days after the Effective Date (the "**Professional Fee Bar Date**"). Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor, the U.S. Trustee, the Distribution Trustee, Crius, and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date the application is filed, or this Court may enter an order authorizing the fees without a hearing. Any professional fees and reimbursements or expenses incurred by the Reorganized Debtor subsequent to the Effective Date may be paid without application to the Bankruptcy Court. Notwithstanding anything to the contrary herein, upon the Effective Date, the Debtor shall transfer the Professional Fee Reserve to a trust account of Bayard, P.A. to be transferred to the Distribution Trust and then disbursed in satisfaction of Professional Fee Claims and as otherwise provided in the Plan as and when Allowed in accordance with further orders of the Court.

29.    28 U.S.C. § 1930 Fees. Fees payable pursuant to 28 U.S.C. § 1930 constitute Administrative Claims under the Plan and shall be paid pursuant to sections VI.B and XVI.A of the Plan.

30.    Distributions and Claims Resolution. On and after the Effective Date, the Distributions on account of Allowed Claims and the resolution and treatment of Disputed Claims

pursuant to Articles X and XI of the Plan are authorized and, without limiting any other provisions of the Plan and this Confirmation Order concerning the powers, duties, and authority of the Distribution Trustee, the Distribution Trustee shall be authorized to effectuate such Distributions, resolution, and treatment in accordance with the terms of the Plan and the Distribution Trust Agreement without further order of this Court.

31.    Insurance.  Except as explicitly set forth in the Plan in connection with the Runoff Policy, nothing in the Plan or this Confirmation Order alters the rights and obligations of the Debtor and the Debtor's insurers (and third party claims administrators) under applicable insurance policies (and the agreements related thereto) or modifies the coverage provided thereunder or the terms and conditions thereof.  Any such rights and obligations shall be determined under the applicable insurance policies, any related agreement of the parties and applicable law.

32.    Prior Orders; Agreements.  Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Case, all documents and agreements executed by the Debtor as authorized and directed thereunder, and all motions or requests for relief by the Debtor pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Reorganized Debtor and the Distribution Trust in accordance with the Plan.

33.    Notice of Confirmation and Effective Date.  Promptly following the occurrence of the Effective Date, pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Distribution Trust shall serve a notice of the entry of this Confirmation Order, the establishment hereunder of bar dates for certain Claims (including the Administrative Bar Date, the Rejection

Damages Bar Date, and the Professional Fee Bar Date) and the occurrence of the Effective Date, substantially in the form of <u>Exhibit B</u> attached hereto, on all parties that received the Confirmation Hearing Notice.

34.    <u>Construction; Interpretation</u>.    The failure to specifically describe or include any particular provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan (including any exhibits thereto and the Plan Supplement) be approved and confirmed in its entirety.  In the event of any conflict between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document).  In the event of any conflict between this Confirmation Order and the Plan or any other agreement, instrument, or document intended to implement the provisions of the Plan, the terms of this Confirmation Order shall govern.

35.    <u>Final Order</u>.    Notwithstanding    Bankruptcy    Rule    3020(e),    this Confirmation Order shall be effective and enforceable immediately upon entry.    This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

36.    <u>Jurisdiction</u>.  The assets and affairs of the Debtor shall remain subject to the jurisdiction of this Court until the Effective Date.  Notwithstanding the entry of this Confirmation Order, from and after the Effective Date, the Court shall retain such jurisdiction over the Bankruptcy Case to the fullest extent that is legally permissible.

Dated: April 2 4, 2017
     Wilmington, Delaware

                           The Honorable Brendan L. Shannon
                           Chief United States Bankruptcy Judge